1 | DAVID L. NEALE (SBN 141225)
J.P. FRITZ (SBN 245240)
2 | LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Blvd., Suite 1700
3 | Los Angeles, California 90067
Telephone: (310) 229-1234
4 | Facsimile: (310) 229-1244
Email: DLN@LNBYB.COM, JPF@LNBYB.COM
5 |
Proposed Attorneys for Chapter 11 Debtor
6 | and Debtor in Possession

7

8 | **UNITED STATES BANKRUPTCY COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10 | **SANTA BARBARA DIVISION**

11 | In re:                                          ) Case No.: 9:14-bk-11776-PC
                                                 )
12 | CRUNCHIES FOOD COMPANY, LLC,                    ) Chapter 11 Case
                                                 )
13 |         Debtor and Debtor in Possession.       ) **DEBTOR'S EMERGENCY MOTION**
14 |                                                 ) **FOR AUTHORITY TO USE CASH**
                                                 ) **COLLATERAL AND TO PROVIDE**
15 |                                                 ) **ADEQUATE PROTECTION ON AN**
                                                 ) **INTERIM BASIS PENDING A FINAL**
16 |                                                 ) **HEARING;   MEMORANDUM   OF**
17 |                                                 ) **POINTS AND AUTHORITIES**
                                                 )
18 |                                                 ) **MASTER   STATEMENT   OF   FACTS**
19 |                                                 ) **AND   DECLARATIONS   OF   JAMES**
                                                 ) **LACEY   AND   JOHN-PATRICK   M.**
20 |                                                 ) **FRITZ, ESQ. IN SUPPORT THEREOF**
                                                 ) **FILED SEPARATELY**
21 |                                                 )
                                                 )
22 |                                                 ) Hearing:
23 |                                                 ) Date:  To be set by Court
                                                 ) Time:  To be set by Court
24 |                                                 ) Place: Courtroom  201
                                                 )        1415 State Street
25 |                                                 )        Santa Barbara, CA 93101-2511
                                                 )
26 |                                                 )
                                                 )
27 |                                                 )
                                                 )
28 |

1

1

## **TABLE OF CONTENTS**

2

3  **SUMMARY** ................................................................................................................... **2**

4  **ADDITIONAL INFORMATION**.................................................................................. **6**

5  **MEMORANDUM OF POINTS AND AUTHORITIES**................................................ **10**

6  **I. STATEMENT OF FACTS** ......................................................................................... **10**

7  **II. DISCUSSION** ........................................................................................................... **10**

8      A.  The Debtor Must Be Authorized to Use Cash Collateral to Operate, Maintain
9          and Preserve Its Business in Accordance with the Budget ................................... 10

10     B.  The Secured Lenders Are Adequately Protected by the Debtor's Continued
       Use of Cash Collateral, Substantial Equity Cushions, Replacement Liens,
11         and Priority Administrative Claims ...................................................................... 12

12     C.  The Procedural Requirements Regarding Approval of this Emergency
13         Motion Have Been Satisfied ................................................................................ 15

14
15  **III.  CONCLUSION**.......................................................................................................... **15**

16

17

18

19

20

21

22

23

24

25

26

27

28

i

1

2

## TABLE OF AUTHORITIES

3

**Page(s)**

4

**Federal Cases**

5

6

In re Chauncy Street Assoc. Ltd. Partnership,
    107 B.R. 7 (Bankr.D. Mass.1989).............................................................................12

7

8

In re Dynaco Corporation,
    162 B.R. 389 (Bankr.D.N.H.1993) ..........................................................................11

9

In re Hawaiian Pacific Industries,
    17 B.R. 670 (Bankr. D. Hawaii 1982)......................................................................13

10

11

In re McCombs Properties VI, Ltd.,
    88 B.R. 261 (Bankr.C.D.Cal.1988) .........................................................................12

12

13

In re Mellor,
    734 F.2d 1396 (9th Cir.1984).............................................................................12, 13

14

15

In re O'Connor,
    808 F.2d 1393 (10th Cir.1987)...........................................................................12, 14

16

In re Oak Glen R-Vee,
    8 B.R. 213 (Bankr.C.D.Cal.1981) ...........................................................................11

17

18

In re Rogers Development Corp.,
    2 B.R. 679 (Bankr. E. D. Va. 1980) .........................................................................13

19

20

In re Stein,
    19 B.R. 458. (Bankr.E.D.Pa.1982)..........................................................................14

21

22

In re Triplett,
    87 B.R. 25 (Bankr.W.D.Tex.1988) ..........................................................................14

23

In re Tucson Industrial Partners,
    129 B.R. 614 (9th Cir.B.A.P.1991)..........................................................................11

24

25

United Savings Association v. Timbers of Inwood Forest Associates,
    108 S.Ct. 626 (1988) ...............................................................................................12

26

27

28

1 | **Federal Statutes**

2 | 11 U.S.C.

§ 361 ........................................................................................................................... 13
§ 363(a) .................................................................................................................. 10, 12
§ 363(c)(2)(A) and (B) ............................................................................................... 10
§ 363(c)(2)(B) ......................................................................................................... 8, 11
§ 363(c)(l) .................................................................................................................... 10
§ 506(c) .......................................................................................................................... 7
§§ 506(c), 544, 545, 547, 548 and 549 ....................................................................... 8
§ 1107(a) ...................................................................................................................... 10

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**SUMMARY**

2  Pursuant to sections 361 and 363(c) of title 11 of the United States Code, sections 101 *et*
3  *seq.* (the "Bankruptcy Code"), Rules 2002, 4001(b), and 9014 of the Federal Rules of
4  Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2081-1(a)(9), 4001-2, and 9075-1 of
5  the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of
6  California (the "Local Rules"), Crunchies Food Company, LLC (the "Debtor"), the debtor and
7  debtor in possession in the above-captioned, chapter 11 bankruptcy case, hereby moves on an
8  emergency basis by way of this *Emergency Motion for Authority to Use Cash Collateral and to*
9  *Provide Adequate Protection on an Interim Basis Pending a Final Hearing* (the "Motion"), for
10 entry of an order (the "Interim Order") authorizing the Debtor to use cash collateral on an
11 interim basis in accordance with the budget (the "Budget") that is attached as Exhibit "1" to the
12 master declaration of James Lacey (the "Lacey Declaration") submitted concurrently with and in
13 support of this Motion. In support of this Motion, the Debtor relies on the *Notice of First Day*
14 *Hearings*, the Motion, the Memorandum of Points and Authorities in support of the Motion, the
15 Lacey Declaration, the Budget, the statements, arguments, and representations of counsel to be
16 made at the hearing on the Motion, and any other evidence properly presented to the Court at or
17 prior to the hearing on the Motion.

18 The Debtor filed for chapter 11 bankruptcy protection on August 15, 2014 (the "Petition
19 Date"). The Debtor continues to operate its business, manage its financial affairs, and manage
20 its bankruptcy estate as a debtor in possession pursuant to sections 1107 and 1108 of the
21 Bankruptcy Code.

22 The Debtor is a packaged healthy snack food company founded in Ventura County in
23 2006 by James Lacey with its operations located in Westlake Village, California. The Debtor
24 was established in response to the rapid and overwhelming demand for good tasting and truly
25 healthy natural snacks on the market, and it has enjoyed incredible growth year over year. The
26 Debtor developed a line of delicious, fun, pure foods without preservatives, added sugars, trans
27 fats, or excessive sodium. Available in a wide variety of delicious flavors, Crunchies snacks are
28 produced with the Debtor's proprietary freeze-drying process by placing individually frozen

2

1    fruits and vegetables in a refrigerated vacuum chamber that intensifies flavor and removes up to

2    97% of moisture, assuring a uniquely crunchy snack that retains almost all of its nutrients and

3    enzymes. Some of the Debtor's products include Freeze Dried Cinnamon Apple, Freeze Dried

4    Mixed Fruit, Freeze Dried Buttered Sweet Corn, Freeze Dried BBQ Roasted Veggies, Freeze

5    Dried Strawberries, Freeze Dried Grapes, Freeze Dried Salted Edamame, and Strawberry

6    Munch Paks.

7        The Debtor and its products have received favorable coverage in some 40 national

8    magazines and hundreds of regional newspapers, and the Debtor is poised to continue its

9    growth. Currently, the Debtor has grown to approximately 26 full-time employees and several

10   independent contractors. Crunchies is the number one freeze dried fruit and vegetable bag

11   snack in the market place and fastest growing brand in both the freeze dried and dried fruit

12   categories. The Debtor almost tripled its sales in 2012 and has since distributed its products

13   through over 26,000 stores. In 2013, the Debtor's business was valued, as a going concern, at

14   approximately $15,000,000. Having established a nationwide distribution network and begun

15   sampling programs and promotions with national chains such as Safeway, Walmart, GNC,

16   Kroger, Sprouts, and Whole Foods, as well as several wholesalers, such as UNFI, Tree of Life,

17   McLane, Eby-Brown Kehe, and DPI, the Debtor is poised for exponential growth.

18       To support its growth, the Debtor raised capital contributions from 53 shareholders and

19   reinvested profits generated by the Debtor back into the company. However, the rapid growth

20   of the Debtor's business required more funding than was available from investors and internal

21   operations. As a result, the Debtor had to turn to third party financing to support its expanding

22   operations.

23       In December 2013, the Debtor received a loan for $1.5 million from Seung Chung, as

24   Trustee of the Chung Family Trust ("Chung"), and then an additional $500,000 in February

25   2014, which loan is allegedly secured by all of the Debtor's assets (the "Chung Loan").[1]  A

26   ─────────────────

27   [1] It is unclear whether the Chung Loan is actually a loan giving rise to a claim or an investment
     giving rise to an equity interest. The Debtor makes no admissions either way on this matter at
28   this time but represents that to the extent that the Chung Loan is deemed a secured claim, it is
     adequately protected.

3

1   UCC-1 financing statement for the Chung Loan was filed with the California Secretary of State

2   on December 20, 2013. The purpose of the loan was to grow and expand the Debtor's business.

3          The Debtor received two loans in the amounts of $300,000 and $500,000 in 2010 and a

4   third loan in the amount of $4.2 million in October 2011 for a total loan amount of $5 million

5   from the Donald Delaski Revocable Trust, Dated December 14, 2000 ("Delaski"), which loan is

6   allegedly secured by all of the Debtor's assets (the "Delaski Loan"). The loan was originally

7   unsecured; in exchange for a reduction in the interest rate on the Delaski Loan, the Debtor

8   granted a security interest to Delaski in January 2014. A UCC-1 financing statement for the

9   Delaski Loan was filed with the California Secretary of State on March 11, 2014. The purpose

10  of the loan was also to grow and expand the Debtor's business. Delaski is also a member of the

11  Debtor with a $2 million equity investment. The lien allegedly securing the Chung Loan was

12  recorded prior to the lien relating to the Delaski Loan.

13         Wells Fargo Bank has a lien and claim in the amount of approximately $12,000 secured

14  by one forklift owned by the Debtor, which the Debtor values at $5,000, based on prices of used

15  forklifts on the market.

16         The Debtor's principal assets are approximately $900,000 of accounts receivable, and

17  approximately $1.6 million of inventory (at cost). The value of the Debtor's trademark, brand,

18  and intellectual property is currently unknown.

19         In 2013, the Debtor fell behind on payments to two of its large trade vendor suppliers,

20  resulting in litigation, settlements, and payment plans. The Debtor made substantial payments

21  under those payment plans but was unable to make all payments on the debts in a short amount

22  of time. While one of those vendors, Shandong Searsport Foods, Co., Ltd., agreed to continue

23  working with the Debtor on a payment plan, the other vendor, Chaucer Foods Ltd., used

24  settlement discussions to feign interest in making an equity investment in the Debtor, only to

25  pounce upon the Debtor with an orchestrated hostile takeover in the form of proposed

26  assignment for the benefit of creditors that would wipe out most unsecured creditors and equity.

27         In order to preserve the Debtor's estate, the value as going concern, and recovery for all

28  creditors and stakeholders, the Debtor determined in its reasonable business judgment that it

4

1    filing for chapter 11 bankruptcy was in the best interest of the estate and its creditors.

2              In 2013, the Debtor's business was valued at approximately $15 million as a going
3    concern for purposes of raising new capital. The valuation followed an industry practice of
4    using a multiple of gross annual revenue (generally 3 to 6 times revenue for the snack food
5    industry) and subtracting outstanding debt. In arriving at its computation of going concern
6    value, the Debtor used a conservative multiple of 3 times earnings.

7              However, if the business is closed and liquidated, the value would be less than $3.5
8    million, based on $900,000 of accounts receivable and $2.3 million of inventory, at cost, which
9    will probably yield significantly less in a rapid liquidation. As long as the company continues to
10   operate, the secured creditors are adequately protected by substantial equity cushions. Chung is
11   protected by a $13 million, 650%, equity cushion, and Delaski is protected by a $5 million,
12   160%, equity cushion. Furthermore, the Debtor believes that the collateral is not depreciating
13   on a post-petition basis, and, thus there is no need for the Debtor to be required to make
14   adequate protection payments. However, to protect Wells Fargo from any depreciation on the
15   forklift, the Debtor proposes to pay the regular monthly loan payment of $289 per month. As
16   additional adequate protection for Chung and Delaski, these secured creditors will receive
17   replacement liens against the Debtor's post-petition assets, with such replacement liens to have
18   the same validity, priority, and extent as the prepetition liens held by those creditors.
19   Furthermore, to the extent that the foregoing adequate protection is insufficient, the secured
20   creditors will receive priority administrative claims pursuant to section 507(b) of the Bankruptcy
21   Code.

22             A copy of the Debtor's operating Budget through November 2014 is attached as Exhibit
23   "1" to the Lacey Declaration. For ease of reference, a true and correct copy of the Budget is
24   also attached as Exhibit "1" to this Motion. The Debtor presently intends to limit its use of cash
25   collateral consistent with the Budget and the other terms herein; provided, however, that the
26   Debtor reserves the right to seek alternative use of cash collateral and to file amendments or
27   supplements to the Budget.

28

1    The Debtor has no ability to continue to operate and preserve its business unless the

2 Court enters an interim order to permit the Debtor to use its current and future revenue to pay its

3 operating expenses, including payroll, utilities, insurance, maintenance, and rent. In order for

4 the Debtor to be able to operate its business while in Chapter 11 and to avoid immediate and

5 irreparable harm to its business and estate, the Debtor must be able to use (a) all of its cash

6 existing on the Petition Date plus (b) all of the Debtor's post-petition revenue generated from the

7 operation of its business to pay the Debtor's post-petition operating expenses in accordance with

8 the Budget and as otherwise set forth herein.

9    The Budget contains the expenses the Debtor believes must be paid in order for the

10 Debtor to operate and preserve the value of its business and to enable the Debtor to avoid

11 immediate and irreparable harm to the Debtor's bankruptcy estate. Given the Debtor's historical

12 and current operating performance and the fact that the going-concern value of the Debtor's

13 business would be decimated, if not entirely lost, if the Debtor was forced to shut down its

14 business operations, the Debtor submits that the secured creditors are adequately protected by

15 the Debtor's continued operation of its business and preservation of its going-concern value.

16    In addition to those expenses set forth in the Budget, the Debtor also seeks Court

17 authority to use cash collateral to pay for the following: (a) all quarterly fees owing to the Office

18 of the United States Trustee and all expenses owing to the Clerk of the Bankruptcy Court; and

19 (b) all actual third-party, outside expenses incurred by the Debtor (or its counsel) directly related

20 to the administration of the Debtor's bankruptcy estate (for items such as photocopying, postage,

21 searches, etc.), not to exceed the total sum of $10,000 per month. In addition, the Debtor seeks

22 authority to deviate from the line items contained in the Budget by not more than 15%, on a

23 line-item basis and not more than 15% on an aggregate basis without the need for any further

24 Court approval. The Debtor will maintain all of its required insurance policies.

25                              **ADDITIONAL INFORMATION**

26    Pursuant to Bankruptcy Rule 4001(b)(2), while the Court cannot conduct a final hearing

27 on this Motion earlier than fourteen (14) days after service of this Motion, the Court may

28 conduct a preliminary hearing before such fourteen-day period expires to enable the Debtor to

6

use cash collateral as is necessary to avoid immediate and irreparable harm to the Debtor's estate pending a final hearing. The Debtor must be able to pay expenses in accordance with the Budget and this Motion pending a final hearing in order to avoid immediate and irreparable harm to the Debtor's business and this bankruptcy estate.

Pursuant to Local Bankruptcy Rule 4001-2(b), the Debtor submits that its requested interim relief pertaining to the Debtor's use of cash collateral does not (or does) contain any of the following provisions:

| Provision | |
|---|---|
| Cross-collateralization clauses | No |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the validity, perfection or amount of the secured party's pre-petition lien or debt or the waiver of claims against the secured creditor. | No |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the relative priorities of the secured party's pre-petition lien. | No |
| Provisions that operate, as a practical matter, to divest the Debtor of any discretion in the formulation of a plan or administration of the estate or to limit access to the court to seek any relief under other applicable provision of law. | No |
| Waivers of 11 U.S.C. § 506(c), unless the waiver is effective only during the period in which the Debtor are authorized to use cash collateral or borrow funds. | No |
| Releases of liability for the creditor's alleged prepetition torts or breaches of Contract. | No |
| Waivers of avoidance actions arising under the Bankruptcy Code. | No |
| Provisions that deem prepetition secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt | No |
| Provisions that provide disparate treatment for the professionals retained by a creditors' committee from that provided for the professionals retained by the Debtor with respect to a professional fee carve out | No |
| Provisions that prime any secured lien | No |
| Automatic relief from the automatic stay upon default, conversion to chapter 7, or appointment of a trustee. | No |

7

| Provision | |
|---|---|
| Waivers of procedural requirements, including those for foreclosure mandated under applicable non-bankruptcy law, and for perfection of replacement liens. | No |
| Adequate protection provisions which create liens on claims for relief arising under 11 U.S.C. §§ 506(c), 544, 545, 547, 548 and 549. | No |
| Waivers, effective on default or expiration, of the Debtor' right to move for a court order pursuant to 11 U.S.C. § 363(c)(2)(B) authorizing the use of cash collateral in the absence of the secured party's consent | No |
| Provisions that grant a lien in an amount in excess of the dollar amount of cash collateral authorized under the applicable cash collateral order. | No |
| Provisions providing for the paying down of prepetition principal owed to a creditor. | No |
| Findings of fact on matters extraneous to the approval process. | No |

The relief sought in this Motion is based upon this Motion, the annexed Memorandum of Points and Authorities and the Lacey Declaration submitted in support of this Motion, the Budget, the statements, arguments and representations of counsel to be made at the hearing on this Motion, and any other evidence properly presented to the Court at or prior to the hearing on this Motion.

The Debtor will file with the Court a copy of the proposed Interim Order prior to the hearing on this Motion.

The Debtor will serve a copy of this Motion and all supportive papers (including notice of the hearing) upon the Office of the United States Trustee, all Secured Lenders and their counsel (if known), the twenty largest unsecured creditors, and those parties requesting special notice.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order:

1. Granting this Motion on an interim basis pending a final hearing thereon;

2. Authorizing the Debtor to use cash collateral on an interim basis pending a final hearing to pay all of the expenses set forth in the Budget and to pay the following: (a) all

8

1  quarterly fees owing to the Office of the United States Trustee and all expenses owing to the

2  Clerk of the Bankruptcy Court; and (b) all actual third-party, outside expenses incurred by the

3  Debtor (or its counsel) directly related to the administration of the Debtor's bankruptcy estate

4  (for items such as photocopying, postage, searches, etc.), not to exceed the total sum of $10,000

5  per month.  In addition, the Debtor seeks authority to deviate from the line items contained in

6  the Budget by not more than 15%, on a line-item and not more than 15% on an aggregate basis;

7      3.    Authorizing the Debtor to provide the secured creditors with the adequate

8  protection described herein;

9      4.    Setting a final hearing on this Motion; and

10     5.    Granting such other and further relief as the Court deems just and proper.

11  Dated: August 18, 2014                    CRUNCHIES FOOD COMPANY, LLC

12

13                                   By: _*/s/ David L. Neale*_____
                                          David L. Neale
14                                        John-Patrick M. Fritz
                                          LEVENE, NEALE, BENDER,
15                                        YOO & BRILL L.L.P.
                                          Proposed Attorneys for Chapter 11
16                                        Debtor and Debtor in Possession

17

18

19

20

21

22

23

24

25

26

27

28

9

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.

3

### STATEMENT OF FACTS

4       Please see Master Statement of Facts filed concurrently with this Motion and

5   declaration of James Lacey annexed thereto.

6

### II.

7

### DISCUSSION

8   A.      The Debtor Must Be Authorized to Use Cash Collateral to Operate, Maintain and

9           Preserve Its Business in Accordance with the Budget

10      The Debtor's use of property of its estate is governed by section 363 of the Bankruptcy

11  Code.  Section 363(c)(l) provides in pertinent part:

12              If the business of the debtor is authorized to be operated under
                section. . .1108. . . of this title and unless the court orders otherwise,
13              the trustee may enter into transactions, including the sale or lease of
                property of the estate, in the ordinary course of business, without
14              notice or a hearing, and may use property of the estate in the
                ordinary course of business without notice or a hearing.
15

16  11 U.S.C. §363(c)(l).  A debtor in possession has all of the rights and powers of a trustee with

17  respect to property of the estate, including the right to use property of the estate in compliance

18  with Section 363.  See 11 U.S.C. §1107(a).

19      "Cash collateral" is defined as "cash, negotiable instruments, documents of title,

20  securities, deposit accounts or other cash equivalents in which the estate and an entity other than

21  the estate have an interest. . . ."  11 U.S.C. §363(a).  Section 363(c)(2) establishes a special

22  requirement with respect to "cash collateral," providing that the trustee or debtor in possession

23  may use "cash collateral" under subsection (c)(l) if:

24              (A)     each entity that has an interest in such cash collateral
                consents; or
25              (B)     the court, after notice and a hearing, authorizes such use, sale
                or lease in accordance with the provisions of this section.
26

27  See 11 U. S.C. §363(c)(2)(A) and (B).

28

10

1    It is well settled that it is appropriate for a Chapter 11 debtor to use cash collateral for the

2 purpose of maintaining and operating its property. 11 U.S.C. § 363(c)(2)(B); In re Oak Glen R-

3 Vee, 8 B.R. 213, 216 (Bankr.C.D.Cal.1981); In re Tucson Industrial Partners, 129 B.R. 614 (9th

4 Cir.B.A.P.1991). In addition, where the debtor is operating a business, it is extremely important

5 that the access to cash collateral be allowed in order to facilitate the goal of reorganization: "the

6 purpose of Chapter 11 is to rehabilitate Debtor and generally access to cash collateral is

7 necessary to operate a business." In re Dynaco Corporation, 162 B.R. 389 (Bankr.D.N.H.1993),

8 quoting In re Stein, 19 B.R. 458, 459. (Bankr.E.D.Pa.1982).

9    The only sources of revenue available to the Debtor to use to operate, maintain and

10 preserve its business are the Debtor's cash existing on the Petition Date and the Debtor's post-

11 petition operating revenue. As a result, the Debtor has no ability to continue to operate its

12 business and maintain and preserve the going-concern value of its business unless the Debtor

13 has immediate access to and use of its cash to pay the Debtor's ordinary operating expenses,

14 including, but not limited to, payroll, utilities, insurance, and rent.

15    The expenses the Debtor must be able to pay from the Petition Date through November

16 2014 are set forth in the Budget. The Debtor's inability to pay those expenses would cause

17 immediate and irreparable harm to the Debtor, its business and this bankruptcy estate. Indeed,

18 the Debtor's inability to pay such basic and critical operating expenses such as payroll, utilities,

19 insurance, and rent would result in the immediate closure of the Debtor's business, termination

20 of approximately 26 jobs, and the loss of the Debtor's good will, market share, brand

21 recognition, and customer base across the nation; this, in turn, would result in the decimation of

22 the substantial overall going-concern value of the Debtor's business.

23    In addition to those expenses set forth in the Budget, the Debtor also seeks authority to

24 use cash collateral to pay for the following: (a) all quarterly fees owing to the Office of the

25 United States Trustee and all expenses owing to the Clerk of the Bankruptcy Court; and (b) all

26 actual third-party, outside expenses incurred by the Debtor (or its counsel) directly related to the

27 administration of the Debtor's bankruptcy estate (for items such as photocopying, postage,

28 searches, etc.), not to exceed the total sum of $10,000 per month. In addition, the Debtor seeks

1 authority to deviate from the line items contained in the budget by not more than 15%, on both a
2 line item and aggregate basis.

3 B.     **The Secured Lenders Are Adequately Protected by the Debtor's Continued Use of Cash**
4        **Collateral, Substantial Equity Cushions, Replacement Liens, and Priority Administrative**
5        **Claims**

6       To the extent that an entity has a valid security interest in the revenues generated by
7 property, those revenues constitute "cash collateral" under Section 363(a) of the Bankruptcy
8 Code.   Pursuant to Section 363(c)(2), the Court may authorize the debtor to use a secured
9 creditor's cash collateral if the secured creditor is adequately protected. In re Mellor, 734 F.2d
10 1396, 1400 (9th Cir.1984). See also In re O'Connor, 808 F.2d 1393, 1398 (10th Cir.1987); In re
11 McCombs Properties VI, Ltd., 88 B.R. 261, 265 (Bankr.C.D.Cal.1988) ("McCombs").

12      Pursuant to the Supreme Court case of United Savings Association v. Timbers of Inwood
13 Forest Associates, 108 S.Ct. 626, 629 (1988) ("Timbers") and subsequent case law, the property
14 interest that a debtor must adequately protect pursuant to sections 361(1) and (2) of the
15 Bankruptcy Code is only the value of the lien that secures the creditor's claim. 108 S.Ct. at 630.
16 See also McCombs, Id., at 266.  While protection of a secured creditor's interest in property is
17 required, protection for the entire bundle of rights is not required.  In re Timbers of Inwood
18 Forest Assoc., Ltd., 484 U.S. 365, 108 S.Ct. 626 (1988).  In the case of an oversecured creditor,
19 section 506(a) and Timbers mandate that "there is no lack of adequate protection [even where
20 there is] a decline in collateral value" provided the secured creditor remains oversecured.
21 McCombs, Id., at 266; In re Chauncy Street Assoc. Ltd. Partnership, 107 B.R. 7, 8 (Bankr.D.
22 Mass.1989).  In this case, the secured creditors are adequately protected by substantial equity
23 cushions, replacement liens, and by the continued operation of the Debtor's business.

24      It is well established that the existence of an equity cushion alone can constitute
25 adequate protection to a secured creditor when a debtor seeks to use cash collateral.  In re
26 Mellor, 734 F.2d 1396 (9th Cir. 1984). In Mellor, the Ninth Circuit held that a 20% equity
27 cushion constituted adequate protection as a matter of law. Id. at 140-01. The Ninth Circuit
28 indicated that a cushion of less than 20% could also constitute adequate protection and cited

12

1  with approval decisions holding that equity cushions of between 10% and 20% constituted

2  adequate protection.  Id., (citing In re McGowan, 6 B.R. 241, 243 (Bankr. E.D. Pa. 1980)

3  (holding that a 10% cushion is adequate protection); In re Rogers Development Corp., 2 B.R.

4  679, 685 (Bankr. E. D. Va. 1980) (equity cushion of approximately 15% to 20% was adequate

5  protection notwithstanding that the debtors had no equity in the property); see also, In re

6  Hawaiian Pacific Industries, 17 B.R. 670, 673 (Bankr. D. Hawaii 1982) (15% cushion

7  constituted adequate protection).

8         Here, the Debtor's business has a going-concern value of approximately $15 million.  As

9  long as the company continues to operate, the secured creditors are adequately protected by

10  substantial equity cushions.  Chung has an alleged secured claim of $2 million.  Based on a

11  valuation of $15 million, Chung is protected by a $13 million, 650%, equity cushion.  Delaski

12  has a secured claim of $5 million.  Based on a $15 million valuation, and after accounting for

13  Chung's senior lien of $2 million, Delaski is still protected by a $5 million, 160%, equity

14  cushion.  These equity cushions are far in excess of the 10% or 20% equity cushions that the

15  Ninth Circuit has found adequate to protected secured creditors.  Accordingly, the secured

16  creditors are adequately protected and the Debtor should be allowed to use cash collateral.[2]

17         Furthermore, the alleged collateral of the secured creditors is not depreciating (certainly

18  not by any significant amount) during the budgeted period, and, therefore, no adequate

19  protection is required.  Lacey has over thirty (30) years of experience in the food producing and

20  packaging industry.  In his evaluation, the Debtor is poised for growth with 51% of the market

21  share in the healthy freeze-dried snack market and approximately 26,000 in store distribution

22  nationwide.  Furthermore, a valuation in 2013 placed the Debtor's going-concern value at

23  approximately $15 million, and the Debtor's business and distribution has grown since that

24  time, which likely makes it more valuable.  Consequently, there is no need to give the secured

25  creditors adequate protection under 11 U.S.C. § 361 because there will be no post-petition

26

27  [2] The Debtor acknowledges that both Chung and Delaski could legally assert an interest in the
    Debtor's cash collateral; however, the Debtor's acknowledgement of such asserted interests
28  does not constitute the Debtor's concession that either or both of the Chung and/or Delaski
    claims and/or liens are valid and enforceable.

13

1  decline in the value of their interest in the collateral.

2        Additionally, the Secured Lenders are adequately protected by the Debtor's continuation

3  of its business as a going concern.  The preservation of the value of a secured creditor's lien is

4  sufficient to provide adequate protection to a secured creditor when a debtor seeks to use cash

5  collateral.  In re Triplett, 87 B.R. 25 (Bankr.W.D.Tex.1988).  See also In re Stein, 19 B.R. 458

6  (Bankr.E.D.Pa.1982).  Therefore, the very use of a secured creditor's cash collateral to run the

7  Debtor's business is itself adequate protection for the secured creditors.

8        Furthermore, in determining adequate protection, Courts have stressed the importance of

9  promoting a debtor's reorganization.  In In re O'Connor, supra, the Tenth Circuit stated:

10       In this case, Debtor, in the midst of a Chapter 11 proceeding, have proposed to
         deal with cash collateral for the purpose of enhancing the prospects of
11       reorganization.  This quest is the ultimate goal of Chapter 11.  Hence, the
         Debtor's efforts are not only to be encouraged, but also their efforts during the
12       administration of the proceeding are to be measured in light of that quest.
         Because the ultimate benefit to be achieved by a successful reorganization
13       inures to all the creditors of the estate, a fair opportunity must be given to the
14       Debtor to achieve that end.  Thus, while interests of the secured creditor whose
         property rights are of concern to the court, the interests of all other creditors
15       also have bearing upon the question of whether use of cash collateral shall be
16       permitted during the early stages of administration.

17  808 F.2d at 1937.

18       While not required to do so as the above-described law makes clear, the Debtor proposes

19  that the secured creditors receive replacement liens against the Debtor's post-petition assets,

20  with such replacement liens to have the same validity, priority, and extent as the prepetition

21  liens held by the secured creditors.  Additionally, to the extent the replacement liens do not

22  protect the secured creditors against any post-petition diminution in the value of their collateral,

23  the secured creditors will receive a super-priority administrative claim pursuant to section

24  507(b) of the Bankruptcy Code.

25       Finally, to the extent that the foregoing adequate protection does not protect Wells Fargo

26  against depreciation of its collateral (one forklift), the Debtor proposes to continue to make

27  regular monthly loan payments of $289 per month.

28

14

1        The Debtor cannot preserve the going-concern value of its business or maintain the

2 secured creditors' collateral unless the Debtor is able to use its cash collateral to pay for its

3 operating expenses and the other purposes identified herein. Without use of the secured

4 creditors' cash collateral to operate the Debtor's business, the Debtor will be forced to shut

5 down its operations and terminate 26 employees; the secured creditors will realize losses on

6 their secured debts; unsecured creditors will receive nothing; and the substantial going-concern

7 value of the Debtor's business will be lost. Such a result would be catastrophic and would be to

8 the severe detriment of the secured creditors and all other creditors and parties in interest.

9 Therefore, the Court should grant this Motion and allow the Debtor to use cash collateral in

10 accordance with the Budget and other provisions set forth above to protect the secured creditors

11 and preserve the value of the Debtor's estate for the benefit of all parties in interest.

12 C.    The Procedural Requirements Regarding Approval of this Emergency Motion Have

13       Been Satisfied

14        Pursuant to Bankruptcy Rule 4001(b)(1)(C), the Debtor is required to serve a copy of the

15 Motion on any entity with an interest in the Debtor's cash collateral, the 20 largest unsecured

16 creditors, and any other entity that the Court directs. The Debtor has complied with the

17 foregoing by serving a copy of the Motion by email, facsimile, and/or overnight mail on the

18 secured creditors, the 20 largest unsecured creditors, the United States Trustee, and parties

19 requesting special notice.

20                            **III.**

21                   **CONCLUSION**

22        Based upon all of the foregoing, the Debtor respectfully requests that the Court enter an

23 order:

24      1.    Granting the Motion on an interim basis pending a final hearing thereon;

25      2.    Authorizing the Debtor to use cash collateral on an interim basis pending a final

26 hearing to pay all of the expenses set forth in the Budget and to pay the following: (a) all

27 quarterly fees owing to the Office of the United States Trustee and all expenses owing to the

28 Clerk of the Bankruptcy Court; and (b) all actual third-party, outside expenses incurred by the

Debtor (or its counsel) directly related to the administration of the Debtor's bankruptcy estate (for items such as photocopying, postage, searches, etc.), not to exceed the total sum of $10,000 per month. In addition, the Debtor seeks authority to deviate from the line items contained in the budget by not more than 15% on a line-item basis and not more than 15% on an aggregate basis;

3. Authorizing the Debtor to provide adequate protection as described herein;

4. Setting a final hearing on the Motion; and

5. Granting such other and further relief as the Court deems just and proper.

Dated: August 18, 2014                                CRUNCHIES FOOD COMPANY, LLC

By:___*David L. Neale*_____
David L. Neale
John-Patrick M. Fritz
LEVENE, NEALE, BENDER,
YOO & BRILL L.L.P.
Proposed Attorneys for
Chapter 11 Debtor and
Debtor in Possession

**Exhibit 1**

**Crunchies Food Company LLC - 13 week rolling Cash flow projection by week**

| Week of- | 8.18 #1 | 8.25 #2 | 9.01 #3 | 9.08 #4 | 9.15 #5 | 9.22 #6 | 9.29 #7 | 10.06 #8 | 10.13 #9 | 10.20 #10 | 10.27 #11 | 11.03 #12 | 11.10 #13 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **DEPOSITS** | | | | | | | | | | | | | | |
| Cash | 8,000 | 59,679 | 34,758 | 70,048 | 43,274 | 106,906 | 73,862 | 167,694 | 213,169 | 264,109 | 164,621 | 150,296 | 112,084 | 8,000 |
| Current AR 8.15.2014 | 80,000 | 145,000 | 65,000 | 60,000 | 50,000 | 50,000 | 50,000 | 37,000 | 10,000 | | | | | 547,000 |
| AR from sales past 8.15.2014 | | | | 26,354 | 80,470 | 142,594 | 256,342 | 238,402 | 128,878 | 103,100 | 169,170 | 229,080 | 182,100 | 1,556,490 |
| Loans - Outside capital | 150,000 | 50,000 | 200,000 | 150,000 | 50,000 | | | | | | | | | 600,000 |
| **Total** | 238,000 | 254,679 | 299,758 | 306,402 | 223,744 | 299,500 | 380,204 | 443,096 | 352,047 | 367,209 | 333,791 | 379,376 | 294,184 | 2,711,490 |
| **PAYMENTS** | | | | | | | | | | | | | | |
| **Payroll & Consultants** | | | | | | | | | | | | | | |
| Payroll | | 44,500 | | 39,000 | | 39,000 | | 39,000 | | 39,000 | | 39,000 | | 239,500 |
| Production Labor | | 22,000 | | 22,000 | | 22,000 | | 22,000 | | 22,000 | | 22,000 | | 132,000 |
| Consultants | | 10,833 | 1,714 | 7,833 | | 7,833 | 1,714 | 7,833 | | 7,833 | 1,714 | 7,833 | | 55,140 |
| **Subtotal** | | 77,333 | 1,714 | 68,833 | | 68,833 | 1,714 | 68,833 | | 68,833 | 1,714 | 68,833 | | 426,640 |
| **Manufacturing Costs:** | | | | | | | | | | | | | | |
| Ingredient Purchases | 100,000 | 50,000 | 80,100 | 90,850 | 74,100 | 100,100 | 97,000 | 98,750 | 50,400 | 73,350 | 100,000 | 100,000 | 85,000 | 1,099,650 |
| Packaging Purchases | | 16,000 | 22,000 | 28,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 25,000 | 20,000 | 25,000 | 204,000 |
| Whse rent | | | | 6,200 | | | | 6,200 | | | | 6,200 | | 18,600 |
| Freight In | 4,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 28,000 |
| Freight Out | 11,000 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 77,000 |
| Freight-Inter warehouse | 8,000 | 8,000 | 8,000 | 8,000 | 4,000 | 4,000 | 4,000 | 4,000 | 3,500 | 3,000 | 2,500 | 1,000 | 2,500 | 60,500 |
| Whse Exp | | 3,500 | | 3,500 | | 3,500 | | 3,500 | | 3,500 | | 3,500 | | 21,000 |
| **Subtotal** | 123,000 | 69,000 | 117,800 | 137,850 | 100,600 | 130,100 | 123,500 | 134,950 | 75,400 | 101,850 | 135,000 | 133,500 | 126,200 | 1,508,750 |
| **Operational Costs:** | | | | | | | | | | | | | | |
| Equip Payments | 1,138 | 855 | 300 | 530 | 1,138 | 855 | 300 | 530 | 1,138 | 855 | 300 | 530 | 1,138 | 9,607 |
| Automobile/Gas | 750 | 2,000 | 750 | 2,850 | 850 | 2,850 | 850 | 2,850 | 850 | 2,850 | 850 | 2,850 | 850 | 22,000 |
| Commissions | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 52,000 |
| Payroll Fees | 700 | | | | 700 | | | | 700 | | | | | 2,100 |
| Legal | 15,000 | | 15,000 | | | | 15,000 | | | | | | | 45,000 |
| Building Rent | 15,400 | | | 15,400 | | | | 15,400 | | | | 15,400 | | 61,600 |
| Maintenance/Repairs | 3,000 | | | | 3,000 | | | | 3,000 | | | | | 9,000 |
| US Trustee | | | 6,500 | | | | | | | | | | | 6,500 |
| Utility - Deposits | 6,033 | | | | | | | | | | | | | 6,033 |
| Utilities | 8,100 | | | 8,100 | | | | 8,100 | | | | 8,100 | | 32,400 |
| Auto Ins | 783 | | | 783 | | | | 783 | | | | 784 | | 3,133 |
| BOP Ins | 2,150 | | 2,150 | | 2,150 | | 2,150 | | 2,150 | | 2,150 | | 2,150 | 15,050 |
| Group Health Ins | | 14,725 | | | | 14,725 | | | | 14,725 | | | | 44,175 |
| Key Man Ins | | 25,000 | | | | 25,000 | | | | 25,000 | | | | 75,000 |
| WorkComp Ins | 10,300 | | | | 10,300 | | 10,300 | | | | | | | 30,900 |
| Permits,Licenses,Dues | | | | 781 | | | | 781 | | | | 781 | | 2,343 |
| Merchant/Bank Fees | 571 | | | | | | 571 | | | | | | 571 | 1,713 |
| Postage | 300 | | | 300 | | | 300 | | | 300 | | | 300 | 1,500 |
| Office Supplies | 500 | 250 | 250 | 500 | | 250 | 250 | 500 | | 250 | 250 | 500 | | 3,500 |
| EDI/SPS/Web | 2,200 | | | 2,200 | | | | 2,200 | | | | 2,200 | | 8,800 |
| Royalties WB | 15,000 | | | | | | | | | | | | | 15,000 |
| Marketing / Promotions | 5,000 | | | | | | | | | | | | | 112,000 |
| Tradeshows | 15,000 | | | | | | | | | | | | | 60,000 |
| **Subtotal** | 55,321 | 73,588 | 110,196 | 56,444 | 16,238 | 26,705 | 87,296 | 26,144 | 12,538 | 31,905 | 46,781 | 64,959 | 11,238 | 619,354 |
| **Total Payments** | 178,321 | 219,921 | 229,710 | 263,127 | 116,838 | 225,638 | 212,510 | 229,927 | 87,938 | 202,588 | 183,495 | 267,292 | 137,438 | 2,554,744 |
| **Ending Cash** | 59,679 | 34,758 | 70,048 | 43,274 | 106,906 | 73,862 | 167,694 | 213,169 | 264,109 | 164,621 | 150,296 | 112,084 | 156,746 | 156,746 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90017.

A true and correct copy of the foregoing document entitled (*specify*) **DEBTOR'S EMERGENCY MOTION FOR AUTHORITY TO USE CASH COLLATERAL AND TO PROVIDE ADEQUATE PROTECTION ON AN INTERIM BASIS PENDING A FINAL HEARING; MEMORANDUM OF POINTS AND AUTHORITIES** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On August 18, 2014, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice

☒ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:  On  August 18, 2014 I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on  August 18, 2014, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA OVERNIGHT MAIL**
The Hon. Peter H. Carroll
United States Bankruptcy Court
1415 State Street, Suite 230
Santa Barbara, CA 93101-2511

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 18, 2014 | Jason Klassi | /s/ Jason Klassi |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

**9:14-bk-11776-PC Notice will be electronically mailed to:**

Richard W Esterkin on behalf of Creditor Provident Trust Group, LLC
resterkin@morganlewis.com, vrader@morganlewis.com

Brian D Fittipaldi on behalf of U.S. Trustee United States Trustee (ND)
brian.fittipaldi@usdoj.gov

John-Patrick M Fritz on behalf of Debtor Crunchies Food Company, LLC
jpf@lnbrb.com

David L. Neale on behalf of Debtor Crunchies Food Company, LLC
dln@lnbrb.com

Evan D Smiley on behalf of Creditor Chaucer Foods
esmiley@wgllp.com, msciesinski@wgllp.com

United States Trustee (ND)
ustpregion16.nd.ecf@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                              **F 9013-3.1.PROOF.SERVICE**