**SMILEY WANG-EKVALL, LLP**
Evan D. Smiley, State Bar No. 161812
esmiley@wgllp.com
Philip E. Strok, State Bar No. 169296
pstrok@wgllp.com
Robert S. Marticello, State Bar No. 244256
rmarticello@wgllp.com
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Telephone:   (714) 966-1000
Facsimile:    (714) 966-1002

Attorneys for Creditor
Chaucer Foods UK Limited

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA BARBARA DIVISION

| | |
|---|---|
| In re<br><br>CRUNCHIES FOOD COMPANY, LLC,<br><br>　　　　　　　　Debtor. | Case No. 9:14-bk-11776-PC<br><br>Chapter 11<br><br>**LIMITED OBJECTION TO THE DEBTOR'S EMERGENCY MOTION FOR INTERIM ORDER (A) AUTHORIZING POSTPETITION FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE, (B) GRANTING LIENS, INCLUDING PRIMING LIENS AND SUPERPRIORITY CLAIMS TO POSTPETITION LENDER PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE, AND (C) PROVIDING ADEQUATE PROTECTION TO PREPETITION LENDERS; AND DECLARATION OF EVAN D. SMILEY IN SUPPORT**<br><br>Hearing<br>Date: September 12, 2014<br>Time: 2:00 p.m.<br>Place: Courtroom 201<br>　　　　1415 State Street<br>　　　　Santa Barbara, CA 93101 |

　　　Chaucer Foods UK Limited ("Chaucer") files this limited objection to the *Emergency Motion for Interim Order (A) Authorizing Postpetition Financing Pursuant to Section 364 of the Bankruptcy Code, (B) Granting Liens, Including Priming Liens and Superiority Claims to Postpetition Lender Pursuant to Section 364 of the Bankruptcy Code, and (C) Providing*

977639.1    　　　　　　　　　　　　　　　　1    LIMITED OBJECTION

*Adequate Protection to Prepetition Lenders* [Docket No. 53] (the "Motion") filed by the debtor and debtor-in-possession Crunchies Food Company, LLC (the "Debtor").

## I.  INTRODUCTION

While Chaucer understands that the Debtor is in need of immediate cash, Chaucer is concerned that the proposed post-petition financing (the "Proposed DIP Loan") could make matters worse by limiting the Debtor's options and saddling the estate with further debt the Debtor cannot repay.  Pre-petition, the Debtor incurred substantial trade debt, generated significant losses, and exhausted the loans it obtained from Chung and Delaski.[1]  The Debtor has not articulated any business plan or reason to believe that this pattern will change post-petition.  Moreover, Chaucer believes that the Debtor has not fully and fairly evaluated all of the estate's options, but has instead steered the post-petition financing opportunity to an industry competitor, Mercer Foods.  The Debtor has unfairly shut Chaucer out of the reorganization process and has refused to provide Chaucer with access to conduct due diligence in connection with its offer to acquire the Debtor's assets, which was made jointly with Chung and Delaski, or to determine whether it would be willing to provide the Debtor with financing on more favorable terms.  Chaucer, Chung, and Delaski have been requesting access to information for weeks.

Whether the Proposed DIP Loan is a good deal or not, the Debtor has put the Court and creditors in a position where they have virtually no choice but to support the Motion.  The Debtor limited the possibilities to NHF and then apparently waited until it was out of cash and filed the Motion on approximately two days notice.  The Debtor has yet to provide the operative agreements that will govern the Proposed DIP Loan.  Moreover, the Debtor has not demonstrated that the full amount of the Proposed DIP Loan is necessary to avoid immediate and irreparable harm.

---

[1]  Capitalized terms not expressly defined herein shall have the meanings ascribed to them in the Motion.

1 For all these reasons, if the Court is inclined to grant the Motion on an interim
2 basis, then the Debtor should be permitted to incur only that amount that is absolutely
3 necessary to avoid immediate and irreparable harm pending a final hearing on the Motion.
4 However, the Court should also order the Debtor to allow Chaucer to conduct due
5 diligence to determine if Chaucer is willing to provide post-petition financing on the same
6 or more favorable terms or if the parties are able to reach some other arrangement that is
7 better for the estate's creditors. This will enable the Court and other parties in interest to
8 consider any proposal by Chaucer along side the Proposed DIP Loan.

## II. THE DEBTOR HAS FAILED TO PROVIDE THE CRITIAL AGREEMENTS IN A TIMELY MANNER

The Debtor has yet to provide the operative agreements and documents subject to the Motion. More specifically, the Debtor has not filed the "Postpetition Documents" (*i.e.*, the Loan and Security Agreement and any other related or ancillary documents), the proposed budget setting forth the use of the Proposed DIP Loan proceeds, or the alleged intercreditor agreement among NH Foods, LLC ("NHF"), Chung and Delaski. The Debtor's failure to timely include these agreements and documents makes it virtually impossible to fully evaluate the terms of the Proposed DIP Loan. For example, certain terms in the Interim Order, such as, "Event of Default," are defined only in the Postpetition Documents. (*See* Mot., Ex. 1. at 10, ¶ 7.) Moreover, it is possible that the proposed terms, as summarized in the Interim Order, will change as the parties continue to negotiate the operative agreements. It appears that the Debtor was simply not prepared to move forward with the Motion at this time as the agreements that will govern the Proposed DIP Loan have not been finalized. Similarly, the Declarations of Richard Boyer and William Voss in support of the Motion were not signed. Until and unless parties-in-interest are provided with an adequate and reasonable opportunity to review the operative agreements to be approved, the Motion cannot be granted.

### III. THE DEBTOR HAS NOT ACTED IN GOOD FAITH AND AS A FIDUCIARY OF THE ESTATE

The Debtor has not acted in good faith and in a manner consistent with its fiduciary duties to creditors. Lacking a concrete plan to turn around its business, the Debtor's apparent strategy is to blame Chaucer, a supplier who the Debtor repeatedly failed to pay, for its ineptitude and inability to generate a profit. Consistent with that strategy, the Debtor has refused to negotiate with Chaucer in good faith during the case. As was indicated to the Court at the last hearing, Chaucer, along with Chung and Delaski, submitted a letter of intent (the "LOI") to the Debtor to acquire its assets through a Section 363 sale. (*See* Smiley Decl., Ex. 1.) The Debtor, however, refused to allow Chaucer access to conduct its due diligence in connection with the LOI or to evaluate providing the Debtor with a post-petition loan, which the Debtor has known Chaucer may be willing to do. Moreover, the terms of Debtor's "counteroffer" to the LOI were so outrageous that the only conclusion is that the Debtor has no interest in negotiating with Chaucer, even if the LOI is in the best interests of the estate and its creditors.

The Debtor is not exercising prudent business judgment. The statement that Lacey allegedly responded "to virtually all" of the offers the Debtor received is misleading. As discussed above, while the Debtor "responded" to the LOI, it did not do so in good faith. Moreover, contrary to its fiduciary duties, the Debtor has not provided equal access to interested parties as it appears that the Debtor provided NHF with an opportunity to conduct due diligence, but would not do the same for Chaucer. If the Debtor is selectively steering its business towards NHF and providing information to only NHF, how can creditors and this Court be certain that the Proposed DIP Loan is the best option available? The Debtor has not provided any specifics regarding the other entities interested in providing post-petition financing or the terms of other financing offers the Debtor received. Rather, the Debtor has only offered general statements that better financing terms are not available. Accordingly, the Debtor has not established that it could not obtain post-petition financing on terms more favorable than the terms of the Proposed

1  DIP Loan, which have yet to be fully disclosed.  The Debtor should be ordered to run a fair
2  process that provides access to Chaucer for purposes of conducting due diligence.
3       In addition, with the foregoing in mind, the Debtor's proposed self-serving findings
4  in the Interim Order, such as, that the Proposed DIP Loan is necessary to maximize the
5  value of the estate and reflects "Debtor's exercise of prudent business judgment
6  consistent with its fiduciary duties," are inaccurate.  Moreover, such findings are improper
7  in an *interim* order granting the Motion.  Accordingly, if the Court is otherwise inclined to
8  grant the Motion on an interim basis, these findings should be stricken from the proposed
9  Interim Order.
10
11  **IV.    THE PROPOSED DIP LOAN COULD MAKE MATTERS WORSE**
12       The Proposed DIP Loan could make matters worse.  While the Debtor needs cash,
13  it has yet to articulate any strategy on how it intends to use that cash to turn around its
14  business.  Without a game plan to generate positive cash flow, granting the Motion will do
15  no more than throw good money after bad.  The Debtor has an admitted history of
16  obtaining and burning through short term loans.  As noted by Chung, the Debtor operated
17  at a significant loss pre-petition.  (*See* Chung Supp. Opp'n to the Cash Collateral Mot.
18  [Docket No. 46], Ex. 2 at Bates Stamp 8, illustrating that the Debtor experienced a loss of
19  $2,686,390 by July 2014.)  The Debtor also burned through the approximately $7.5 million
20  in loans provided by Chung and Delaski pre-petition and will likely do the same again
21  here.  Notwithstanding its numerous "emergency" filings, the Debtor still has yet to
22  articulate its strategy for generating positive cash flow (other than attempting to blame
23  Chaucer).  Thus, there is no reason to believe the Debtor's pattern of operating losses will
24  change with the Proposed DIP Loan.
25       The record before the Court suggests that the Debtor will exhaust the Proposed
26  DIP Loan and, in two months or less, the Debtor will likely be back before this Court on a
27  further last minute, emergency motion for financing.  The Debtor will lack the funds to
28  repay NHF and will need more money to continue operations.  However, based on the

terms set forth in the Interim Order, the Debtor will not be able to obtain an additional loan unless NHF consents or is repaid. At that stage, the Debtor will potentially have fewer options, and the Estate will be worse off as the Debtor will be saddled with an additional $600,000.00 in secured debt that the Debtor cannot (and has no game plan) to pay. Perhaps the Proposed DIP Loan is merely the first step of the Debtor's undisclosed plan to sell its business to NHF and without sufficient marketing and providing access to information to other interested parties. The foregoing supports limiting the amount to be borrowed by the Debtor at this time and ordering the Debtor to provide Chaucer access to conduct due diligence.

The Proposed DIP Loan could put the estate further underwater. The record before the Court suggests that the Debtor's assets are worth approximately $2.5 million, which is far less than the asserted $7.5 million in secured debt. (*See* Cash Collateral Mot. at 4, stating that the Debtor has $900,000 in accounts receivable and inventory worth $1.6 million.) In contrast, the Debtor's new inflated valuation appears to be nothing more than a mathematical calculation prepared by an accountant at the direction of the Debtor's principal.

The valuation has numerous problems. First, Richard Boyer is an accountant and there is no evidence that he has the type of specialized knowledge necessary to value the Debtor's business. In fact, Boyer's resume demonstrates just the opposite. (See Mot, Ex. 3, stating that Boyer specializes in accounting and estate and tax planning services.) Second, the valuation is based on Lacey's assumptions, which lack reliability. The Debtor has provided no evidence to support Lacey's "forecast of sales and related expenses" and the forecast of profits for 2014 are directly contrary to the Debtor's actual losses to date. Third, there is no evidence that the methodology and capitalization rate used by Boyer are appropriate under the circumstances and for the Debtor's business. Accordingly, the Court should not rely on the Debtor's valuation.

## V. THE DEBTOR HAS NOT DEMONSTRATED THAT THE ENTIRE LOAN AMOUNT IS NECESSARY TO PREVENT IRREPARABLE HARM

The Debtor has not demonstrated that the entire Proposed DIP Loan is necessary to prevent irreparable harm. Notwithstanding the fact that the Debtor knew it was going to quickly run out of cash, it still waited to the very last minute to file the Motion, has provided only 2 days notice on the Motion, and the operative agreements and documents were not included. The Debtor has placed the burden on this Court and the creditors who now must review the Motion and the numerous agreements to approved, which will presumably be provided at some point, in short order. Moreover, it appears that the Debtor steered this opportunity to NHF and the Debtor waited until it was out of cash to file the Motion. As a result, the Debtor has put itself, the Court, and the Estate's creditors in a vulnerable position where they have few options and virtually no choice but to support the Motion.

While the Debtor needs cash, the Debtor has not demonstrated that the entire $600,000.00 is necessary to avoid irreparable harm pending a final hearing on the Motion. For example, according to the Debtor's updated and revised budget, the Debtor needs only $300,000.00 through September 15, 2014. (*See* Lacey Decl. in Support of the Cash Collateral Mot. [Docket No. 36], Ex. 1.) On less than 14 days notice, the Motion can be granted only as "necessary to avoid immediate and irreparable harm to the estate . . . ." Fed. R. Bankr. P. 4001(c)(2). Moreover, limiting the amount that is borrowed during the interim period increases the Debtor's options moving forward. This is important because, subject to due diligence, Chaucer may be interested in replacing NHF as the post-petition lender on more favorable terms. Also, an Official Committee of Unsecured Creditors has not been appointed in this case and should have an opportunity to be heard on the Motion.

In sum, assuming the Court decides to grant the Motion, the Debtor should be authorized to borrow only the amount that this is necessary to avoid irreparable harm pending a final hearing on the Motion in approximately two weeks. Also, the Court should

1 order the Debtor to provide Chaucer with access to information so that it can evaluate

2 whether it would be interested in providing the Debtor with a post-petition loan on the

3 same terms as NHF or on terms more favorable than NHF by the final hearing.  The

4 Interim Order should be clear that there is no penalty for NHF being repaid the amounts

5 loaned and taken out earlier than the maturity date of the Proposed DIP Loan.  The Court

6 should also strike from the Interim Order the Debtor's self-serving findings and the

7 provisions that appear to be intended to override the interim nature of the order and the

8 restrictions set forth in Bankruptcy Rule 4004.  (*See* Mot., Ex. 1 at 8-9, ¶¶ 15 and 16.)

9

10 **VI.    CONCLUSION**

11     Based on the foregoing, if the Court is inclined to grant the Motion on an interim

12 basis, the Debtor should be authorized to borrow only the amount that is necessary to

13 avoid immediate and irreparable harm pending a final hearing on the Motion and the

14 Debtor should be ordered to provide Chaucer access to conduct due diligence so that it

15 can evaluate whether it would be interested in providing the Debtor with a post-petition

16 loan on the same terms as NHF or on terms more favorable than NHF by the final

17 hearing.

18

19 Dated:  September 12, 2014          SMILEY WANG-EKVALL, LLP

20
                                       By:    /s/ *Robert S. Marticello*
21                                            EVAN D. SMILEY
                                              ROBERT S. MARTICELLO
22                                            Attorneys for Creditor
                                              Chaucer Foods UK Limited
23

24

25

26

27

28

977639.1                                  8                              LIMITED OBJECTION

## **DECLARATION OF EVAN D. SMILEY**

I, Evan D. Smiley, declare as follows:

1. I am a partner of the law firm of Smiley Wang-Ekvall, LLP, attorneys Chaucer Foods UK Limited ("Chaucer") in the above-captioned bankruptcy case. I am licensed to practice before this Court and the courts of the State of California. I know each of the following facts to be true of my own personal knowledge, except as otherwise stated and, if called as a witness, I could and would competently testify with respect thereto. I make this declaration in support of Chaucer's limited objection (the "Objection") to the *Debtor's Emergency Motion for Interim Order (A) Authorizing Postpetition Financing Pursuant to Section 364 of the Bankruptcy Code, (B) Granting Liens, Including Priming Liens and Superiority Claims to Postpetition Lender Pursuant to Section 364 of the Bankruptcy Code, and (C) Providing Adequate Protection to Prepetition Lenders* [Docket No. 53] (the "Motion"). Capitalized terms not defined herein shall have the meanings ascribed to them in the Objection.

2. Attached hereto as Exhibit "1" is a true and correct copy of the LOI jointly submitted to the Debtor by Chaucer, Chung, and Delaski.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 11th day of September, 2014, at Costa Mesa, California.

　　　　　　　　　　　　　　　　　　　　/s/ *Evan D. Smiley*
　　　　　　　　　　　　　　　　　　　　EVAN D. SMILEY

# EXHIBIT "1"

**LETTER OF INTENT RE: OFFER TO PURCHASE ALL ASSETS OF THE BANKRUPTCY ESTATE OF *IN RE CRUNCHIES FOOD COMPANY, LLC*, CASE NO. 9:14-bk-11776 PC**

This Letter of Intent re: offer (the "**Offer**") to purchase all assets of the bankruptcy estate of *In re Crunchies Food Company, LLC* ("**Crunchies**" or "**Debtor**" or "**Estate**"), Case No 9:14-bk-11776 PC (the "Bankruptcy Case") is on behalf of a new entity to be formed and owned directly or indirectly by certain creditors of the Estate ("**Purchaser**") (the Debtor and the Purchaser shall be individually referred to as a "**Party**" and collectively referred to as "**Parties**") upon the principal terms and conditions set forth herein. Any obligation of the Purchaser, or its principals, to purchase the Debtor's Assets is conditioned upon: (a) the execution of definitive documentation of the transaction (the "**Definitive Documentation**"),(b) the entry of an authorizing the contemplated transaction by the Bankruptcy Court in the Bankruptcy Case (c) the entry of an order by the Bankruptcy Court approving bidding procedures as described herein and (d) the satisfactory completion of the Purchaser's due diligence. The terms and conditions discussed herein are an integrated agreement and are not divisible. The Definitive Documentation will supersede and replace this Letter of Intent in all respects.

1. Purchaser. Purchaser shall be a new entity to be formed and owned, directly or indirectly, by certain creditors of the Estate, including, Seung Chung, as Trustee of The Chung Family Trust, Provident Trust Group, LLC (FBO Khosrow Ziatabari IRA), Provident Trust Group, LLC (FBO Paridokht Ziatabari IRA), Provident Trust Group (FBO Aria Ziatabari IRA (collectively, the "Senior Secured Lenders")and the Donald DeLaski Estate (the foregoing shall be collectively referred to as the "**Secured Lenders**"); Chaucer Foods UK Limited and Broomco UK Limited (Chaucer Foods UK Limited and Broomco UK Limited shall be collectively referred to as "**Chaucer Foods**"); and such other third party or third parties, if any, as the Secured Lenders and Chaucer Foods may select.

2. Purchased Assets.

   a. Purchaser shall acquire substantially all of the assets of the Debtor and the Estate, including, without limitation, the following (collectively, the "**Purchased Assets**"):

   - Intellectual property, including but not limited to all patents, patent applications, copyrights, trademarks; trade or registered names, trade secrets, websites, web addresses, URL's, domain names, software, e-commerce software, the name "Crunchies" and all trade names related thereto including ; Fruit Crunchies, Veggie Crunchies, Organic Crunchies, Munch Pak, Little Crunchies, any software and the software and instruction manuals for the equipment assets to be purchased by Purchaser;

   - General intangibles, including but not limited to goodwill, all customer lists and/or databases, any and all customer contracts, including but not limited to Costco, Walmart, Rite Aid, SuperValu, related prepayments and/or deposits that Purchaser, in its sole and absolute discretion, elects to be assigned, all license agreements, all hosting rights to host designed websites, and any other intangibles; and

   - All of the other assets of Estate and Debtor, including property, plant and equipment, inventory, and accounts receivable.

970093.2

- 1 -

August 29, 2014

b.  The Purchased Assets shall exclude any avoidance actions under Sections 544, 545, 547, 548, 549, and 553 of the Bankruptcy Code related to the Purchased Assets, except for Claims Against Purchaser and its principals, which will be released in the Definitive Documentation (the "**Excluded Assets**").

3.  <u>Purchase Assets to be Purchased Free and Clear of Lien, Encumbrances, and Claims</u>. Pursuant to 11 U.S.C. § 363(b) and (f), the Purchased Assets shall be free and clear of any liens, encumbrances, claims, or interests, including, but not limited to, the following:

   a.  Senior Secured Lenders – security interest on all assets pursuant to a Security Agreement dated December 1, 2013 and an Amended and Restated Security Agreement dated February 3, 2014, securing obligations in the total principal amount of Two Million Dollars ($2,000,000.00). The foregoing security interests were perfected by the filing of a UCC-1 Financing Statement on December 20, 2013;

   b.  Donald DeLaski Estate – security interest on all assets pursuant to an Amended and Restated Promissory Note dated January 1, 2014 and an original note dated October 24, 2011 in the principal amount of Five Million Two Hundred Thousand Dollars ($5,200,000.00). The foregoing security interests were perfected by the filing of a UCC-1 Financing Statement on March 11, 2014;

   c.  Wells Fargo – security interest encumbering a forklift perfected by the filing of a UCC-1 Financing Statement on January 4, 2012; and

   d.  Accounts payables and unsecured claims - several million dollars of unsecured accounts <u>payables</u> including an unsecured debt to Chaucer Foods in the approximate amount of $1 million and any reclamation claims that may exist with respect to the Debtor's property.

4.  <u>Consideration</u>. Purchaser to acquire the Purchased Assets in exchange for:

   a.  A cash payment to the Estate in the sum of Three Hundred Thousand Dollars ($300,000.00), which will be carved out and "gifted" to the Estate by the Senior Secured Lenders for the benefit of administrative, priority unsecured and general unsecured creditors;

   b.  A waiver of the Secured Lenders' rights to any distribution from the Estate, excluding any rights or obligations of the Parties set forth in the Definitive Documentation; and

   c.  A waiver of Chaucer Foods' rights to any distribution from the Estate, excluding any rights or obligations of the Parties set forth in the Definitive Documentation.

5.  <u>Release of Claims by the Debtor and the Estate</u>. The Debtor and the Estate shall waive and release any and all known and unknown claims against the Secured Lenders, Chaucer Foods, and their respective affiliates, directors, officers, employees, members, trustees, assigns, and successors, including a waiver of any rights under California Civil Code Section 1542.

6.  <u>Assumed Liabilities</u>. Purchaser shall not assume any liability of the Debtor or the Estate unless specifically agreed to by Purchaser.

7. <u>Assumed Contracts</u>. Purchaser has the right to designate any executory contracts it wants to assume by providing written notice to the Debtor by no later than five (5) days prior to Bankruptcy Court's hearing to approve the sale. Any unpaid cure obligations will be paid from the cash component of the Purchase Price.

8. <u>Employees</u>. Solely at the Purchaser's discretion, Purchaser shall be authorized to communicate and negotiate with the Debtor's employees with regard to their continued employment by Purchaser.

9. <u>Due Diligence</u>. Upon execution and acceptance of this Offer by the Debtor, Purchaser shall have ten (10) days to conduct its due diligence and the Debtor shall immediately provide access to all information and documents to verify all key points of transaction, including but not limited to, assets, contracts, leases, licenses, intellectual property, encumbrances, liens, compliance wDebtor shall, on shortened notice, seek the Bankruptcy Court's approval ofith state and federal laws and regulations, licenses, permits, entitlements, consents and regulatory approvals to own and operate the Debtor's business. Purchaser's obligation to proceed with the transaction under any Definitive Documentation shall be contingent upon the satisfactory completion of due diligence and Purchaser's election to proceed with and conclude the transaction, in Purchaser's sole and absolute discretion. Purchaser shall provide written notice of satisfaction of this condition (the "**Notice of Satisfaction of Due Diligence**") by no later than one (1) business day after conclusion of its due diligence, unless such deadline is extended by mutual agreement of the Parties.

10. <u>Definitive Documentation</u>: The Parties shall use best efforts to complete and execute Definitive Documentation within fifteen (15) days after execution and acceptance of this Offer by the Debtor. The Definitive Documentation shall include customary provisions, representations, warranties, and conditions to closing, including, but not limited to, representations and warranties by the Debtor and as a condition of closing that: (1) the Debtor's business and the Purchased Assets have been maintained in the ordinary course consistent with past practices and industry standards, (2) that the Debtor's business and the Purchase Assets have not declined in value; and (3) that the Debtor's key customers remain in place.

11. <u>Bankruptcy Court Approval</u>.

   a. <u>Bidding Procedures Motion</u>. Debtor shall, on shortened notice, seek the Bankruptcy Court's approval of Bidding Procedures consistent with the terms of this Letter of Intent including, without limitation, the break-up fee and minimum overbid amounts described below. The Debtor shall file the Bidding Procedures Motion no later than one (1) business day after the execution of the Definitive Documentation.

   a. <u>Sale Motion</u>. Debtor shall, on shortened notice, seek the Bankruptcy Court's approval of: (1) the sale transaction contemplated herein, (2) the Definitive Documentation, and (3) the overbid procedures set forth below (the "**Sale Motion**"). The Sale Motion shall be in a form and substance acceptable to the Purchaser. The Debtor shall file the Sale Motion no later than one (1) business day after receipt of the Notice of Satisfaction of Due Diligence from Purchaser.

   b. <u>Overbid Terms</u>. Only a bidder who has submitted a Qualified Overbid (defined below) shall be authorized to bid for the Purchased Assets at the hearing on the Sale Motion. A "**Qualified Overbid**" shall be bid that: (1) is received by the Debtor on or before one (1) day before the hearing on the Sale Motion; (2) is submitted in writing; (3) is submitted by a bidder that has demonstrated to the Debtor its financial wherewithal to close the sale transaction contemplated herein at thel bid price; (4) discloses the bidder's connections with or relations to the Debtor and/or its officers, directors, insiders, or affiliates, and (5) be at least Seven Million Eight

Hundred Twenty-Two Thousand Dollars ($7,822,000.00) in all-cash with no contingencies.

    c.    <u>Break-up Fee</u>: In the event the Purchaser is not the Court-approved successful purchaser, the Purchaser shall be entitled to a break-up fee equal to 3% of the approved purchase price, which shall be paid to Purchaser from escrow.

12.    <u>Closing Date</u>: No later than the first business day occurring on or after fifteen (15) days following the satisfaction of all closing conditions, but no event later than forty-five (45) days following the expiration of the due diligence period.

13.    <u>Closing Conditions</u>: In addition to such other customary closing conditions, the following shall be included as conditions to closing of the sale transaction:

    1.    Purchaser shall have been approved by the Bankruptcy Court as the winning purchaser of the Purchased Assets on the terms and conditions set forth in the Definitive Documentation pursuant to an entered and final order, in a form and substance acceptable to the Purchaser, including a finding that the Purchaser is entitled to the protections of 11 U.S.C. § 363(m). The order is final if there is no timely filed appeal and no order staying the order pending such appeal. The requirement that the order approving the sale be a final sale is for the benefit of Purchaser and may be waived by Purchaser, in Purchaser's sole and absolute discretion.

    2.    All licenses, permits, entitlements, consents and regulatory approvals necessary for Purchaser to own and operate the Debtor's assets as contemplated shall have been issued or granted, as applicable, be free from any material default and shall have been assigned to or acquired by Purchaser or its designees and any necessary consents or approvals from governmental bodies to such assignments shall have been issued.

    3.    This Offer is subject to the contingency that Purchaser is able to make satisfactory arrangements with the Debtor's landlord for the use and occupation of the Debtor's premises commencing from the date of the Bankruptcy Court's approval of the sale and continuing for a period of not less than one (1) year thereafter.

    4.    All of the Debtor's representations and warranties shall be true and correct in all material respects.

    5.    All other conditions set forth in the Definitive Documentation shall have been satisfied.

14.    <u>Term of Offer</u>. This Letter of Intent shall expire by its own terms on September 2, 2014, at 12:00 p.m. (Pacific Time).

**"Purchaser"**

Dated: August _____, 2014    By: _____
                                                                   [Type Name]
                                                 Its: _____

- 4 -

Senior Secured Lenders

Dated: August 29, 2014        By: _____
                              [Type Name] Kevin Park
                              Its: Authorized Agent

Dated: August ____, 2014      By: _____
                              [Type Name]
                              Its: _____

Dated: August ____, 2014      By: _____
                              [Type Name]
                              Its: _____

[Signatures Continued on Next Page]

**"Debtor"**

Dated: August ____, 2014      CRUNCHIES FOOD COMPANY, LLC

                              By: _____
                              [Type Name]
                              Its: _____

Dated: August ____, 2014        By: _____
                                        [Type Name]
                                Its: _____
                                     Donald DeLaski Estate

Dated: August 29, 2014          By: _____
                                        [Type Name] Sean O'Keefe
                                Its: Attorney

Dated: August ____, 2014        By: _____
                                        [Type Name]
                                Its: _____

[Signatures Continued on Next Page]

"Debtor"

Dated: August ____, 2014        CRUNCHIES FOOD COMPANY, LLC

                                By: _____
                                        [Type Name]
                                Its: _____

Dated: August ____, 2014    By: _____
                            [Type Name]
                       Its: _____

Dated: August ____, 2014    By: _____
                            [Type Name]
                       Its: _____

                            Chiucer Foods
Dated: August 29, 2014      By: _____
                            [Type Name] Evan Smiley
                       Its: Attorney

[Signatures Continued on Next Page]

"Debtor"

Dated: August ____, 2014    CRUNCHIES FOOD COMPANY, LLC

                            By: _____
                            [Type Name]
                       Its: _____

970093.2                    - 5 -                    August 29, 2014

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

**650 Town Center Drive, Suite 950, Costa Mesa, California 92626**

A true and correct copy of the foregoing document entitled (*specify*): **LIMITED OBJECTION TO THE DEBTOR'S EMERGENCY MOTION FOR INTERIM ORDER (A) AUTHORIZING POSTPETITION FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE, (B) GRANTING LIENS, INCLUDING PRIMING LIENS AND SUPERPRIORITY CLAIMS TO POSTPETITION LENDER PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE, AND (C) PROVIDING ADEQUATE PROTECTION TO PREPETITION LENDERS; AND DECLARATION OF EVAN D. SMILEY IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **September 12, 2014**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

[X] Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

[ ] Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served)**:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **September 12, 2014**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

The Hon. Peter H. Carroll, United States Bankruptcy Court, Ctrm. 201, 1415 State Street, Santa Barbara, CA 93101

[ ] Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 9/12/14 | Margaret Sciesinski | /s/ *Margaret Sciesinski* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**
969035.1

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

Janet L Chubb     lbubala@kcnvlaw.com, wapplegate@kcnvlaw.com
Robert E Dye     rdye@ckdcounsel.com, sransom@ckdcounsel.com
Richard W Esterkin     resterkin@morganlewis.com, vrader@morganlewis.com
Brian D Fittipaldi     brian.fittipaldi@usdoj.gov
John-Patrick M Fritz     jpf@lnbrb.com
Mette H Kurth     kurth.mette@arentfox.com, nancy.peters@arentfox.com
David L. Neale     dln@lnbrb.com
Sean A Okeefe     sokeefe@okeefelc.com
Richard A Rodgers     rar@sd-attorneys.com
Evan D Smiley     esmiley@wgllp.com, msciesinski@wgllp.com
United States Trustee (ND)     ustpregion16.nd.ecf@usdoj.gov