SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Ori Katz (SBN: 209561)
Robert K. Sahyan (SBN: 253763)
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: 415-434-9100
Facsimile: 415-434-3947
Email: okatz@sheppardmullin.com
        rsahyan@sheppardmullin.com

COUNSEL TO OFFICIAL COMMITTEE
OF UNSECURED CREDITORS


LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
David L. Neale (SBN: 141225)
J.P. Fritz (SBN: 245240)
10250 Constellation Blvd., Suite 1700
Los Angeles, California  90067
Telephone:    (310) 229-1234
Facsimile:    (310) 22912477
Email: dln@lnbyb.com
        jpf@lnbyb.com

COUNSEL TO DEBTOR AND
DEBTOR-IN-POSSESSION

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA BARBARA DIVISION

| | |
|---|---|
| In re | Case No. 9:14-bk-11776-PC |
| CRUNCHIES FOOD COMPANY, LLC, | Chapter 11 |
| Debtor. | **DISCLOSURE STATEMENT DESCRIBING JOINT CHAPTER 11 PLAN OF LIQUIDATION FOR THE DEBTOR** |
| | Date:    May 6, 2015<br>Time:    10:00 a.m.<br>Place:    Courtroom 201<br>        United States Bankruptcy Court<br>        1415 State Street<br>        Santa Barbara, CA 93101-2511 |

# TABLE OF CONTENTS

Page

I. PREFATORY STATEMENT AND DEFINITIONS .................................................................. 1

II. INTRODUCTION ................................................................................................................. 1

III. DISCLAIMERS ................................................................................................................... 2

IV. OVERVIEW OF PLAN VOTING AND CONFIRMATION DEADLINES ........................... 4

    A.    Deadline for Plan Voting ......................................................................................... 4

    B.    Deadline for Objecting to Confirmation of the Plan .................................................. 5

    C.    Time and Place of the Confirmation Hearing ........................................................... 5

    D.    Contact for More Information on the Plan ................................................................. 5

V. HISTORY OF THE DEBTOR AND EVENTS LEADING TO CHAPTER 11 FILING ........... 5

    A.    Background and Description of the Debtor's Business .............................................. 5

    B.    The Debtor's Secured Debt Structure ....................................................................... 6

    C.    Lawsuits Against the Debtor .................................................................................... 7

    D.    The Debtor's Decision to File for Bankruptcy ........................................................... 7

VI. SIGNIFICANT POST-PETITION PROCEEDINGS ............................................................ 8

    A.    Use of Cash Collateral ............................................................................................. 8

    B.    Retention of Bankruptcy Counsel ............................................................................ 8

    C.    Formation of Committee .......................................................................................... 8

    D.    Stipulations on Treatment of Warehouse Liens ....................................................... 9

    E.    Post-Petition Financing and Sale of the Debtor's Assets ....................................... 10

    F.    Stipulations for the Rejection or Assumption and Assignment of Executory
        Contracts and Real Property Leases in Connection with the Sale ......................... 11

    G.    The Employment of the Debtor's Chief Restructuring Officer ................................ 13

    H.    The Post-Closing Debtor ........................................................................................ 13

    I.    The Bar Date ......................................................................................................... 14

    J.    Interim Fee Applications ........................................................................................ 14

VII. SUMMARY OF ASSETS AND LIABILITIES ................................................................ 14

    A.    Assets ............................................................................................................ 15

    B.    Liabilities ...................................................................................................... 16

VIII. DESCRIPTION OF THE LIQUIDATING PLAN ....................................................... 18

    A.    Summary of Treatment of Claims and Interests Under the Plan ........................... 18

    B.    Treatment of Unclassified Claims ................................................................... 19

    C.    Classified Claims .......................................................................................... 23

    D.    Executory Contracts and Unexpired Leases ...................................................... 29

    E.    Means for Implementation and Execution of Plan .............................................. 30

    F.    Effect of Confirmation of Plan ....................................................................... 49

    G.    Effectiveness of the Plan ............................................................................... 51

    H.    Retention of Jurisdiction ............................................................................... 52

    I.    Miscellaneous Provisions .............................................................................. 53

IX. CONFIRMATION REQUIREMENTS AND PROCEDURES ......................................... 56

    A.    Who is Entitled to Vote ................................................................................. 57

    B.    Non-Consensual ("Cramdown") Confirmation ................................................. 58

    C.    Objections to Confirmation ............................................................................ 58

    D.    Feasibility .................................................................................................... 58

    E.    Liquidation Analysis ..................................................................................... 59

    F.    Risk Factors ................................................................................................. 60

    G.    Tax Consequences of Plan ............................................................................. 61

    H.    Consequences to the Debtor ........................................................................... 62

    I.    Federal Income Tax Treatment of the Liquidating Trust ..................................... 63

    J.    Consequence to Holders of Claims ................................................................. 65

    K.    Consequences to Holders of Interests .............................................................. 66

    L.    Withholding .................................................................................................. 66

1

X. FURTHER ACCESS TO INFORMATION ................................................................. 67

2

XI. RECOMMENDATION AND CONCLUSION ........................................................... 1

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.

## PREFATORY STATEMENT AND DEFINITIONS

Crunchies Food Company, LLC (the "**Company**" or the "**Debtor**") is the Debtor and Debtor-in-possession in the within Chapter 11 bankruptcy case (the "**Bankruptcy Case**"). On August 15, 2014, the Company commenced a bankruptcy case by filing a voluntary Chapter 11 petition under the Bankruptcy Code. On September 30, 2014, an official committee of unsecured creditors (the "**Committee**") was appointed in the Bankruptcy Case.

The Debtor and the Committee (together, the "**Proponents**") are providing this Disclosure Statement to each known Holder of a Claim against or Interest in the Estate or the Debtor for the purpose of soliciting acceptances of the Joint Chapter 11 Plan of Liquidation for the Debtor (the "**Plan**"), proposed by the Proponents and filed contemporaneously herewith, and for purposes enabling the Holders of Allowed Claims entitled to vote on the Plan to make an informed decision with regard to voting on the Plan.

Unless the context indicates otherwise, capitalized terms used but not defined in this Disclosure Statement have the meanings set forth in the Plan. Unless the context indicates otherwise, capitalized terms used but not defined in this Disclosure Statement or in the Plan have the meanings assigned to such terms by the Bankruptcy Code or the Bankruptcy Rules or, if none, by common usage. All exhibits to this Disclosure Statement are incorporated as if fully set forth herein and are a part of this Disclosure Statement.   A list of defined terms is provided in Section II(A) of the Plan.

# II.

## INTRODUCTION

The Debtor commenced the Bankruptcy Case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on the Petition Date, August 15, 2014. As allowed under Chapter 11, the Proponents are proposing a liquidating plan. In other words, the Debtor seeks to accomplish payments to creditors under the terms of the Plan by liquidating all assets of the Estate and distributing all cash on hand, net income, and net proceeds to creditors entitled to distributions under the Plan.

The terms of the Plan will not be binding until the Court confirms the Plan, at which point the Plan will be binding on all Holders of Claims and Interests, and other parties in interest, irrespective of whether any given Holder of a Claim actually voted on the Plan.

The purpose of this Disclosure Statement is to provide "adequate information," as that term is used in Section 1125(a)(1) of the Bankruptcy Code, as far as is reasonably practicable in light of the nature and history of the Debtor, to enable a hypothetical reasonable member of a Class of Creditors or Interest Holders to make an informed judgment about the Plan before exercising any right to vote for acceptance or rejection of the Plan. The Disclosure Statement describes the Plan and contains information concerning, among other things, the history and operations of the Debtor, the assets available for distribution under the Plan, and major events in the Bankruptcy Case.

## III.

## DISCLAIMERS

THE DEBTOR AND COMMITTEE, AS PROPONENTS OF THE PLAN, STRONGLY URGE THAT EACH RECIPIENT CAREFULLY AND COMPLETELY REVIEW THE CONTENTS OF THIS DISCLOSURE STATEMENT, THE PLAN AND ALL EXHIBITS. PARTICULAR ATTENTION SHOULD BE GIVEN TO THE PROVISIONS OF THE PLAN AFFECTING OR IMPAIRING THE RIGHTS OF EACH HOLDER OF A CLAIM OR INTEREST. ALTHOUGH THE BANKRUPTCY COURT WILL CONSIDER WHETHER THIS DISCLOSURE STATEMENT CONTAINS SUFFICIENT INFORMATION TO ENABLE CLAIM HOLDERS TO MAKE AN INFORMED JUDGMENT IN EXERCISING THEIR RIGHT TO VOTE, SUCH APPROVAL DOES NOT CONSTITUTE A GUARANTEE BY THE BANKRUPTCY COURT THAT THE CONTENTS OF THIS DISCLOSURE STATEMENT ARE ACCURATE.

THIS DISCLOSURE STATEMENT CONTAINS THE ONLY AUTHORIZED STATEMENTS OR INFORMATION REGARDING THE DEBTOR'S FINANCIAL CONDITION AND THE PLAN. ALL PREVIOUS STATEMENTS AND REPRESENTATIONS ARE EXPRESSLY SUPERSEDED BY THIS DISCLOSURE STATEMENT.

THE PLAN IS SUMMARIZED BELOW UNDER THE HEADING "DESCRIPTION OF THE LIQUIDATING PLAN," BUT ALL SUMMARIES ARE QUALIFIED BY THE TERMS OF THE PLAN ITSELF, WHICH ARE IN ALL INSTANCES CONTROLLING. YOU MAY NOT RELY UPON THIS DISCLOSURE STATEMENT FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN. THE PLAN IS PROPOSED BY THE DEBTOR AND COMMITTEE IN GOOD FAITH, AND IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE. THE BANKRUPTCY COURT HAS NOT YET DETERMINED WHETHER OR NOT THE PLAN IS CONFIRMABLE AND MAKES NO RECOMMENDATION AS TO VOTING ON THE PLAN.

NOTHING CONTAINED IN THE PLAN OR DISCLOSURE STATEMENT SHALL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY THE DEBTOR, COMMITTEE, OR ANY OTHER PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED HEREIN. THE DELIVERY OF THIS DISCLOSURE STATEMENT SHALL NOT CREATE ANY IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN SINCE THE DATE OF THIS DISCLOSURE STATEMENT AND THE MATERIALS RELIED UPON IN PREPARATION OF THIS DISCLOSURE STATEMENT WERE COMPILED.

ANY FINANCIAL INFORMATION CONTAINED HEREIN, UNLESS OTHERWISE INDICATED, IS UNAUDITED. MOREOVER, BECAUSE OF THE DEBTOR'S FINANCIAL DIFFICULTIES, AS WELL AS THE COMPLEXITY OF THE DEBTOR'S FINANCIAL MATTERS, THE BOOKS AND RECORDS UPON WHICH THIS DISCLOSURE STATEMENT IN PART IS BASED, MAY BE INCOMPLETE OR INACCURATE. ALTHOUGH REASONABLE, GOOD FAITH EFFORTS HAVE BEEN MADE UNDER THE CIRCUMSTANCES TO BE ACCURATE, THE DEBTOR, THE COMMITTEE, AND THEIR RESPECTIVE PROFESSIONALS ARE UNABLE TO REPRESENT OR WARRANT THAT

THE INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT IS ABSOLUTELY WITHOUT ERROR. HOWEVER, THIS DISCLOSURE STATEMENT IS TRUE TO THE PROPONENTS' BEST KNOWLEDGE, INFORMATION AND BELIEF UNDER THE CIRCUMSTANCES.

THE CONTENTS OF THIS DISCLOSURE STATEMENT SHOULD NOT BE CONSTRUED AS LEGAL, BUSINESS, OR TAX ADVICE. EACH CLAIM OR INTEREST HOLDER IS URGED TO CONSULT WITH HIS OR HER OWN LEGAL COUNSEL AND/OR TAX ADVISOR AS TO THE LEGAL, TAX AND OTHER CONSEQUENCES TO SUCH HOLDER UNDER THE PLAN. THE PROPONENTS MAKE NO WARRANTIES OR REPRESENTATIONS REGARDING THE TAX IMPACT OF THE PLAN ON ANY CLAIM OR INTEREST HOLDER.

**IV.**

**OVERVIEW OF PLAN VOTING AND CONFIRMATION DEADLINES**

**A.    Deadline for Plan Voting**

Pursuant to the provisions of the Bankruptcy Code, and as discussed further herein, only Classes of Allowed Claims which receive something under the Plan but are "impaired" as that term is defined under section 1124 of the Bankruptcy Code are entitled to vote to accept or reject the Plan. After approval of this Disclosure Statement by the Bankruptcy Court, if you Hold an Allowed Claim in a Class entitled to vote on the Plan, you will receive a ballot along with this Disclosure Statement which will allow you to vote to accept or reject the Plan. Your acceptance or rejection of the Plan must be made in writing and must be made by completing the ballot sent to you and by following the instructions included with said ballot. In order for your vote to be counted, your signed, completed ballot must be received by no later than the date and time that will be provided for therein.

IF YOUR BALLOT IS NOT PROPERLY COMPLETED, SIGNED AND RECEIVED AS DESCRIBED, IT WILL NOT BE COUNTED. IF YOUR BALLOT IS DAMAGED OR LOST, YOU MAY REQUEST A REPLACEMENT BY MAKING A WRITTEN REQUEST TO

COUNSEL FOR THE DEBTOR AT THE ADDRESS SHOWN IN THE CAPTION OF THIS DISCLOSURE STATEMENT.

**B.      Deadline for Objecting to Confirmation of the Plan**

Any objections to the confirmation of the Plan must be in writing and must be filed with the Bankruptcy Court and served upon the Proponents. The deadline for objecting to confirmation of the Plan is [_____], 2015.

**C.      Time and Place of the Confirmation Hearing**

On [_____], 2015 the Honorable Peter H. Carroll, United States Bankruptcy Judge, will hold a hearing in Courtroom 201 of the United States Bankruptcy Court for the Central District of California located at 1415 State Street, Santa Barbara, California 93101, to determine whether or not to confirm the Plan . The confirmation hearing may be continued from time to time and day to day without further notice. If the Bankruptcy Court confirms the Plan, it will enter the Confirmation Order.

**D.      Contact for More Information on the Plan**

Any party in interest desiring further information about the Plan, or having questions concerning voting procedures, should contact counsel to the Debtor as set forth in the caption of this Disclosure Statement:

J.P. Fritz, Esq.

Levene, Neale, Bender, Yoo & Brill L.L.P.

10250 Constellation Blvd., Suite 1700

Los Angeles, California 90067

**V.**

**HISTORY OF THE DEBTOR AND EVENTS LEADING TO CHAPTER 11 FILING**

**A.      Background and Description of the Debtor's Business**

The Debtor was a packaged healthy snack food company co-founded in Ventura County in 2006 by James P. Lacey with its operations located in Westlake Village, California. The Debtor was established in response to the rapid and overwhelming demand for good tasting and truly healthy natural snacks on the market, and it enjoyed incredible growth year over year. The Debtor

1  developed a line of delicious, fun, pure foods without preservatives, added sugars, trans fats, or

2  excessive sodium.

3      The Debtor and its products received favorable coverage in some 40 national magazines

4  and hundreds of regional newspapers. The Debtor almost tripled sales in 2012 and distributed its

5  products through 26,000 stores. In 2013, the Debtor's business was valued at approximately $15

6  million as a going concern for purposes of raising new capital.

7      To support its growth, the Debtor raised capital contributions from 53 shareholders and

8  reinvested profits generated by the Debtor back into the company. However, the rapid growth of

9  the Debtor's business required more funding than was available from investors and internal

10 operations. As a result, the Debtor had to turn to third party financing to support its expanding

11 operations.

12 **B.      The Debtor's Secured Debt Structure**

13     In December 2013, the Debtor received a loan for $1.5 million from Seung Chung, as

14 Trustee of the Chung Family Trust ("***Chung***"), and then an additional $500,000 in February 2014,

15 which loan was secured by all of the Debtor's assets (the "***Chung Loan***"). A UCC-1 financing

16 statement for the Chung Loan was filed with the California Secretary of State on December 20,

17 2013. The purpose of the loan was to grow and expand the Debtor's business. Kevin Park ("***Mr.***

18 ***Park***") was the key business person on behalf of Chung involved in dealings between the Debtor

19 and Chung prior to and during the Debtor's bankruptcy case.

20     The Debtor received two loans in the amounts of $300,000 and $500,000 in 2010 and a

21 third loan in the amount of $4.2 million in October 2011 for a total loan amount of $5 million

22 from the Donald Delaski Revocable Trust, Dated December 14, 2000 ("***Delaski***"), which loan was

23 secured by all of the Debtor's assets (the "***Delaski Loan***"). The loan was originally unsecured but

24 was renegotiated for a lower interest rate and made secured in January 2014. A UCC-1 financing

25 statement for the Delaski Loan was filed with the California Secretary of State on March 11, 2014.

26 The purpose of the loan was also to grow and expand the Debtor's business. Delaski is also a

27 member of the Debtor with a $2 million equity investment. The Chung Loan had priority over the

28

1  Delaski Loan. Edward Grubb ("**Mr. Grubb**") was the key business person involved in the Debtor's

2  case for Delaski.

3  **C.    Lawsuits Against the Debtor**

4          The Debtor received the raw materials for its products from various vendors, including

5  Chaucer Foods Ltd, a United Kingdom limited company ("**Chaucer**"), which supplied it with

6  freeze dried strawberries. On October 18, 2013, Chaucer filed a lawsuit against the Debtor in

7  Ventura County Superior Court entitled, *Chaucer Foods Ltd. v. Crunchies Food Company, LLC*,

8  Case No. 56-2013-00443644-CU-BC-VTA (the "**Chaucer Lawsuit**"), claiming the Debtor owed it

9  at least $1,537,828 for unpaid invoices. The Debtor and Chaucer reached a settlement agreement,

10  but the lawsuit greatly damaged the Debtor's business during October, November, and December

11  of 2013.

12          The settlement agreement set forth a payment schedule requiring the Debtor to make

13  installment payments such that the total debt would be paid in full by July 31, 2014. Over a three-

14  month period, the Debtor paid approximately one-third of the debt to Chaucer, totaling

15  approximately $500,000. However, the Debtor was unable to make all of the payments in

16  accordance with the schedule in the agreement.

17          The Debtor also received supplies from another supplier, Shandong Searsport Foods, Co.,

18  Ltd. ("**Searsport**"). Separate and apart from the Chaucer litigation, on August 20, 2013, Searsport

19  sued the Debtor for a debt of at least $1,033,118.14, in a lawsuit entitled *Shandong Searsport*

20  *Foods v. Crunchies Food*, bearing case number 56-2013-00440790-CU-CL-VTA. On August 6,

21  2014, judgment was entered in favor of Searsport and against Debtor in the sum of $880,192.17.

22  Searsport asserts that the Debtor made no payments to reduce this Judgment.  Not having

23  completed review of its books and records, the Debtor reserves all rights to dispute the foregoing.

24  **D.    The Debtor's Decision to File for Bankruptcy**

25          In order to preserve the Debtor's estate, the value as a going concern, and recovery for all

26  creditors and stakeholders, the Debtor determined in its reasonable business judgment that filing

27  for chapter 11 bankruptcy was in the best interest of the estate and its creditors. The Debtor filed

28  for bankruptcy protection on the Petition Date, August 15, 2014.

# VI.

## SIGNIFICANT POST-PETITION PROCEEDINGS

### A.    Use of Cash Collateral

On August 18, 2014, the Debtor filed an Emergency Motion for Authority to Use Cash Collateral and to Provide Adequate Protection on an Interim Basis Pending a Final Hearing [Dkt. No. 8] (the "*Cash Collateral Motion*") requesting the Court's permission to utilize Chung's and Delaski's cash collateral on an interim basis in accordance with a proposed budget. Chung, Delaski, and Chaucer objected to the Cash Collateral Motion. At a hearing held on August 22, 2014, the Court granted the Cash Collateral Motion over objections of Chung, Delaski, and Chaucer. Ultimately, The Provident Trust Group, LLC ("Provident"), Chung, and Delaski stipulated for use of their cash collateral, which the Court approved pursuant to an order entered on September 18, 2014.

### B.    Retention of Bankruptcy Counsel

On September 12, 2014, the Debtor filed its *Application to Employ Levene, Neale, Bender, Yoo & Brill L.L.P. as Bankruptcy Counsel Pursuant to 11 U.S.C. §§ 327, 330, and 331* [Dkt. No. 71] (the "*LNBYB Employment Application*") seeking an order authorizing the Debtor to employ Levene, Neale, Bender, Yoo & Brill L.L.P. ("*LNBYB*") as general bankruptcy counsel for the Debtor effective as of the Petition Date. On October 14, 2014, the Court entered an order approving the LNBYB Employment Application.

### C.    Formation of Committee

On September 23, 2014, the Committee was formed pursuant to Bankruptcy Code section 1102. The U.S. Trustee filed its *Appointment and Notice of Appointment of Official Committee of Unsecured Creditors* [Dkt. No. 113] on September 30, 2014.  The following unsecured creditors were appointed as members of the Committee: Imperial Valley Foods, Inc., DMH Ingredients, Inc., Bella Food Sales, LLC, and Shandong Searsport Foods Co., Ltd. The Committee retained Sheppard, Mullin, Richter & Hampton LLP ("*Sheppard Mullin*") as its counsel. The Court approved Sheppard Mullin as counsel for the Committee effective as of September 23, 2014 pursuant to an order entered on November 26, 2014.

**D.      Stipulations on Treatment of Warehouse Liens**

In the operation of its business, the Debtor stored its products in one warehouse operated by Dependable Distribution Centers ("***DDC***") in Los Angeles, and two warehouses operated by C.H. Robinson Worldwide, Inc. ("***CH Robinson***") in Chicago and New Jersey.  DDC and CH Robinson held statutory and/or contractual liens on the Debtor's products stored at the warehouses, which products the Debtor needed to ship to fulfill orders to key customers.  CH Robinson claimed that it was owed approximately $150,000 and asserted its statutory and contractual rights and refused to release the products from its warehouses until adequate protection for its lien was satisfied.

After intense negotiations on both sides, on or about September 8, 2014, the Debtor entered into a stipulation with CH Robinson for the release and shipment of product (the "***CH Robinson Stipulation***") [Dkt. No. 48].  The Debtor agreed to prepay CH Robinson $5,000 per month for each warehouse facility for rent and $3,500 per week for warehousing services that were trued up at the end of every month.  The Debtor further agreed that CHR has a possessory lien that is valid and duly perfected and that the Debtor would pay CH Robinson $5,000 on a weekly basis as partial adequate protection of CH Robinson's possessory lien, which would pay down CH Robinson's prepetition Claim.  On September 16, 2014, the Court held an emergency hearing to consider the CH Robinson Stipulation and approved it pursuant to an order entered on September 16, 2014 [Dkt. No. 78].

On or about October 16, 2014, the Debtor and DDC entered into a stipulation on similar terms for the treatment of DDC's prepetition warehouse lien of approximately $14,984 (the "***DDC Stipulation***") [Dkt. 145].  The Debtor agreed to pay $2,000 on a weekly basis for partial adequate protection of DDC's possessory lien, which would be applied to pay down the prepetition Claim. The Debtor further agreed to remain current on post-petition obligations to DDC.  On October 16, 2014, the Court entered an order approving the stipulation with DDC without the need for a hearing [Dkt. No. 147].

E.    **Post-Petition Financing and Sale of the Debtor's Assets**

Following the Petition Date, the Debtor needed post-petition financing. On September 10, 2014, the Debtor filed a motion to approve post-petition financing (the "***Financing Motion***") from NH Foods, LLC ("***NHF***"), which the Court set for emergency hearing on September 12, 2014. Thereafter, on the morning of the hearing, NHF informed the Debtor that it would not fund the loan.

At the hearing on the Financing Motion on Friday, September 12, 2014, and with cash reserves dwindling, Delaski represented to the Court that it would step into the shoes of NHF and fund the post-petition loan on the same terms. As a condition to funding the loan, the Debtor was required to comply with the following:

The Debtor would sell its business and substantially all of its assets (the "***Sale***") by October 14, 2014;

The Debtor was required to accept Mr. Michael Gallegos, selected by Messrs. Park and Grubb, to act as the Debtor's financial advisor and have authority to approve all checks written by the Debtor in excess of $500 until the Sale was completed; and

The Debtor would accept a stalking horse bid from Chung and Delaski (or their designee) and proceed with the Sale.

A continued hearing on the Financing Motion was set for Thursday, September 18, 2014. The Court set October 3, 2014, as the date of the hearing to approve the bid procedures (the "***Bid Procedures***") for the Sale of the Debtor's assets to the Delaski/Chung stalking horse bidder, and, on September 26, 2014, the Debtor filed its motion to approve the Bid Procedures.

Delaski ultimately funded only $80,000 of the $250,000 commitment and then refused to fund anymore. On September 28, 2014, the Delaski/Chung group officially retracted its stalking horse bid. At this point, the Debtor was running out of the funds it needed to keep its business running and to preserve the Debtor's assets to realize any value for the Debtor's creditors at the Sale.

At the October 3, 2014 hearing to approve the Bid Procedures, Chaucer made an offer to fund an additional $250,000 of post-petition financing and serve as the stalking horse bidder on

the Sale, which was then scheduled for October 15, 2014.    The Court approved the Bid Procedures, subject to the parties finalizing details amongst themselves, as proposed at the hearing. However, in the week that followed, the parties had significant material disagreements on the terms of the sale, reasonableness of due diligence requests, and conditions of financing, such that a resolution was not reached until Friday, October 10, 2014.

Due to the delay in arriving at an agreement on the Bid Procedures, and to enable the Debtor to further market its assets in the hopes of attracting an overbidder to bid at the auction, the parties agreed to continue the Sale to October 21, 2014 at 1:30 p.m., with an auction for the Debtor's assets to be held in Court (the "*Auction*").

In that time, the Debtor's cash position diminished substantially, and the Debtor required another cash infusion to operate its business. Chaucer agreed to extend further financing to the Debtor in the form of $100,000 in cash and $80,000 in freeze dried strawberries to sustain the Debtor's business operations pending the Sale.

Ultimately, no overbidders showed up at the Auction, and Chaucer became the winning bidder and purchased substantially all of the Debtor's assets for $3,630,000, comprised principally of (i) a $2,950,000 credit bid, as the holder of the Chung Loan and Delaski Loan, (ii) a $430,000 credit bid for the post-petition financing from Chaucer; (iii) an $80,000 credit bid for the post-petition financing from Delaski; (iv) and $350,000 in cash (the "*Purchase Price*"). The Sale closed on October 24, 2014. Ultimately, the Debtor received $300,000 in cash from the Sale proceeds, as $50,000 of the cash component of the Sale proceeds was set aside for the cure of certain executory contracts.

## F.    Stipulations for the Rejection or Assumption and Assignment of Executory Contracts and Real Property Leases in Connection with the Sale

After the Sale closed, there remained outstanding issues on the assumption and assignment of certain of the Debtor's contracts.  The Debtor had a licensing agreement with Warner Bros. for the use of Warner Bros. trademarks and characters in some of the Debtor's products.  The Debtor also had a contract with AEG to participate as a sponsor at certain of AEG's athletic events, such

as cycling tournaments and footraces.  The Debtor was also a party to a prepetition settlement

agreement with Brien Seay regarding the rights to and use of certain UPC codes.

Warner Bros., AEG, and Mr. Seay each filed objections to the Sale in connection with the

treatment of contracts between each of them and the Debtor.  The Court continued the hearing on

the assumption and assignment of contracts to November 5, 2014 for further briefing or resolution

amongst the parties.  On October 29, 2014, the Debtor, the Buyer, and Warner Bros. entered a

stipulation to assume the Warner Bros. contract with a cure amount of $0.00 and assign it to the

Buyer.  On October 30, 2014, the Debtor and AEG entered a stipulation to reject the Debtor's

contract with AEG, and it was not assigned to the Buyer as part of the Sale.

On October 31, 2014, the Debtor filed its reply brief to Mr. Seay's objection, wherein the

Debtor contended that the contract with Seay was not "executory" and required no cure;  Mr. Seay

objected, to the contrary, that the contract was executory and required a cure payment of $50,000.

Pre-petition, on June 13, 2014, the Debtor and Mr. Seay entered into a settlement agreement that

required Mr. Seay to irrevocably transfer and assign all rights and interests in certain UPC Codes

to the Debtor conditioned on payment of $250,000 and subject to Mr. Seay's right to transition

away from the UPC codes over a six month period.  The Debtor argued that that the settlement

agreement was not an executory contract because Mr. Seay fully performed his material

obligations under the agreement by irrevocably transferring the UPC codes to the Debtor

prepetition and had no further obligations.  The Debtor argued that, separate and apart from that

material obligation, Mr. Seay had a choice (not an obligation), at his complete discretion, to stop

using the UPC codes before December 15, 2014, based on an incentive of being paid an additional

$50,000 from the Debtor.  However, because the choice was discretionary and not mandatory, the

contract was not executory and no cure payment would be required.  On November 4, 2014, Mr.

Seay filed his supplemental reply.  However, by the time of the hearing on November 5, 2014, the

Buyer and Mr. Seay reached an agreement that the settlement agreement would be deemed to be

an executory contract and would be assumed and assigned to Buyer for a cure amount of $32,000,

conditioned on Mr. Seay transitioning away from using the UPC codes by January 31, 2015.  On

1  November 5, 2014, the Court entered an order approving the stipulation between the Buyer and

2  Mr. Seay.

3          The Debtor was not a party to the November 5, 2014 stipulation between the Buyer and

4  Mr. Seay or the agreement for a $32,000 cure.  However, on November 7, 2014, the Debtor, the

5  Committee, and the Buyer entered into a stipulation by which the Debtor and its estate gave up its

6  right to a $50,000 fund of Sale proceeds set aside to cure executory contract and lease defaults in

7  exchange for the Buyer to pay certain post-petition payroll and assume and honor certain paid-

8  time-off ("**PTO**") liabilities for the Debtor's employees.  The Debtor and Committee

9  acknowledged that the $50,000 set aside would be insufficient to cover all of the cure costs in

10  connection with the Sale, and the relinquishment of the $50,000 in exchange for the Buyer's

11  honoring of PTO liabilities and certain payroll was most beneficial to the estate.

12          On November 4, 2014, the Debtor, the Buyer, and the landlord for the Debtor's office and

13  plant at Cabrillo Westlake (the "**Landlord**") entered into a stipulation for cure, assumption, and

14  assignment of the real property lease.  The Buyer paid the Landlord $23,870.36, comprised of (i)

15  $8,742.34 cure, (ii) $12,262 for November 2014 rent and $2,866.02 for November 2014 common

16  area maintenance.  On November 5, 2014, the Court entered an order approving the stipulation.

17  **G.**      **The Employment of the Debtor's Chief Restructuring Officer**

18          As a condition of the post-petition financing provided by Chaucer and the consent to use of

19  cash collateral provided by Chung, the Debtor was required to employee Province, with Peter

20  Kravitz, as its chief restructuring officer ("**CRO**") for management through the Sale process and

21  closing.  Province's employment began on or about October 6, 2014, and the Debtor filed its

22  application to employ Province on or about October 24, 2014.  The employment application is

23  pending while the Debtor and Committee stipulated to continuances with the Office of the United

24  States Trustee to work out an agreement on the employment or file an objection thereto.

25  **H.**      **The Post-Closing Debtor**

26          Following the sale of substantially all of its assets, since October 24, 2014 the Debtor has

27  continued as a shell company with its only employee being its CRO. The Debtor has whittled its

28

1  expenses down to a *de minimis* amount with the goal of preserving as much as possible of
2  remaining cash to fund the Plan.

3  **I.      The Bar Date**

4        The deadline for creditors and holders of interest in the Debtor to file proofs of claim or
5  proofs of interest is January 31, 2015.  The Debtor filed a motion on October 24, 2014 to establish
6  the bar date for filing proofs of claim.  On December 1, 2014, the Court granted the motion setting
7  a bar date, and on December 2, 2014, the Debtor served the notice of bar date on all parties
8  requiring notice.

9  **J.      Interim Fee Applications**

10        On February 25, 2015, the Court entered its order granting approval of interim applications
11  for allowance of fees and expenses of the Professionals listed in the table below in such amounts
12  as shown in the table:

| Professional | Period | Amount Allowed | Unpaid Balance |
|---|---|---|---|
| LNBYB | 8/15/14 – 12/31/14 | $354,038.30 | $164,961.87 |
| Sheppard Mullin | 9/24/14  - 12/31/14 | $107,087.42 | $58,448.39 |
| Silver Law Group, P.C. | 8/15/14 – 12/31/14 | $31,009.61 | $16,925.07 |

**VII.**

**SUMMARY OF ASSETS AND LIABILITIES**

19        The Plan proposed by the Proponents is one of liquidation that seeks to monetize and
20  maximize the value of the Debtor's remaining assets in order to distribute Cash to Holders of
21  Allowed Claims pursuant to the terms of the Plan. As discussed above, the Debtor has undertaken
22  a number of actions designed to preserve the value of its assets and ameliorate its financial
23  distress. Now, the Debtor has sold substantially all of its assets and is a shell company with
24  minimal administrative expenses. The most valuable remaining assets of the Debtor consist of
25  potential Claims against the Debtor's former directors and officers and preference actions.

26        The following is a summary of the assets and liabilities of the Debtor as of the date of this
27  Disclosure Statement, or as of a given date otherwise noted. The summary of the Debtor's
28  liabilities is categorized based on the Classes of Claims and Interests provided for under the Plan

as well the designations applicable to unclassified Claims under the Plan, discussed in Section VIII below.

**A.      Assets**

**1.      Cash on Hand**

As of December 8, 2014, the Debtor was in possession of Cash totaling approximately $295,000. Of this amount, $200,000 was utilized to pay the interim Professionals Fee Claims described in Article VI(J) above, leaving approximately $95,000 of Cash that currently remains in the Estate. Such Cash is unencumbered by any liens and will be utilized to fund the Plan, including payment of administrative expenses, distributions to creditors, and funding of reserve amounts.

**2.      Causes of Action**

The Plan expressly reserves all Causes of Action for the Liquidating Trust after the Effective Date. The Debtor and the Estate are in the process of evaluating all Causes of Action that could be pursued to the benefit of the Estate and/or the Liquidating Trust as the case may be including, without limitation:

- All Claims and Causes of Action against the Debtor's current and former directors, officers, employees and management except as otherwise set forth in the Plan; and

- All Claims and Avoidance Actions against any Person identified on the Statement of Financial Affairs of the Debtor as a recipient of a payment made or property transferred by or on behalf of the Debtor prior to the Petition Date.

The Debtor has not concluded its investigation into all of the Causes of Action. Accordingly, any and all Causes of Action that may exist against any Person or Entity may be pursued by the Liquidating Trustee, regardless of whether, or the manner in which, such Causes of Action are identified in the Plan or this Disclosure Statement. The failure of the Debtor to identify a Cause of Action in the Plan or this Disclosure Statement shall not constitute a waiver or release by the Debtor or the Estate of any such Cause of Action. Any and all Causes of Action shall survive entry of the Confirmation Order for the benefit of the Debtor and the Estate and, on and after the Effective Date, for the benefit of the Liquidating Trust and its beneficiaries.

**B.    Liabilities**

    **1.    Administrative Claims (Unclassified)**

    In addition to the statutory fees payable to the Office of the United States Trustee, the Debtor is aware of the following potential Holders of Administrative Claims, as defined and treated under the Plan, as of the date of this Disclosure Statement:

- LNBYB, bankruptcy counsel to the Debtor;
- Silver Law Group, special corporate counsel to the Debtor;
- Peter S. Kravitz of Province, Inc., CRO to the Debtor; and
- Sheppard Mullin, counsel to the Committee.

    **2.    Priority Tax Claims (Unclassified)**

    The Debtor's Schedules do not reflect any Priority Tax Claims. However, the State of California Franchise Tax Board has filed a Claim against the Debtor in the amount of $6,060.46, asserting a priority status for such amount.  The Employment Development Department filed a Claim in the amount of $40,642.96, of which $34,390.83 is asserted as a priority amount. The Debtor and/or the Liquidating Trustee, as the case may be, are still evaluating all Claims, and will continue to evaluate Claims as they are filed, and reserve all rights with respect to objecting to or otherwise challenging any Priority Tax Claim.

    **3.    Priority Non-Tax (Class 1)**

    The Debtor's Schedules reflect three Claims entitled to priority under the Bankruptcy Code, other than those discussed above as Administrative Claims and Priority Tax Claims, as follows:

| Name | Amount Claimed |
| --- | --- |
| Daniel Lacey | $4,254.48 |
| David Alvarez | $4,199.70 |
| Dennis Aylward | $1,350.00 |
| **Total:** | **$9,804.18**[1] |

---

[1] James Lacey filed Claim #44 in the amount of 381,800, claiming priority status for salary and other employment related benefits, which, even if valid, is well above the statutory maximum of Section 507(a)(4).

1       Such Claims included in Class 1 under the Plan were not scheduled as contingent,

2 unliquidated or disputed and so, in the absence of an objection, constitute an Allowed Claim for

3 purposes of the Plan. The Debtor and/or the Liquidating Trustee, as the case may be, are still

4 evaluating all Claims, and will continue to evaluate Claims as they are filed, and reserve all rights

5 with respect to objecting to or otherwise challenging any Class 1 Claim.

6      **4.**     **Miscellaneous Secured Claims (Classes 2 to 6)**

7       The Debtor's Schedules reflect secured Claims totaling $7,352,333.99, as follows:

| Class | Name | Amount Claimed |
|---|---|---|
| 2 | C.H. Robinson Worldwide Inc. | $104,764.58 |
| 3 | Dependable Dist. Center | $15,126.29 |
| 4 | Donald DeLaski Trust | $5,220,446.12 |
| 5 | Provident Trust Group LLC | $50,000.00 |
| 5 | Provident Trust Group LLC | $519,000.00 |
| 5 | Provident Trust Group LLC | $431,000.00 |
| 5 | The Chung Family Trust | $1,000,000.00 |
| 6 | Wells Fargo Bank, N.A. [2] | $12,000.00 |
| | **Total:** | **$7,352,333.99** |

14      As part of the Sale of substantially all of the Debtor's assets, the largest secured Claims,

15 consisting of the Claims of Provident Trust Group LLC, The Chung Family Trust and Donald

16 DeLaski Trust, were fully satisfied and resolved as these secured Claims were credit bid by the

17 winning bidder at the Auction. The other remaining secured Claims—the Claims of C.H.

18 Robinson Worldwide, Inc., Dependable Dist. Center, and Wells Fargo Bank, N.A.—were fully

19 satisfied and resolved pursuant to a stipulation and/or cures associated with the assumption and

20 assignment of the Debtor's contracts with such parties.  Therefore, the Debtor believes that all

21 secured Claims have been satisfied or otherwise resolved. Nonetheless, the Debtor and/or the

22 Liquidating Trustee, as the case may be, are still evaluating Claims, and will continue to

23 evaluate Claims as they are filed, and reserve all rights with respect to objecting to or otherwise

24 challenging any Claim in Classes 2 through 6.

25      **5.**     **General Unsecured Claims (Class 7)**

26      The majority of the unsecured Claims against the Debtor are unsecured Claims not entitled

27 to priority under the Bankruptcy Code and generally relating to trade credit and the provision of

28     [2] Wells Fargo filed Proof of Claim No. 3-1, asserting a secured Claim in the amount of $7,223.49.

pre-petition services to the Debtor. The Debtor believes that there is approximately $5.5 million in

Claims against the Debtor in this Class 7.  The Debtor and/or the Liquidating Trustee, as the case

may be, are still evaluating all Claims, and will continue to evaluate Claims as they are filed, and

reserve all rights with respect to objecting to or otherwise challenging any Class 7 Claim.  A list of

the holders of general unsecured claims against the Debtor's Estate is attached as Exhibit "A"

hereto.

**6.      Interests in the Debtor (Class 8)**

The Debtor is owned by a number of individuals, Trusts, and investment groups, all of

whose respective Interests in the Debtor will be cancelled pursuant to the terms of the Plan.  A list

of the holders of interests in the Debtor is attached as Exhibit "B" hereto.

**VIII.**

**DESCRIPTION OF THE LIQUIDATING PLAN**

**A.      Summary of Treatment of Claims and Interests Under the Plan**

As required by the Bankruptcy Code, the Plan classifies Claims and Interests in various

Classes and states whether each Class of Claims or Interests is impaired or unimpaired, as those

terms are defined by section 1124 of the Bankruptcy Code. The Plan further provides the treatment

each Class will receive. Only Allowed Claims are eligible to receive any distribution under the

Plan. Further, pursuant to Bankruptcy Code section 1123, certain types of Claims are not placed

into Classes and instead are unclassified. These unclassified Claims are not considered impaired

and are not entitled to vote on the Plan because their treatment is specified under the Bankruptcy

Code. The following chart summarizes the structure of the Plan, which is described in further

detail in the Sections of this Disclosure Statement that follow.

| Class | Description | Treatment of Allowed Claims / Interests | Voting |
|-------|-------------|------------------------------------------|--------|
| N/A | Administrative Claims | Paid in full (with the exception of Professional Fee Claims, as described below) | Unclassified, Not Entitled to Vote (and, in the case of the Professional Fee Claims, such Claimants have agreed to such treatment) |

| N/A | Priority Tax Claims | Paid in full or such other treatment as Claimant agrees | Unclassified, Not Entitled to Vote |
|-----|---------------------|---------------------------------------------------------|------------------------------------|
| 1 | Priority Non-Tax Claims | Paid in full or such other treatment as Claimant agrees | Unimpaired, Not Entitled to Vote |
| 2 | CH Robinson Worldwide Inc. Secured Claim | In accordance with the CH Robinson Stipulation | Unimpaired, Not Entitled to Vote |
| 3 | Dependable Distribution Center Secured Claim | In accordance with the DDC Stipulation | Unimpaired, Not Entitled to Vote |
| 4 | Donald Delaski Trust Secured Claim | Fully satisfied through Sale | Unimpaired, Not Entitled to Vote |
| 5 | Provident Trust Group LLC & The Chung Family Trust Secured Claim | Fully satisfied through Sale | Unimpaired, Not Entitled to Vote |
| 6 | Wells Fargo Bank, N.A. | Abandonment or surrender through Sale | Unimpaired. Not Entitled to Vote |
| 7 | General Unsecured Claims | Pro Rata distributions | Impaired, Entitled to Vote |
| 8 | Interests in the Debtor | No Distribution, Interests cancelled | Impaired, Deemed to Reject Plan |

**B.    Treatment of Unclassified Claims**

**1.    Administrative Claims**

As provided under Bankruptcy Code section 1123(a)(1), Administrative Claims are not classified for purposes of voting on, or receiving distributions under, the Plan. Accordingly, holders of Administrative Claims are not entitled to vote on the Plan.

a.    **Pre-Confirmation Date Administrative Claims**

Except for Professional Fee Claims and fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930, all requests for payment of Administrative Claims incurred during the Bankruptcy Case shall be filed and served on the Liquidating Trustee no later than thirty (30) days after the Effective Date. To the extent that Allowed Administrative Claims have not already been paid, satisfied or otherwise released prior to the Effective Date, and except to the extent that a Holder of an Allowed Administrative Claim, agrees to a different treatment, each Holder of an Allowed Administrative Claim (except with respect to the Professional Fee Claims, which shall be treated as set forth in Section III.A.2 of the Plan) shall receive Cash in an amount equal to such Allowed Claim, in full and final satisfaction, settlement and release and in exchange for such Claim, on the later of the Effective Date or the date such Administrative Claim becomes an Allowed Administrative Claim pursuant to a Final Order of the Bankruptcy Court, or as soon

1   thereafter as reasonably practicable. The payments of the Allowed Administrative Claims shall be

2   made from the Initial Administrative Reserve Amount.

3                    b.     **Professional Fees**

4         All Professionals seeking an award by the Bankruptcy Court of compensation for services

5   rendered or reimbursement for expenses incurred through and including the Effective Date in

6   accordance with section 503(b) of the Bankruptcy Code shall file their respective final

7   applications for allowance of compensation for services rendered and reimbursement of expenses

8   incurred through the Effective Date by no later than sixty (60) calendar days after the Effective

9   Date or such other date as may be fixed by the Bankruptcy Court. If the Bankruptcy Court grants

10   such an award, each such Professional will be paid as follows: (a) as an initial payment to each

11   such Professional (collectively, the "***Initial Fee Payment Amount***"), made as soon as practicable

12   following entry of the Final Order approving such award, to the extent not previously paid by the

13   Debtor (inclusive of any retainers), and consisting of a Pro Rata share of the Professional Fee

14   Claims Reserve (calculated by dividing each such Professional's unpaid Allowed Professional Fee

15   Claims by the aggregate unpaid Allowed Professional Fee Claims of all Professionals), in each

16   case on account of such Professional's Allowed Professional Fee Claims, which payment shall be

17   made from the Professional Fee Claims Reserve; and (b) thereafter, if and when additional funds

18   are available after no more than $25,000 in the aggregate is reserved or utilized for the expenses of

19   the Liquidating Trust in excess of the Initial Administrative Reserve Amount, a Pro Rata share of

20   such additional funds calculated by dividing each such Professional's remaining unpaid Allowed

21   Professional Fee Claims by the aggregate remaining unpaid Allowed Professional Fee Claims of

22   all Professionals. To the extent the amount ultimately Allowed to any Professional on account of

23   its Professional Fee Claim is less than the amount allocated to such Professional in the

24   Professional Fee Claims Reserve, the difference between the amount allocated and the amount

25   Allowed for such Professional shall be distributed Pro Rata to the other Professionals on account

26   of such Professionals' Allowed Professional Fee Claims. All the Professionals have agreed to the

27   foregoing treatment and shall be bound by such agreement under the Plan. In the event that any

28

objection is filed to the foregoing-described treatment, the Proponents reserve the right to either withdraw the Plan or to alter the treatment set forth herein.

The following chart lists all the Professionals, their estimated Professional Fee Claims and their treatment under the Plan:

| Name | Amount Owed | Treatment |
|------|-------------|-----------|
| Levene, Neale, Bender, Yoo & Brill L.L.P., the Debtor's bankruptcy counsel | $[_____] (estimated amount owed in excess of retainer on the Effective Date) | Pro Rata share of the Professional Fee Claims Reserve paid upon entry of a final order approving fees and expenses; remainder is paid, after utilizing $25,000 for Liquidating Trust in excess of the Initial Administrative Reserve Amount, from available funds Pro Rata with other Professional Fee Claims. |
| Silver Law Group, the Debtor's special corporate counsel | $[_____] (estimated) | Pro Rata share of the Professional Fee Claims Reserve paid upon entry of a final order approving fees and expenses; remainder is paid, after utilizing $25,000 for the Liquidating Trust in excess of the Initial Administrative Reserve Amount, from available funds Pro Rata with other Professional Fee Claims. |
| Province, Inc., the Debtor's Chief Restructuring Officer | $[_____] (estimated) | Pro Rata share of the Professional Fee Claims Reserve paid upon entry of a final order approving fees and expenses; remainder is paid, after utilizing $25,000 for Liquidating Trust in excess of the Initial Administrative Reserve Amount, from available funds Pro Rata with other Professional Fee Claims. |
| Sheppard, Mullin, Richter & Hampton LLP, the Committee's counsel | $[_____] (estimated) | Pro Rata share of the Professional Fee Claims Reserve paid upon entry of a final order approving fees and expenses; remainder is paid, after utilizing $25,000 for Liquidating Trust in excess of the Initial Administrative Reserve Amount, from available funds Pro Rata with other Professional Fee Claims. |
| **TOTAL** | **$_[_____] (estimated) (the "Professional Fee Claims")** | |

1

2          c.        **Statutory U.S. Trustee Fees and Fees Owed to the Clerk of the Court**

3          All United States Trustee fees payable pursuant to 28 U.S.C. § 1930 shall be paid in full in

4    accordance with the Plan without the need for the Office of the United States Trustee to file any

5    request for payment.

6          The following chart lists <u>all</u> of the Debtor's non-professional 11 U.S.C. § 507(a)(1)

7    administrative claims and their treatment under the Plan:

| <u>Name</u> | <u>Amount Owed</u> | <u>Treatment</u> |
|---|---|---|
| Clerk's Office Fees | $0 (estimated) | The Debtor is not aware of any fees presently owed to the Clerk's Office. To the extent such fees will exist on the Effective Date, they shall be paid in full on the Effective Date. |
| Office of the U.S. Trustee Fees | $4,875 (estimated) | To the extent such fees will exist on the Effective Date, they shall be paid in full on the Effective Date. |
| **TOTAL** | $4,875 (estimated) | |

16        **2.        Priority Tax Claims**

17        As provided under Bankruptcy Code section 1123(a)(1), Priority Tax Claims are not

18   classified for purposes of voting on, or receiving distributions under, the Plan. Accordingly,

19   holders of Priority Tax Claims are not entitled to vote on the Plan.

20        To the extent that Allowed Priority Claims have not already been paid, satisfied or

21   otherwise released prior to the Effective Date, and except to the extent that a Holder of an Allowed

22   Priority Tax Claim agrees to a different treatment, on the later of the Effective Date or the date

23   such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is

24   reasonably practicable, the Liquidating Trustee shall pay to each Holder of an Allowed Priority

25   Tax Claim, in full and final satisfaction, settlement and release and in exchange for such Claim, an

26   amount in Cash equal to the unpaid amount of such Allowed Priority Tax Claim. The payment of

27   the Allowed Priority Tax Claims shall be made from the Initial Administrative Reserve Amount.

28   The Priority Tax Claims are described in Article VII(B)(2) above.

## C.    Classified Claims

The Plan is intended to address all Claims and Interests against the Debtor and any property or assets of the Debtor or the Estate, of whatever character. Claims and Interests, other than Administrative Claims and Priority Tax Claims, are classified for all purposes including voting (unless otherwise specified), confirmation and distribution pursuant to the Plan as set forth below.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim in that Class and such Claim or Interest has not been paid, released or otherwise satisfied prior to the Effective Date. Multiple Proofs of Claim filed by a Claim Holder which qualify for inclusion within the same Class shall be aggregated, and if Allowed, shall constitute a single Allowed Claim.

### 1.    Designation of Classes of Claims and Interests

#### a.    Class 1: Priority Non-Tax Claims

Class 1 consists of unsecured Claims entitled to priority under Bankruptcy Code sections 507(a)(1), (4), (5), (6), (7), (9) and (10). A chart of all known Class 1 Claims is included *supra*, in Section VII.B.3 of this Disclosure Statement.

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1 | Priority Unsecured Non-Tax Claims of : <br><br> Daniel Lacey - $4,254.48 <br><br> David Alvarez - $4,199.70 <br><br> Dennis Aylward - $1,350.00 <br><br><br> Total claims: | Y | N | To the extent Class 1 Claims have not already been paid, released or otherwise satisfied prior to the Effective Date, and except to the extent the Holder of a Class 1 Claim agrees to a different treatment, the Holders of Allowed Class 1 Claims each shall receive payment in an amount equal to the amount of the Allowed Claim on the later of the Effective Date or the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is reasonably practicable, in full and final |

| | $9,804.18 | | | satisfaction, settlement and release and in exchange for such Claim. The payment of the Allowed Priority Tax Claims shall be made from the Initial Administrative Reserve Amount. |
|---|---|---|---|---|

### b.    **Classes 2 through 6: Secured Claims**

Classes 2 through 6 consist of all miscellaneous secured Claims against the Debtor and the Estate. As noted *supra*, in Section VII.B.4 of this Disclosure Statement, the Debtor believes that all Secured Claims have already been satisfied in full and/or the underlying contracts have been cured, assumed and assigned.

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 2 | Secured claim of C.H. Robinson Worldwide Inc.<br><br>Collateral description: Formerly Debtor's interest in goods stored at C.H. Robinson's warehouse<br><br>Claim and Lien Priority: first priority warehouse lien<br><br>Collateral value: N/A – all collateral was sold as part of the Sale<br><br>Amount of Claim<br><br>$0 | N | N | The treatment of the Class 2 allowed Claim described herein shall be in full settlement and satisfaction of the Class 2 allowed Claim.  The Class 2 Claim was fully satisfied pursuant to the CH Robinson Stipulation and through the Sale.<br><br>Any lien held by the claimant holding a Class 2 Claim shall be terminated on the Effective Date |

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 3 | Secured claim of Dependable Distribution Center<br><br>Collateral | N | N | The treatment of the Class 3 allowed Claim described herein shall be in full settlement and |

| | | | | |
|---|---|---|---|---|
| <u>description:</u> Formerly Debtor's interest in goods stored at Dependable Distribution Center's warehouse<br><br><u>Claim and Lien Priority:</u> first priority warehouse lien<br><br><u>Collateral value:</u> N/A – all collateral was sold as part of the Sale<br><br><u>Amount of Claim</u> $0 | | | | satisfaction of the Class 3 allowed Claim.  The Class 3 Claim was fully satisfied pursuant to the DDC Stipulation and through the Sale.<br><br>Any lien held by the claimant holding a Class 3 Claim shall be terminated on the Effective Date |

| <u>CLASS #</u> | <u>DESCRIPTION</u> | <u>INSIDER (Y/N)</u> | <u>IMPAIRED (Y/N)</u> | <u>TREATMENT</u> |
|---|---|---|---|---|
| 4 | <u>Secured claim of Donald DeLaski Trust</u><br><br><u>Collateral description:</u> Substantially all of Debtor's assets<br><br><u>Claim and Lien Priority:</u> Junior to Class 5 Claim holders<br><br><u>Collateral value:</u> N/A<br><br><u>Amount of Claim</u> $0 | Y | N | The treatment of the Class 4 allowed claim described herein shall be in full settlement and satisfaction of the Class 4 allowed claim.  The Class 4 claim was fully satisfied through the Sale, wherein the entire amount of the Class 4 claim was used in a credit bid for the Sale.<br><br>Any lien held by the claimant holding a Class 4 Claim shall be terminated on the Effective Date |

| <u>CLASS #</u> | <u>DESCRIPTION</u> | <u>INSIDER (Y/N)</u> | <u>IMPAIRED (Y/N)</u> | <u>TREATMENT</u> |
|---|---|---|---|---|
| 5 | <u>Secured claims of Provident Trust Group LLC and The Chung Family Trust</u> | N | N | The treatment of the Class 5 allowed Claims described herein shall be in full settlement and |

| | Collateral description: Substantially all of the Debtor's assets<br><br>Claim and Lien Priority: senior lien, subject to warehouse liens held by Class 2 and 3 claim holders<br><br>Collateral value: N/A<br><br>Amount of Claim $0 | | | satisfaction of the Class 5 allowed claims.  The Class 5 claims was fully satisfied through the Sale wherein the Class 5 claims were used in a credit bid for the Sale.<br><br>Any lien held by the claimants holding a Class 5 Claim shall be terminated on the Effective Date |

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 6 | Secured claim of Wells Fargo Bank, N.A.<br><br>Collateral description: Formerly Debtor's interest in one (1) forklift<br><br>Claim and Lien Priority: first priority<br><br>Collateral value: N/A – the Debtor no longer owns the collateral<br><br>Amount of Claim $7,223.49 | N | N | The treatment of the Class 6 allowed claim described herein shall be in full settlement and satisfaction of the Class 6 allowed Claim.  The Class 6 Claim was fully satisfied in the Sale wherein the Buyer treated it as a lease and assumed and took assignment of the payments for Class 6.<br><br>Any lien held by the claimant holding a Class 6 Claim shall be terminated on the Effective Date |

c.    **Class 7: General Unsecured Claims**

Class 7 consists of all General Unsecured Claims against the Debtor and the Estate. If the Holder of an Allowed Class 7 Claim timely filed a Proof of Claim, such Proof of Claim will be deemed to supersede any listing of the same Claim in the Schedules.  A list of all Class 7 Claim holders is attached as Exhibit "A" hereto.

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 7 | Claims<br><br>All General Unsecured Claims<br><br>Amount of Claims<br>Approximately $5.5 million | N | Y | To the extent Class 7 Claims have not already been paid, released or otherwise satisfied prior to the Effective Date, and except to the extent the Holder of a Class 7 Claim agrees to a different treatment, on or as soon as practicable following the Effective Date, each such Holder of an Allowed General Unsecured Claim in Class 7 shall receive a Pro Rata share of the Liquidating Trust Interests to be distributed to all Holders of Allowed Claims in Class 7. Such distribution shall be the sole and exclusive dividend to holders of Allowed General Unsecured Claims. After funding the Initial Administrative Reserve Amount on the Effective Date, the Liquidating Trust may utilizing up to $25,000 for the benefit of holders of Allowed General Unsecured Claims on account of their Liquidating Trust Interests before Professional Fees are paid in full, consistent with Section III.A.2 of the Plan. Additional funds may become available for the benefit of holders of General Unsecured Claims after Professional Fees are paid in full. |

d.    **Class 8: Interest Holders**

Class 8 consists of all Interests in the Debtor. Attached as Exhibit "B" hereto is a list of the Class 8 equity holders.

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 8 | All Equity Interests in Debtor | Y | All equity interests in the Debtor will be cancelled. Class 8 interest holders will receive nothing under the Plan. However, in the event Allowed General Unsecured Claims are paid in full, each holder of an Interest shall thereafter receive a Pro Rata share of the Liquidating Trust Interests to be distributed to all Holders of Interests |

1        **2.        Treatment of Nonvoting Unimpaired Classes (Classes 1 through 6)**

2            a.        **Class 1: Priority Non-Tax Claims**

3        Class 1 is not impaired. The legal, equitable and contractual rights of the Holders of

4    Allowed Class 1 Claims are unaltered by the Plan. To the extent Class 1 Claims have not already

5    been paid, released or otherwise satisfied prior to the Effective Date, and except to the extent the

6    Holder of a Class 1 Claim agrees to a different treatment, the Holders of Allowed Class 1 Claims

7    each shall receive payment in an amount equal to the amount of the Allowed Claim on the later of

8    the Effective Date or the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or

9    as soon thereafter as is reasonably practicable, in full and final satisfaction, settlement and release

10   and in exchange for such Claim. The payment of the Allowed Priority Tax Claims shall be made

11   from the Initial Administrative Reserve Amount.

12       Class 1 will be deemed to have accepted the Plan pursuant to Bankruptcy Code section

13   1126(f) and is not entitled to vote on the Plan.

14           b.        **Classes 2 through 6: Secured Claims**

15       Classes 2 through 6 are not impaired. Holders of Miscellaneous Secured Claims are

16   deemed to have accepted the Plan pursuant to Bankruptcy Code Section 1126(f) and are not

17   entitled to vote on the Plan.

18       All claims in Classes 2 through 6 have been fully satisfied pursuant to stipulation, sale, or

19   the surrender of property, as set forth in the tables above.

20       Classes 2 through 6 will be deemed to have accepted the Plan pursuant to Bankruptcy

21   Code section 1126(f) and are not entitled to vote on the Plan.

22       **3.        Treatment of Nonvoting Impaired Class (Class 8)**

23       Class 8 is impaired. Upon the Effective Date, Holders of Interests in the Debtor shall not

24   receive or retain any property on account of such Interests and such Interests shall be extinguished

25   as of the Effective Date, provided, however, that in the event Allowed General Unsecured Claims

26   are paid in full, each holder of an Interest shall thereafter receive a Pro Rata share of the

27   Liquidating Trust Interests to be distributed to all Holders of Interests.

28

Class 8 will be deemed to have rejected the Plan pursuant to Bankruptcy Code section 1126(g) and is not entitled to vote on the Plan.

### 4. Treatment of Voting Impaired Class (Class 7)

Class 7 is impaired. To the extent Class 7 Claims have not already been paid, released or otherwise satisfied prior to the Effective Date, and except to the extent the Holder of a Class 7 Claim agrees to a different treatment, on or as soon as practicable following the Effective Date, each such Holder of an Allowed General Unsecured Claim in Class 7 shall receive a Pro Rata share of the Liquidating Trust Interests to be distributed to all Holders of Allowed Claims in Class 7. Such distribution shall be the sole and exclusive dividend to holders of Allowed General Unsecured Claims. After funding the Initial Administrative Reserve Amount on the Effective Date, the Liquidating Trust may utilize up to $25,000 for the benefit of the holders of Allowed General Unsecured Claims on account of their Liquidating Trust Interests before Professional Fees are paid in full, consistent with Section III.A.2 of the Plan. Additional funds may become available for to the Liquidating Trust for the benefit of holders of General Unsecured Claims after Professional Fees are paid in full.

Class 7 is impaired and is entitled to vote on the Plan.

### D. Executory Contracts and Unexpired Leases

### 1. Assumption or Rejection

Subject to Bankruptcy Code section 365, unless expressly assumed under the Plan, all unexpired leases and executory contracts (i) not previously assumed, assigned or rejected pursuant to Final Order of the Bankruptcy Court entered prior to the Effective Date, or (ii) not subject to a pending motion to assume, assign or reject filed with the Bankruptcy Court prior to the Effective Date, or (iii) are not contracts of insurance in favor of, or that benefit, the Debtor or the Estate, shall be deemed rejected as of the Effective Date.

### 2. Claims Arising Out of Rejection

Any Claims arising out of the rejection of an executory contract or unexpired lease pursuant to the Plan must be filed with the Bankruptcy Court by no later than thirty (30) calendar days after the Effective Date. If no Proof of Claim is filed within such time period, it shall be

conclusively presumed that no such Claim exists and will be forever barred from receiving a distribution from the Liquidating Trust.

### 3.    Effect of Confirmation Order

The Confirmation Order shall constitute an order of the Bankruptcy Court:  (i) approving, as of the Effective Date, the assumption or rejection pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of all executory contracts and unexpired leases identified under Article VI of the Plan. The contracts and leases identified under the Plan will be assumed or rejected, as applicable, only to the extent that such contracts or leases constitute pre-petition executory contracts or unexpired leases of the Debtor, and the identification of such agreements under the Plan does not constitute an admission with respect to the characterization of such agreements or the existence of any unperformed obligations, defaults, or damages thereunder.

### E.    Means for Implementation and Execution of Plan

#### 1.    Funding the Plan

The Plan is a liquidating plan and shall be funded with the Cash on hand in the Estate as of the Effective Date and the liquidation and monetization of all other assets, including the Causes of Action, and proceeds thereof that become part of the Liquidating Trust Assets as well as any other remaining assets that may be liquidated or otherwise monetized and/or Claims that may be recovered for the benefit of the Estate and/or the Liquidating Trust.

#### 2.    Liquidating Trust

##### a.    Establishment of Liquidating Trust

The Liquidating Trust shall be established and shall become effective on the Effective Date. As of the Effective Date, the Debtor shall transfer the Liquidating Trust Assets to the Liquidating Trust. All of the Debtor's right, title and interest in and to the Liquidating Trust Assets shall be automatically vested in the Liquidating Trust on the Effective Date, free and clear of liens, claims, encumbrances and other interests, and such transfer is on behalf of the Holders of Allowed Class 7 Claims, as and to the extent provided for hereunder (the "***Beneficiaries***" under the Liquidating Trust Agreement). In the event Allowed General Unsecured Claims (and Allowed

1  Professional Fee Claims) are paid in full, Holders of Interests in Class 8 under the Plan shall

2  become the beneficiaries of the Liquidating Trust.

3            **b.**     **Execution of Liquidating Trust Agreement**

4         After the Confirmation Date and prior to the Effective Date, the Liquidating Trust

5  Agreement shall be executed, and all other necessary or desirable steps shall be taken to establish

6  the Liquidating Trust and the beneficial interests therein.

7            **c.**     **Purpose of Liquidating Trust**

8         The Liquidating Trust shall be established for the purpose of liquidating and distributing its

9  assets and for prosecuting the Causes of Action, in accordance with 26 C.F.R. § 301.7701-4(d),

10  with no objective to continue or engage in the conduct of a trade or business.

11            **d.**     **Liquidating Trust Assets**

12         The Liquidating Trust shall consist of the Liquidating Trust Assets, which shall be

13  automatically vested in the Liquidating Trust on the Effective Date. All bank accounts held by the

14  Debtor as of the Effective Date shall be held by the Liquidating Trustee in the name of the

15  Liquidating Trust, subject to the provisions of the Plan. The Debtor shall transfer and deliver to

16  the Liquidating Trustee all books, records, insurance policies, contracts, and other documents,

17  including computer files and other electronic media, necessary or desirable for the Liquidating

18  Trustee's administration of the Liquidating Trust. To the full extent permitted by law, on the

19  Effective Date, the Debtor will be deemed to transfer to the Liquidating Trustee, all rights of the

20  Debtor and the Estate to exercise or waive any attorney-client privilege, work-product privilege or

21  other privilege or immunity. All such privileges shall automatically vest in the Liquidating Trust

22  and its representatives, to the full extent permitted by law; provided, however, that the Debtor and

23  the Liquidating Trustee are authorized to take all necessary actions to effectuate the transfer of

24  such privileges.

25            **e.**     **Duration of Liquidating Trust**

26         The Liquidating Trust shall have an initial term of five (5) years; provided, however, that,

27  if warranted by the facts and circumstances, and subject to the consent of the Trust Advisory

28  Board or the approval of the Bankruptcy Court with jurisdiction over the Bankruptcy Case, upon a

finding that an extension of the term of the Liquidating Trust is necessary to accomplish the liquidating purpose of the Liquidating Trust, the Liquidating Trust's term may be extended for a finite term.

The Liquidating Trust may be terminated earlier than its initial term or other scheduled termination if (a) the Bankruptcy Court has entered a Final Order closing the Bankruptcy Case pursuant to section 350 of the Bankruptcy Code and (b) the Liquidating Trustee has administered all of the Liquidating Trust Assets and performed all other duties required by the Plan and the Liquidating Trust Agreement.

As soon as practicable after Substantial Consummation, the Liquidating Trustee shall seek entry of a Final Order closing the Bankruptcy Case pursuant to section 350 of the Bankruptcy Code. If at any time the Liquidating Trustee determines, in reliance upon such professionals as the Liquidating Trustee may retain, that the expense of administering the Liquidating Trust so as to make a final distribution to its Beneficiaries is likely to exceed the value of the remaining Liquidating Trust Assets, the Liquidating Trustee shall apply to the Bankruptcy Court for entry of a Final Order closing the Bankruptcy Case and terminating the Liquidating Trust.  Upon entry of such Final Order, the Liquidating Trustee shall be authorized, without further order or any approval, to disburse any funds remaining in the Liquidating Trust in accordance with the Bankruptcy Code's priority scheme.

### 3.    Liquidating Trustee

#### a.    Appointment, Resignation and Removal

The appointment of the Liquidating Trustee shall be effective as of the Effective Date. On the Effective Date, Peter Kravitz shall be appointed as the Liquidating Trustee. Any successor Liquidating Trustee shall be appointed by the Trust Advisory Board subject to the approval of the Bankruptcy Court.

The Liquidating Trustee shall be deemed to have been appointed as the representative of the Estate of the Debtor by the Bankruptcy Court pursuant to section 1123(b)(3)(B) as of the Effective Date. On the Effective Date, the Liquidating Trustee shall be the sole authorized representative and signatory of the Liquidating Trust. The Liquidating Trustee shall have authority

to render any and all services necessary or desirable to effectuate the terms of the Plan, as provided for herein. The powers, authority, responsibilities and duties of the Liquidating Trustee shall be governed by the Plan, the Confirmation Order, and the Liquidating Trust Agreement.

The Liquidating Trustee may resign upon not less than thirty (30) calendar days' prior written notice to the Trust Advisory Board, provided that no such resignation shall be effective until the earlier of (i) the expiration of the thirty (30) calendar day notice period of the resignation, or (ii) the date the Liquidating Trustee receives the Trust Advisory Board's written acknowledgment of the resignation.

Any person serving as Liquidating Trustee may be removed and replaced by an order of the Bankruptcy Court on a showing of good cause. The removal shall become effective on the date specified in the order.

### b. Term

Unless the Liquidating Trustee resigns, is removed, or otherwise is unable to continue, the Liquidating Trustee's term shall expire upon termination of the Liquidating Trust pursuant to the Plan and Liquidating Trust Agreement.

### c. Powers and Duties

The Liquidating Trustee shall have the rights and powers set forth in the Liquidating Trust Agreement including, but not limited to, the powers and duties of a debtor in possession under Bankruptcy Code sections 1106(a), 1107 and/or 1108. Pursuant to Bankruptcy Code section 1123, the Liquidating Trustee shall be the successor to and representative of the Debtor, the debtor in possession, and the Estate for all purposes consistent with the Plan and Liquidating Trust Agreement. The Liquidating Trustee shall administer the Liquidating Trust, and the Liquidating Trust Assets, and make distributions from the proceeds of the Liquidating Trust in accordance with the Plan and Liquidating Trust Agreement. In addition, the Liquidating Trustee shall take all actions necessary and appropriate to wind down the affairs of the Debtor consistent with the Plan and any applicable non-bankruptcy law. Without limitation, to the extent applicable, the Liquidating Trustee shall file final federal, state, foreign and local tax returns for the Debtor. Subject to the terms of the Liquidating Trust Agreement, the Liquidating Trustee shall be

authorized, empowered and directed to take all actions necessary or desirable to comply with the Plan and fulfill the duties and obligations arising hereunder including, without limitation, to:

   a) Object to the allowance of Claims;

   b) Open, maintain and administer bank accounts;

   c) Engage employees and professional persons as necessary or desirable to assist in carrying out the provisions of and purposes underlying the Plan and Liquidating Trust Agreement;

   d) Incur and pay reasonable fees, costs, and expenses in connection with administering the Liquidating Trust and implementing the terms of the Plan and Liquidating Trust Agreement, including the reasonable fees, costs and expenses of retained professionals, in accordance with the provisions of the Plan and the Liquidating Trust Agreement;

   e) Expend the Liquidating Trust Assets as necessary to maintain the value of the assets of the Liquidating Trust during liquidation;

   f) Pay the reasonable and necessary expenses incurred by the Trust Advisory Board, in accordance with the provisions of Section VII.D.5 of the Plan and the Liquidating Trust Agreement;

   g) Investigate, analyze, commence, prosecute, litigate, compromise and otherwise administer the Causes of Action, and take all other necessary and appropriate steps to collect, recover, settle, liquidate or otherwise reduce the Liquidating Trust Assets to Cash;

   h) Approve compromises of the Causes of Action and all Claims, and execute all necessary and appropriate documents to effectuate such settlements;

   i) Administer, sell, liquidate, or otherwise dispose of the Liquidating Trust Assets in accordance with the terms of the Plan and the Liquidating Trust Agreement;

   j) Represent the Liquidating Trust before the Bankruptcy Court and other courts of competent jurisdiction, if necessary, with respect to matters regarding the administration of the Liquidating Trust;

k)  Comply with any applicable orders of the Bankruptcy Court and any other court of competent jurisdiction, and all applicable laws and regulations, concerning the matters set forth herein;

l)  Hold legal title to any and all rights of the Debtor, the Estate and the Beneficiaries under the Liquidating Trust Agreement in or arising from the Liquidating Trust Assets;

m)  In reliance upon the Schedules and the claims register maintained in the Bankruptcy Case, maintain on the Liquidating Trustee's books and records a register evidencing the beneficial interest held by each Beneficiary under the Liquidating Trust Agreement;

n)  Make all distributions to the Holders of Allowed Claims provided for, or contemplated by, the Plan and Liquidating Trust Agreement;

o)  Establish the Disputed Claims Reserve

p)  Maintain the Administrative Reserve;

q)  Make all tax withholdings, file tax information returns, make tax elections by and on behalf of the Liquidating Trust and file tax returns for the Liquidating Trust as a grantor trust in accordance with 26 C.F.R. § 1.671-4(a);

r)  Pay any taxes imposed on the Liquidating Trust;

s)  As soon as reasonably practicable after the Effective Date, make a good faith valuation of the Liquidating Trust Assets which shall be made available from time to time, to the extent relevant, and used consistently by all parties for all income tax purposes;

t)  Carry insurance coverage if the Liquidating Trustee deems such insurance necessary and appropriate in his sole and absolute discretion;

u)  Exercise such other powers as may be vested in the Liquidating Trustee pursuant to the Plan, the Liquidating Trust Agreement, the Confirmation Order, or other Final Orders of the Bankruptcy Court;

v)  Execute any documents, instruments, contracts or agreements necessary or desirable to carry out the powers and duties of the Liquidating Trustee;

w)  Provide to the Trust Advisory Board such reports on the progress of the Plan as the Liquidating Trustee may deem reasonable; and

x) Stand in the shoes of the Debtor, the debtor in possession, and the Estate for all purposes consistent with the Plan and Liquidating Trust Agreement.

### d.  Fees and Expenses

Subject to and in accordance with the provisions of the Plan, the Confirmation Order, the Liquidating Trust Agreement and any other Final Order of the Bankruptcy Court, the Liquidating Trustee shall be entitled to receive reasonable compensation for services rendered on behalf of the Liquidating Trust and reimbursement of reasonable and necessary expenses. The compensation of the Liquidating Trustee shall be set forth in the Liquidating Trust Agreement or otherwise disclosed in a filing with the Bankruptcy Court. Compensation of the Liquidating Trustee and other costs and expenses of administration of the Liquidating Trust, including, without limitation, the fees and expenses of retained counsel, accountants or other professionals, shall be paid out of the Liquidating Trust Assets, specifically from available funds in the Administrative Reserve.

The Liquidating Trustee shall not be required to file a fee application or otherwise seek approval of the Bankruptcy Court to receive compensation.

### e.  Retention of Professionals

On or after the Effective Date, the Liquidating Trustee may retain such professionals (including, without limitation, attorneys and accountants) as may be deemed necessary or desirable by the Liquidating Trustee to assist in carrying out the provisions of and purposes underlying the Plan and Liquidating Trust Agreement. The Liquidating Trustee may retain Professionals who represented parties in interest the Bankruptcy Case. Any professionals retained by the Liquidating Trustee shall not be required to file a fee application to receive compensation.

### f.  Investment

The powers of the Liquidating Trustee to invest any Cash that is an asset of the Liquidating Trust, other than those powers reasonably necessary to maintain the value of the Liquidating Trust Assets and to further the liquidating purpose of the Liquidating Trust, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposits, in banks or other savings institutions, or other temporary liquid investments, such as treasury bills.

### g.    No Recourse to Estate Representatives

Notwithstanding that the Allowed amount of any particular Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which there is insufficient Cash in the relevant fund or reserve to provide a recovery equal to that received by other Holders of Allowed Claims in the relevant Class, no Claim Holder shall have recourse to the Debtor, the Estate, the Liquidating Trust or the Liquidating Trustee, or any of their respective professionals, or their agents (including employees, officers and the like), successors or assigns, or the Holder of any other Claim, or any of their respective property. However, nothing in the Plan shall modify any right of a Holder of a Claim under section 502(c) of the Bankruptcy Code. Thus, the Bankruptcy Court's entry of an estimation order under Bankruptcy Code section 502(c) may limit the distribution to be made on Disputed Claims, regardless of the amount finally Allowed on account of such Disputed Claims.

### h.    Indemnification of Liquidating Trustee

The Liquidating Trustee and his agents shall not be liable for actions taken or omitted in his or their capacity as the Liquidating Trustee, or on behalf of, the Liquidating Trustee, except those acts arising out of his or their own willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or ultra vires acts, and each shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of his or their actions or inactions in his or their capacity as Liquidating Trustee, or on behalf of, the Liquidating Trust, except for any actions or inactions involving willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or ultra vires acts. Any indemnification claim under this section shall be satisfied from the Liquidating Trust Assets and any insurance coverages procured by the Liquidating Trustee on behalf of the Liquidating Trust. The Liquidating Trustee shall be entitled to rely, in good faith, on the advice of his retained professionals.

### i.    Reporting Requirements

Following the Effective Date, the Liquidating Trustee shall report to the Trust Advisory Board on the progress of the implementation of the Plan, including such matters as the amount distributed to Holders of Allowed Claims, a good faith valuation of the remaining Liquidating

Trust Assets, the status of prosecution of the Causes of Action, and any amounts remaining in reserves established under the Plan. Such reports shall be provided to the Trust Advisory Board in a manner and as frequently as the Liquidating Trustee may reasonably determine.

j.    **Limitation of Powers**

Other than as provided in the Plan, the Liquidating Trust Agreement, the Confirmation Order or other Final Order of the Bankruptcy Court, the Liquidating Trustee is not empowered to incur indebtedness.

The Liquidating Trustee is prohibited from continuing or engaging in the conduct of a trade or business, except to the extent reasonably necessary to and consistent with the liquidating purpose of the Plan.

The Liquidating Trustee may (but shall not be required to) obtain an order of the Bankruptcy Court concerning any matter involving any sale, settlement, or other disposition of an asset or litigation of the Liquidating Trust, or any release, modification or waiver of existing rights as to an asset or litigation of the Liquidating Trust.

The Liquidating Trustee shall not reserve or utilize more than $25,000 in the aggregate for the expenses of the Liquidating Trust until all Professional Fee Claims allowed by the Bankruptcy Court have been paid in full.

The Liquidating Trustee shall hold, collect, conserve, protect and administer the Liquidating Trust in accordance with the provisions of the Plan and the Liquidating Trust Agreement, and pay and distribute amounts as set forth herein for the purposes set forth in the Plan and the Liquidating Trust Agreement. Any determination by the Liquidating Trustee as to what actions are in the best interests of the Liquidating Trust shall be determinative.

4.    **Trust Advisory Board**

a.    **Establishment of the Trust Advisory Board.**

On the Effective Date, the Trust Advisory Board shall be established and staffed by one or more Holders of Allowed Class 7 Claims. The Trust Advisory Board may adopt such bylaws as it may deem appropriate; provided, however, that no provision of any adopted bylaws shall supersede any express provision of the Plan. The Trust Advisory Board shall initially consist of

the current members of the Committee who elect to become members of the Trust Advisory Board. The identity of the Board's members will be disclosed in a filing with the Bankruptcy Court on or before the Confirmation Hearing.

b.    **Role of the Trust Advisory Board.**

The Trust Advisory Board shall be appointed to consult with and advise the Liquidating Trustee from time to time regarding the administration of the Liquidating Trust in accordance with the provisions of the Plan and the Liquidating Trust Agreement. The Trust Advisory Board shall have an advisory role and, without prior Bankruptcy Court Approval, may not override an action taken or proposed to be taken by the Liquidating Trustee. The members of the Trust Advisory Board shall act in the best interests of the Beneficiaries of the Liquidating Trust.

Subject to and in accordance with the provisions of the Plan, the Confirmation Order, the Liquidating Trust Agreement and any other Final Order of the Bankruptcy Court, the Trust Advisory Board shall have right to seek relief from the Bankruptcy Court regarding any specific action taken or proposed to be taken by the Liquidating Trustee with respect to the Plan, the Liquidating Trust Agreement, the Liquidating Trust, or the Liquidating Trust Assets.

c.    **Termination.**

The Trust Advisory Board will remain in existence until the earlier of the termination of the Liquidating Trust or completion of distributions to Holders of Allowed Class 7 Claims.

d.    **Limitation on Liability and Exculpation**

Neither the members of the Trust Advisory Board nor the representatives or agents of such members shall be liable for actions taken or omitted in their capacity as, or on behalf of, the Trust Advisory Board, except those acts arising out of its or their own willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or ultra vires acts, and each shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Trust Advisory Board, except for any actions or inactions involving willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or ultra vires acts. Any indemnification claim under this section shall be satisfied from the Liquidating Trust Assets and any insurance coverages procured by the

Liquidating Trustee on behalf of the Liquidating Trust. The Trust Advisory Board shall be entitled to rely, in good faith, on the advice of its retained professionals.

e.     **Fees and Expenses of Members**

Members of the Trust Advisory Board shall be entitled to reimbursement of reasonable and necessary expenses incurred in carrying out their duties as members of the Trust Advisory Board, all of which shall be paid from the Liquidating Trust without the need to file an application with the Bankruptcy Court. Such expenses shall be paid from available funds in the Administrative Reserve. Members of the Trust Advisory Board shall not be entitled to compensation for time spent on the Trust Advisory Board.

f.     **Retention and Payment of Professionals**

On or after the Effective Date, the Trust Advisory Board may retain such professionals (including, without limitation, attorneys and accountants) as may be deemed necessary or desirable by the Trust Advisory Board to assist and advise the Trust Advisory Board for purposes of carrying out the Trust Advisory Board's functions as specified under the Plan, subject to the Liquidating Trustee's prior written approval of such retention only to the extent the fees and costs of any such professional proposed to be retained by the Trust Advisory Board are to be paid from the Liquidating Trust Assets. The Trust Advisory Board may retain Professionals who represented parties in interest the Bankruptcy Case.  Any professionals retained by the Trust Advisory Board shall not be required to file a fee application to receive compensation.

**5.     Tax Treatment**

The Liquidating Trust is intended to be treated as a grantor trust for federal income tax purposes within the meaning of applicable sections of the Internal Revenue Code. The Debtor, the Liquidating Trustee, the Liquidating Trust and the Beneficiaries under the Liquidating Trust are required to treat for all federal income tax purposes, the transfer of the Liquidating Trust Assets to the Liquidating Trust as a transfer of the Liquidating Trust Assets by the Debtor to the Beneficiaries under the Liquidating Trust in satisfaction of their Allowed Claims, followed by a transfer of the Liquidating Trust Assets by the Beneficiaries to the Liquidating Trust in exchange for the beneficial interests therein, and to treat the Beneficiaries of the Liquidating Trust as the

grantors and owners of the Liquidating Trust for federal income tax purposes. For all federal income tax purposes, the Debtor, the Liquidating Trustee, the Liquidating Trust and the Beneficiaries thereunder shall treat the Liquidating Trust as a liquidating trust within the meaning of 26 C.F.R. § 301.7701-4(d) and Internal Revenue Service Revenue Procedure 94-45, 1994-2 C.B. 124. However, the Liquidating Trustee is authorized to, among other things, make any and all tax elections available by law, including without limitation, electing to treat any reserve, escrow account or other fund provided for under the Plan as a disputed ownership fund within the meaning of 26 C.F.R. § 1.468B-9.

### 6.    Avoidance Actions and Other Causes of Action

Notwithstanding any other term or provision of the Plan, the Liquidating Trustee shall have, on and after the Effective Date, sole authority and responsibility for investigating, analyzing, commencing, prosecuting, litigating, compromising, settling, collecting or otherwise administering the Causes of Action. Any Claims arising out of the recovery of an avoidable transfer under chapter 5 of the Bankruptcy Code after the Bar Date must be filed on or before thirty (30) calendar days after entry of an order of judgment avoiding the transfer.

Pursuant to section 1123(b) of the Bankruptcy Code, on and after the Effective Date, the Liquidating Trustee may maintain and enforce any claims or rights held by the Debtor, the Estate or the Liquidating Trust, and may continue to pursue any pending Causes of Action brought by the Debtor, including without limitation, those discussed expressly in the Disclosure Statement. In accordance with Bankruptcy Code section 1123(b)(3) or any corresponding provision of similar non-bankruptcy law, on and after the Effective Date, (a) the Liquidating Trustee shall have standing and be deemed to be the representative of the Debtor and the Estate in the Bankruptcy Case and any adversary proceeding in the Bankruptcy Case, under the Plan, and in any judicial proceeding or appeal as to which the Debtor is a party, and (b) the Liquidating Trustee shall retain all Causes of Action of the Debtor and the Estate, including, without limitation, Avoidance Actions, objections to Claim, and prosecution of the Causes of Action. The Liquidating Trustee may sue on, settle, or compromise (or decline to do any of the foregoing) any and all Causes of Action.

The Proponents have not concluded their investigation into all of the Causes of Action. Accordingly, any and all Causes of Action that may exist against any Person or Entity may be pursued by the Liquidating Trustee, regardless of whether, or the manner in which, such Causes of Action are identified in the Plan or the Disclosure Statement. The failure of the Proponents to identify a Cause of Action in the Plan or Disclosure Statement shall not constitute a waiver or release by the Proponents or the Estate of any such Cause of Action. Any and all Causes of Action shall survive entry of the Confirmation Order for the benefit of the Debtor and the Estate and, on and after the Effective Date, for the benefit of the Liquidating Trust and its Beneficiaries.

**7.      Claim Objections and Estimation of Claims**

On and after the Effective Date, the Liquidating Trustee may file objections to Claims at any time; provided, however, that as to Administrative Claims, the Liquidating Trustee, the Trust Advisory Board and other parties in interest may object within thirty (30) calendar days of their filing pursuant Section III.A of the Plan. As to any Claims arising from the rejection of an executory contract or unexpired lease pursuant to Section VI of the Plan, the Liquidating Trustee may object within thirty (30) calendar days of the filing of any such Claims. As to Claims arising from the recovery of an avoidable transfer under chapter 5 of the Bankruptcy Code, the Liquidating Trustee may object within thirty (30) calendar days of the filing of any such Claims. No distribution shall be made under the Plan with respect to all or any portion of a Disputed Claim until (a) that Claim becomes an Allowed Claim by agreement of the parties to any Claim dispute or by Final Order of the Bankruptcy Court; and (b) the Holder of the Allowed Claim delivers applicable tax information, including a FEIN, to the Liquidating Trustee. As soon as reasonably practicable after the Allowed Claim is established by agreement or Final Order and the Liquidating Trustee is in possession of all required tax information of the Holder of the Allowed Claim, the Liquidating Trustee shall pay to the Holder of such Allowed Claim in the manner and amount provided in the Plan pursuant to Section III or Section V, as the case may be, including any catch-up on prior distributions. Such distribution is to be paid from the Administrative Reserve or Disputed Claims Reserve, as applicable. Pending resolution, the Holder of a Disputed Claim will not receive interest on its Claim.

From and after the Effective Date, the Liquidating Trustee shall have the exclusive authority to file, settle, compromise, withdraw, or litigate to judgment any objections to Claims, including without limitation, any objections to Claims filed by the Debtor prior to the Effective Date. The Liquidating Trustee expressly reserves the right to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

In addition, the Liquidating Trustee may, at any time request that the Bankruptcy Court estimate, pursuant to section 502(c) of the Bankruptcy Code, any Claim that is contingent or unliquidated, regardless of whether the Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, the amount of such estimation will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another. Administrative Claims and Priority Tax Claims may be estimated and thereafter resolved by any mechanism permitted under the Bankruptcy Code or the Plan.

Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtor prior to the Effective Date including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made.

**8.      Reserves**

a.      **Administrative Reserve**

The Administrative Reserve shall be used for the payment of Allowed Administrative Claims, the Initial Fee Payment Amount, the Allowed Tax Priority Claims, the Allowed Non-Tax

Priority Claims and for the administration of the Liquidating Trust on and after the Effective Date, including, without limitation, for payment of fees and costs of professionals retained by the Liquidating Trustee and by Trustee Advisory Board, if applicable, compensation of the Liquidating Trustee, and other fees and expenses incurred in the pursuit of the Causes of Action. Any amount of the Administrative Reserve that is not used for such purposes shall, as determined by the Liquidating Trustee, be distributed to Holders of Allowed Class 7 Claims on a Pro Rata basis as provided for under the Plan. The Liquidating Trustee may determine that the Administrative Reserve is not adequate for continued administration of the Liquidating Trust after the Effective Date and may reserve additional reasonable amounts.

<b>b.    Disputed Claims Reserve</b>

The Liquidating Trust shall maintain the Disputed Claims Reserve, as defined herein, be used for the payment of all or part of a Disputed Claim that becomes an Allowed Claim entitled to distribution under the Plan pursuant to Section V of the Plan. If any Disputed Claims are not Allowed in whole or in part or if any Disputed Claims are determined to be Class 8 Interests, the Liquidating Trustee may distribute all or a portion of the Disputed Claims Reserve to the Holders of Allowed Class 7 Claims on a Pro Rata basis as provided for under the Plan.

Notwithstanding any other provision of the Plan or Liquidating Trust Agreement to the contrary, and for the sake of clarity, no distribution shall be made on account of any Claim or portion thereof that (a) has been satisfied prior to the Effective Date, or (b) is listed in the Schedules as contingent, unliquidated, disputed or in a zero amount, and for which a Proof of Claim has not been timely filed.

<b>9.    Method of Liquidating Trust Distributions</b>

<b>a.    Disbursing Agent</b>

The Liquidating Trustee, or such other Disbursing Agent as the Liquidating Trustee may appoint shall make all distributions in accordance with the terms of the Plan. If any distribution or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such distribution or performance of such act may be completed on the next Business Day, without interest, and shall be deemed to have been completed as of the required date.

b.    **Best Efforts to Make Distributions**

Notwithstanding anything to the contrary in the Plan or the Liquidating Trustee Agreement, under no circumstances shall the Liquidating Trust receive or retain Cash in excess of a reasonable amount to meet Claims and contingent liabilities or to maintain the value of the Liquidating Trust Assets during liquidation. The Liquidating Trustee shall be required to distribute at least annually to Holders of Allowed Claims qualifying for distribution under the Plan, all Cash held by the Liquidating Trust; provided, however, that the Liquidating Trustee may retain such amounts reasonably necessary to maintain the value of the Liquidating Trust Assets or meet Claims and contingent liabilities including to fund the Administrative Reserve and the Disputed Claims Reserve; and provided, further, however, that the Liquidating Trustee shall not be obligated to make a distribution if it is reasonably expected that the cost of such distribution would exceed the amount of Cash on hand. The Liquidating Trustee shall make continuing efforts to administer the Liquidating Trust Assets, make timely distributions, and shall not unduly prolong the duration of the Liquidating Trust.

If, in the Liquidating Trustee's reasonable judgment, any Liquidating Trust Assets cannot be sold or distributed in a commercially reasonable manner or the Liquidating Trustee believes in good faith that such property has inconsequential value to the Liquidating Trust or its Beneficiaries or determines to be too impractical to distribute to Beneficiaries, the Liquidating Trustee shall have the right to cause the Liquidating Trust to abandon or otherwise dispose of such property, including by donation of such property to a charity.

c.    **Minimum Distributions**

If a distribution to be made to a given Holder of an Allowed Claim would be $25.00 or less in the aggregate, notwithstanding any contrary provision of the Plan or Liquidating Trust Agreement, no such distribution will be made to such Holder unless a request therefore is made in writing to the Liquidating Trustee no later than thirty (30) calendar days after such distribution date.

d.        **No Distribution in Excess of Allowed Amount of Claim**

Notwithstanding anything to the contrary in the Plan or Liquidating Trust Agreement, no Holder of an Allowed Claim shall receive in respect of such Claim any distribution (in the aggregate) in excess of the Allowed amount of such Claim.

e.        **Delivery of Distributions**

Any distributions or notices which a Claim Holder, Interest Holder or other Person or Entity is or becomes entitled to receive pursuant to the Plan and Liquidating Trust Agreement may be delivered by first class mail, postage prepaid, in an envelope addressed to that Claim Holder, Interest Holder or other Person or Entity, as the case may be, or an authorized agent of any of the foregoing at the address indicated on the latest notice of appearance or the latest Proof of Claim or other paper filed by any of the foregoing in the Bankruptcy Court. Absent any such filing, the address set forth in the relevant Schedules may be used. Distributions made in accordance with this provision shall be deemed delivered to such Claim Holder, Interest Holder or other Person or Entity regardless of whether such is actually received by that Claim Holder, Interest Holder or other Person or Entity.

f.        **Record Date**

On the Record Date, the claims register and other various transfer registers shall be closed, and there shall be no further changes in the record holders of any Claim or Interest. The Liquidating Trustee, or such other Disbursing Agent as may be appointed under the applicable terms of the Plan, shall have no obligation to recognize any transfer of any Claim or Interest occurring after the Record Date. The Liquidating Trustee shall be entitled to recognize and deal for all purposes hereunder only with those Holders stated on the claims register or any other transfer register as of the close of business on the Record Date.

g.        **Disputed Distributions**

If any dispute arises as to the identity of a Holder of an Allowed Claim who is to receive any distribution, the Liquidating Trustee may, in lieu of making such distribution to such Holder, make such distribution into a segregated fund until the disposition thereof shall be determined by Bankruptcy Court order or by written agreement among the interested parties to such dispute.

h.    **Distributions of Cash**

Any payment of Cash made by the Liquidating Trustee, or other Disbursing Agent, pursuant to the Plan may be made either by check drawn on a domestic bank or by wire transfer, at the discretion of the Liquidating Trustee or other Disbursing Agent.

i.    **Fractional Cents**

Any other provision of the Plan to the contrary notwithstanding, no payments of fractions of cents will be made. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment will reflect rounding of such fraction to the nearest whole cent (.5 will be rounded up).

j.    **Withholding and Reporting Requirements**

Any foreign, federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from any distributions hereunder. As more fully set forth in the Plan, the Liquidating Trustee may require any Beneficiary to furnish its taxpayer identification number as assigned by the Internal Revenue Service and may condition any distribution to any Beneficiary upon receipt of such identification number. If a Beneficiary does not timely provide the Liquidating Trustee with its taxpayer identification number in the manner and by the deadline established by the Liquidating Trustee, then the distribution to such Beneficiary shall be administered as an Unclaimed Distribution in accordance with the Plan. All distributions under the Plan and Liquidating Trust Agreement shall be net of the actual and reasonable costs of making such distributions and of any allocable fees or other charges relating thereto.

k.    **Setoff**

Except as otherwise provided in the Plan, the Liquidating Trust Agreement, the Confirmation Order or in agreements previously approved by Final Order of the Bankruptcy Court, the Liquidating Trustee may, pursuant to applicable law, set off against any Claim (for purposes of determining the Allowed amount of such Claim on which distribution shall be made and before any distribution is made on account of such Claim), any and all of the Claims, rights and other Causes of Action of any nature that the Debtor, the Estate or the Liquidating Trustee

1  may hold against the Holder of such Claim. Any and all rights of setoff shall be enforceable by the

2  Liquidating Trustee in the same manner and to the same extent that the Debtor could have

3  exercised such rights of setoff.

4      Neither the failure to effect such a setoff, the Allowance of any Claim hereunder, any other

5  action or omission of the Debtor or the Liquidating Trustee, nor any provision of the Plan or

6  Liquidating Trust Agreement shall constitute a waiver or release by the Debtor or the Liquidating

7  Trustee of any such Claims, rights and other Causes of Action that the Debtor, the Estate, or the

8  Liquidating Trustee may possess against such Holder. To the extent the Liquidating Trustee fails

9  to setoff against a Claim Holder and seeks to collect on a Claim from such Holder after a

10  distribution to such Holder pursuant to the Plan, the Liquidating Trustee, if successful in asserting

11  such Claim, shall be entitled to full recovery against such Holder. The Liquidating Trustee may

12  seek periodic Bankruptcy Court approval for any such setoff or setoffs.

13      **10.    Unclaimed Distributions**

14      If any distribution remains unclaimed for a period of ninety (90) calendar days after the

15  relevant distribution date, or any distribution check remains uncashed for ninety (90) calendar

16  days after its issuance, by the Holder of an Allowed Claim entitled thereto, the distribution shall

17  constitute an Unclaimed Distribution, any such uncashed check shall be void, and the Holder shall

18  no longer be entitled to that distribution or any later distributions. All right, title and interest in and

19  to Unclaimed Distributions shall immediately vest in the Liquidating Trust, and such property

20  shall be retained by the Liquidating Trust for distribution pursuant to the terms of the Plan and

21  Liquidating Trust Agreement, subject, however, to the Liquidating Trustee's determination to

22  distribute Unclaimed Distributions to Holders entitled thereto if such Holders are subsequently

23  located.

24      **11.    Dissolution of Creditors Committee**

25      On the Effective Date, the Committee shall be dissolved and the members thereof shall be

26  released and discharged of and from all further authority, duties, responsibilities and obligations

27  related to, arising from and in connection with the Bankruptcy Case, and the retention or

28  employment of its Professionals shall terminate. The Committee shall continue to exist after the

Effective Date solely with respect to (i) all applications filed pursuant to Bankruptcy Code sections 330 and 331 seeking payment of fees and expenses incurred by any Professional and (ii) after the Confirmation Date, any modifications to, or motions or other actions seeking the enforcement or implementation of the provisions of the Plan or the Confirmation Order.

**12.    Dissolution of the Debtor**

As of the Effective Date, or as soon thereafter as reasonably practicable, the Liquidating Trustee shall file a certificate of dissolution and/or other applicable document in the applicable state(s) of incorporation for the Debtor, which may be executed by the Liquidating Trustee without need for approval by the Debtor's officers, directors or Interest Holders or need for compliance with non-bankruptcy law, and the Debtor shall thereby dissolve and cease to exist.

**13.    Resignation of Officers and Directors**

Upon the Effective Date, the members of the Debtor's board of directors and the officers of Debtor shall be deemed to have resigned, without further action.

**F.    Effect of Confirmation of Plan**

**1.    Discharge**

Pursuant to Bankruptcy Code section 1141(d)(3), the Plan shall not provide a discharge of the Debtor's obligations, in that, (a) the Plan provides for the liquidation of all or substantially all of the property of the Estate; (b) the Debtor will not engage in any business after confirmation of the Plan; and (c) the Debtor would be denied a discharge under section 727(a)(1) of the Bankruptcy Code, if this were a case filed under chapter 7 of the Bankruptcy Code, because in this case the Debtor is not an individual.

**2.    Binding Effect**

Except as otherwise expressly provided in the Plan, as of the Effective Date, the provisions of the Plan, the Liquidating Trust Agreement, the Confirmation Order, and any associated findings of fact or conclusions of law shall bind the Liquidating Trust, the Debtor, the Committee, and all Holders of Claims and Interests against the Debtor, regardless of whether such Holders are Impaired under the Plan or voted to accept the Plan.

The rights, benefits and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person or Entity.

### 3. Post-Consummation Effectiveness of Evidence of Claims and Interests

As of the Effective Date, the Liquidating Trust Assets shall be free and clear from any and all Claims, liens or other interests, except as specifically provided otherwise in the Plan or the Confirmation Order. Evidence of Claims shall, upon the Effective Date, represent only the right of the Claim Holder to participate in and receive the treatment contemplated by the Plan and Liquidating Trust Agreement, and otherwise shall have no further force or effect. Evidence of Interests in the Debtor shall be void, annulled and cancelled as provided herein, and any obligations of the Debtor, the Estate, or the Liquidating Trust shall be extinguished.

### 4. Exculpation

To the fullest extent permissible under 11 U.S.C. §§524(e), 1103(c), 1125(e), and where not in conflict with *Resorts International, Inc. v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394 (9th Cir. 1995), on and after the Confirmation Date, the Debtor, the CRO, the Committee, the members of the Committee (solely in their capacity as such), and their agents (together, the "***Exculpated Parties***") shall not have or incur any liability for, and are expressly exculpated and released from, any claims (including without limitation, any claims whether known or unknown, foreseen or unforeseen, then existing or thereafter existing in law, equity or otherwise), by any Person or Entity for any act or omission occurring on or prior to the Confirmation Date in connection with or arising out of action or inaction taken or omitted to be taken in connection with or related to the Bankruptcy Case; the formulation, preparation, dissemination, implementation, confirmation or Substantial Consummation of the Plan or any other document created or entered into in connection with the Plan; or any other act taken or omitted to be taken in connection with or in contemplation of the filing of the Bankruptcy Cases, except those acts arising out of its or their own willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or ultra vires acts. Any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under the Plan or related to the

Bankruptcy Case. Without limiting the generality of the foregoing, each Exculpated Party shall be entitled to and granted the protections of section 1125(e) of the Bankruptcy Code and principles of judicial immunity, where applicable. No provision of the Plan shall be deemed to act to or release any Claims, Causes of Action, or liabilities that the Liquidating Trustee or Estate may have against any Entity or Person for any act, omission, or failure to act that occurred prior to the Petition Date, nor shall any provision of the Plan be deemed to act to release any Cause of Action.

To the extent of any conflict between this section and sections VII(C)(8) and VII(D)(4), these section VII(C)(8) and VII(D)(4)shall control.

### 5. Term of Injunctions or Stays

Unless otherwise provided herein or by Final Order of the Bankruptcy Court, all injunctions or stays provided for in sections 105 and 362 of the Bankruptcy Code or otherwise in effect on the Confirmation Date shall remain in full force and effect until entry of a Final Order closing the Bankruptcy Case pursuant to section 350 of the Bankruptcy Code.

### 6. Events of Default

Any material failure by the Liquidating Trustee to comply with the obligations under the Plan and Liquidating Trust Agreement, which is not cured within forty five (45) calendar days following the Liquidating Trustee's receipt of written notice of default, shall constitute a default of the Plan. In the event of default that is not cured within such forty five (45) day period, Holders of Allowed Claims shall be entitled to enforce their Claims in accordance with applicable non-bankruptcy law and without further order of the Bankruptcy Court.

**G. Effectiveness of the Plan**

The following are conditions precedent to the Effective Date of the Plan:

a) The Bankruptcy Court shall have entered the Confirmation Order which shall be in a form and substance satisfactory to the Proponents;

b) No stay of the Confirmation Order shall then be effect at the time the other conditions set forth in this section are satisfied or waived;

c) All documents, instruments and agreements, in form and substance satisfactory to the Proponents, provided for under or necessary to implement the Plan, including the Liquidating

Trust Agreement, shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the parties benefited thereby.

The foregoing conditions may be waived, in whole or in part, by agreement of the Proponents, in writing, at any time without notice, an order of the Bankruptcy Court, or any further action other than proceeding to confirmation and consummation of the Plan.

**H.    Retention of Jurisdiction**

The Bankruptcy Court shall retain jurisdiction over the Bankruptcy Case subsequent to the Confirmation Date to the fullest extent permitted by law, including, without limitation, for the following purposes:

a)    To determine any and all proceedings related to allowance of Claims or objections to the allowance of Claims, including objections to the classification of any Claim and including, on an appropriate motion pursuant to Bankruptcy Rule 3008, reconsidering Claims that have been Allowed or not Allowed prior to the Confirmation Date;

b)    To determine any and all fee applications of Professionals and any other fees and expenses authorized to be paid or reimbursed in accordance with the Bankruptcy Code or the Plan;

c)    To determine any and all Causes of Action, whether pending before the Bankruptcy Court on the Confirmation Date or filed or instituted after the Confirmation Date, including, without limitation, proceedings under the Bankruptcy Code or other applicable law seeking to avoid and recover any transfer of an interest of the Debtor in property or of obligations incurred by the Debtor, or to exercise any rights pursuant to Bankruptcy Code sections 544-550, or to seek to recharacterize or subordinate Disputed Claims or otherwise recover from the defendant parties on account of Causes of Action;

d)    To modify the Plan or the Disclosure Statement, or to remedy any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court (including the Confirmation Order), the Plan, or the Disclosure Statement in such manner as may be necessary to carry out the purposes and effects of the Plan;

e)    To determine disputes regarding title of the property claimed to be property of the Debtor;

f)      To ensure that the Distributions to Holders of Allowed Claims are accomplished in accordance with the provisions of the Plan;

g)      To enter such orders as may be necessary to consummate and effectuate the operative provisions of the Plan, including actions to enjoin enforcement of Claims inconsistent with the terms of the Plan;

h)      To hear and determine disputes concerning any event of default or alleged event of default under the Plan, as well as disputes concerning remedies upon any event of default under the Plan;

i)      To hear any other matter not inconsistent with Chapter 11 of the Bankruptcy Code;

j)      To enter a final decree closing the Debtor's Bankruptcy Case;

k)      To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked or vacated;

l)      To hear and determine such other matters as may arise in connection with the Plan, the Liquidating Trust Agreement, the Disclosure Statement, or the Confirmation Order; and

m)      To hear and determine any dispute between the Liquidating Trustee and Trust Advisory Board.

**I.      Miscellaneous Provisions**

**1.      Effectuating Documents and Further Transactions**

Upon entry of the Confirmation Order, the Debtor, the Liquidating Trustee, the Committee and the Trust Advisory Board shall be authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and to take such actions as may be reasonably necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

Each of the matters provided for under the Plan involving the corporate structure of the Debtor or corporate action to be taken by or required of the Debtor shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement of further action by the Liquidating Trustee, the

Trust Advisory Board, Holders of Claims or Interests, directors or officers of the Debtor or any other Persons or Entities.

**2.     Modification of Plan**

The Proponents reserve the right, in accordance with the Bankruptcy Code and Bankruptcy Rules, to amend or modify the Plan at any time prior to entry of the Confirmation Order. After entry of the Confirmation Order but prior to the Effective Date, the Proponents may seek an order of the Bankruptcy Court to amend or modify the Plan in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan. On and after the Effective Date, the Liquidating Trustee may seek an order of the Bankruptcy Court to amend or modify the Plan in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan. The Holder of an Allowed Claim that has accepted the Plan shall be deemed to have accepted the Plan as modified if the modification does not materially and adversely change the treatment of the Claim of such Holder.

**3.     Withdrawal or Revocation of Plan.**

The Proponents may withdraw or revoke the Plan at any time prior to the Confirmation Date. If the Proponents revoke or withdraw the Plan prior to the Confirmation Date, or if the Confirmation Date does not occur, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or against the Debtor or any other Person or Entity or to prejudice in any manner the rights of the Debtor or any other Person or Entity in any further proceedings involving the Debtor.

**4.     Failure of Effective Date.**

In the event the Effective Date does not occur, nothing in the Plan, shall be binding on the Debtor, the Estate, the Committee or any other Person or Entity, or otherwise be of any force or effect.

**5.      Severability.**

Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other provision(s) of the Plan.

**6.      Section 1146(c) Exemption.**

Pursuant to section 1146(c) of the Bankruptcy Code, any transfers from the Debtor or the Liquidating Trustee to any Person or Entity pursuant to the Plan, or the issuance, transfer of exchange of a security under the Plan, or the execution, delivery or recording of an instrument of transfer under the Plan, shall not be subject to any law imposing a stamp tax, recording tax, transfer tax, or similar tax.

**7.      Exemption from Securities Laws.**

The rights of the Beneficiaries under the Liquidating Trust Agreement are not, and are not intended to be, securities subject to any federal, state or local securities law. Even if the rights of the Beneficiaries arising under the Liquidating Trust Agreement were deemed to be securities, the Liquidating Trust satisfies the requirements of Bankruptcy Code section 1145 and, therefore, any such issuance is exempt from registration.

**8.      Preservation of Causes of Action.**

For avoidance of any doubt, any and all claims and other Causes of Action accruing to the Debtor or the Estate, including, without limitation, all Causes of Action relating to the D&O Claims, shall be preserved and retained by the Liquidating Trust and the Liquidating Trustee, who shall have the exclusive right and standing to enforce any such Causes of Action.

**9.      Nonconsensual ("Cramdown") Confirmation.**

The Proponents request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code with respect to any Class that is deemed to reject the Plan and any Class the fails to accept the Plan.

**10.      Notices.**

Except as otherwise provided in the Plan, any notice or other communication required or permitted under the Plan will be in writing and deemed to have been validly served, given,

delivered, and received upon the earlier of: (a) the first Business Day after transmission by facsimile or hand delivery or deposit with an overnight express service or overnight mail delivery service or by electronic means with consent of the recipient; or (b) the third calendar day after deposit in the United States mail, with proper first class postage prepaid. Contact information relevant to providing notice to the Liquidating Trustee or the Trust Advisory Board will be disclosed in the Liquidating Trust Agreement.

**11.    Post-Effective Date Notices.**

Except as otherwise provided in the Plan, upon and after the Effective Date, notices will be served only on the Office of the United States Trustee, the Liquidating Trustee, the Trust Advisory Board, and those Persons who file with the Bankruptcy Court and serve upon the Liquidating Trustee a request, which includes the Person's name, contact individual, address, telephone number and facsimile number, that such Person receive notice of post-Effective Date matters. Persons who had previously filed with the Bankruptcy Court requests for special notice of the proceedings and other filings in the Bankruptcy Cases will not receive notice of post-Effective Date matters unless such Persons file a new request in accordance with this Section.

**12.    Plan Controls**

To the extent the terms of the Plan are inconsistent with the Disclosure Statement or the Liquidating Trust Agreement, the terms of the Plan shall be controlling.

**13.    Applicable Law**

The Plan is to be governed by and construed under the Bankruptcy Code and the laws of the State of California as they may be applicable.

**14.    Implementation Orders**

The Bankruptcy Court may, at any time, make such orders and give such directions as appropriate for consummation of the Plan pursuant to Bankruptcy Code section 1142.

**IX.**

**CONFIRMATION REQUIREMENTS AND PROCEDURES**

"Confirmation" is a technical term for the Bankruptcy Court's approval of a proposed plan. Many requirements must be met before the Bankruptcy Court can confirm the Plan, only

some of which are addressed in this Disclosure Statement. Persons or Entities concerned with confirmation of the proposed Plan should consult their own legal counsel due to the complexity of the law in this area. The following discussion is not a complete summary of law on this topic and cannot be relied upon as such.

**A.    Who is Entitled to Vote**

Only impaired Classes of Claims or Interests who receive anything under the Plan are entitled to vote on the Plan. "Impaired" is a term art, defined by the Bankruptcy Code pursuant to section 1124, and generally means those classes of claimants or equity interest holders whose legal, equitable or contractual rights are altered under the terms of the Plan. As a general rule, impaired classes entitled to vote are those that include creditors who will receive payment, other than payment in full, of their Claims under the Plan.

Unclassified Claims are not eligible to vote, as the holders of such Claims have either consented to their treatment or will be paid in full under the terms of the Plan. Thus, under the Plan, Holders of Administrative Claims and Priority Tax Claims cannot vote on the Plan. Further, under the Plan, Classes 1 through 6 are not impaired as Holders of such Claims will receive payment in full of their Allowed Claims or other treatment that renders such Holders not impaired. As such, they are deemed to accept the Plan and are not entitled to vote.

Class 7 is impaired because the Holders of Allowed Claims in this Class will not be paid in full under the terms of the Plan but will receive payments over time, to the extent the Estate has funds to pay such Claims. Class 7 is therefore entitled to vote on the Plan.

Class 8 is impaired and will receive nothing under the Plan. Class 8 is therefore deemed to reject the Plan and is not entitled to vote.

Pursuant to section 1126 of the Bankruptcy Code, an impaired Class of Claims will be deemed to have accepted the Plan upon a favorable vote of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of the Class members voting on the Plan. Further, unless there is unanimous acceptance of the Plan by an impaired Class, the Court must also determine that Class members will receive at least as much as they would if the Debtor were liquidated under chapter 7 of the Bankruptcy Code. The Debtor believes

that the Plan will meet all applicable confirmation requirements, and further believe that the Plan will gain approval by Holders of Allowed Class 7 Claims.

**B.  Non-Consensual ("Cramdown") Confirmation**

The Plan may be confirmed even if it is not accepted by one or more of the impaired Classes, if the Court finds that the Plan does not discriminate unfairly against and is "fair and equitable" as to each dissenting Class. This provision is generally set forth in section 1129(b) of the Bankruptcy Code. In broad terms, that section requires a showing that the Claims in such Class either will receive the full value of the Claim or, if they receive less, no Class with junior liquidation priority may receive anything. Section 1129(b) is a relatively flexible, yet very complex provision, and this summary is not intended to be a complete statement of the law as stated above. You should consult your own legal counsel for a full understanding of your rights and the Debtor's powers under that section. Please take notice that the Proponents presently intend to request confirmation of the Plan pursuant to the provisions of Bankruptcy Code section 1129(b).

**C.  Objections to Confirmation**

Whether or not you are the Holder of a Claim or Interest that is entitled to vote on the Plan, you may still qualify as a party in interest who may object to confirmation of the Plan. As set forth above, the deadline to file and serve objections to confirmation of the Plan will be set by further action of the Bankruptcy Court and notice will be provided as required by the Bankruptcy Court.

**D.  Feasibility**

In order for the Plan to be confirmed, the Bankruptcy Code requires that the Debtor, as proponents of the Plan, demonstrate that consummation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor, unless such liquidation or reorganization is proposed in the Plan. The Plan is one of liquidation that provides for the creation of the Liquidating Trust to carry out that purpose and make distributions to Holders of Allowed Claims pursuant to the terms of the Plan. The Debtor believes that the Liquidating Trust Assets will be sufficient to pay all Administrative Expense Claims (except for, possibly, the Professional Fee Claims, who have agreed to different treatment), Priority Tax

Claims, Class 1 Priority Non-Tax Claims, Classes 2 through 6 claims, and the costs and expenses of administration of the Liquidating Trust after the Effective Date. The Debtor also believes that there will be funds available for distribution to Holders of Allowed Class 7 Claims, the amounts of which distributions will be contingent on the Liquidating Trustee's successful pursuit of the Causes of Action. Accordingly, the Debtor believes the Plan is feasible.

**E.      Liquidation Analysis**

Pursuant to Bankruptcy Code section 1129(a)(7), unless there is unanimous acceptance of the Plan by an impaired Class, the Proponents must demonstrate, and the Bankruptcy Court must determine that with respect to such Class, that each Holder of a Claim will receive property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Holder would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date of the Plan. This requirement is commonly referred to as the "Best Interests of Creditors Test." The Plan satisfies this test.

The Plan provides the possibility for a greater recovery to the Holders of Allowed Class 7 Claims than such Holders would receive under a liquidation pursuant to chapter 7. The Liquidating Trustee will be able to pursue the Causes of Action in a cost-effective manner, while in a chapter 7 the Debtor's estate would be burdened with an additional layer of administrative expense associated with the appointment of a chapter 7 trustee, and retention of professionals attendant thereto. The Plan, in essence, increases the efficiency of administrating the Debtor's assets for the benefit of its Creditors.

Additionally, Holders of Class 7 Claims likely would not receive any distribution in a chapter 7 liquidation based on the Cash held by the Debtor as of the date of this Disclosure Statement, as it is insufficient to pay creditors of a higher liquidation priority. To the extent additional recoveries are made to the Estate and/or the Liquidating Trust in excess of the amount required to pay or provide for all Allowed Claims in the Classes with higher priority, such would be paid to Allowed Class 7 Claims.

Moreover, in chapter 7 cases, the chapter 7 trustee would also be entitled to seek a sliding scale commission based upon the funds distributed by such trustee, even though the Debtor, due to

the Sale of substantially all of its assets, has already liquidated most of its assets, has collected of the proceeds thereof including the Cash used to fund the Plan and has already incurred many of the expenses associated with the foregoing. Accordingly, the Debtor believes that there is a reasonable likelihood in a chapter 7 scenario that Holders of Allowed Claims would have to pay doubly for the funds accumulated by the Debtor, since the chapter 7 trustee would be entitled to receive a commission in some amount for all funds distributed. It is also anticipated that a chapter 7 liquidation would result in delay in the distributions to Holders of Allowed Claims. Among other things, a chapter 7 case would trigger a new bar date for filing Claims that would be more than ninety (90) days following conversion of the case to chapter 7. Thus, a chapter 7 liquidation would not only delay distributions, but raise the prospect of additional Claims that were not asserted in the Bankruptcy Case. Based on the foregoing, the Plan provides an opportunity to bring the greatest return to creditors.

**F.    Risk Factors**

Both the confirmation and consummation of the Plan are subject to a number of risks. Specifically, if certain standards set forth in the Bankruptcy Code are not met, the Bankruptcy Court will not confirm the Plan even if Holders of Claims accept the Plan. Although the Proponents believe that the Plan meets all confirmation standards, there can be no assurance that the Bankruptcy Court will reach the same conclusion. Further, the Proponents can provide no assurance that modifications of the Plan will not be required to obtain confirmation of the Plan, or that such modifications will not require additional solicitation of acceptances. Further, as provided in the Plan, the Proponents of the Plan reserve the right to revoke and withdraw the Plan prior to the commencement of the hearing to confirm the Plan. If the Proponents revoke or withdraw the Plan, or if confirmation of the Plan does not occur, then the Plan shall be deemed null and void and nothing contained in it shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or Entity or to prejudice in any manner the rights of the Debtor or any Person or Entity in any further proceedings involving the Debtor.

In addition, distributions under the Plan are subject to the success of the Liquidating Trust in pursuing the Causes of Action and implementing the Plan effectively and efficiently.

1   Notwithstanding the Debtor's good faith efforts to provide reasonable estimates of the expected

2   returns to Holders of Allowed Claims based on the best of their knowledge, information and belief

3   as of the date of this Disclosure Statement, it is always possible such distributions will be less than

4   projected. The actual recoveries under the Plan will be dependent upon a variety of factors

5   including, but not limited to, whether the Disputed Claims, if any, are resolved in favor of the

6   Liquidating Trustee, the extent of litigation relating to resolution of and/or objections to Claims, if

7   any, the extent of litigation brought by the Liquidating Trust relating to other Causes of Action

8   and the success thereof, and the extent of ongoing administrative expenses, including Professional

9   fees and costs.

10   **G.     Tax Consequences of Plan**

11        The implementation of the Plan may have federal, state, local, foreign and other tax

12   consequences to the Debtor, the Estate, the Liquidating Trust, Holders of Claims and Interests, and

13   other Persons or Entities. This Disclosure Statement does not constitute and is not intended to

14   constitute either a tax opinion or tax advice to any Person or Entity, and the summary contained

15   herein is provided for informational purposes only.

16        The following discussion is a summary of certain U.S. federal income tax consequences of

17   implementation of the Plan. This discussion is based on the Internal Revenue Code ("IRC"),

18   Treasury Regulations promulgated and proposed thereunder, judicial decisions and published

19   administrative rules and pronouncements of the Internal Revenue Service ("IRS") as in effect on

20   the date hereof. Due to the complexity of certain aspects of the Plan, the lack of applicable legal

21   precedent, the rapidly changing nature of tax law, the differences in the nature of individual

22   Claims and Interests, a given Holder's status and method of accounting (including Holders within

23   the same Class) and the potential for disputes as to legal and factual matters with the IRS, the tax

24   consequences described herein are subject to significant uncertainties. No tax opinion has been

25   sought or will be obtained with respect to any tax consequences of the Plan and no rulings have

26   been or will be requested from the IRS. Furthermore, legislative, judicial or administrative

27   changes may occur, perhaps with retroactive effect, which could affect the accuracy of the

28   statements set forth herein as well as the tax consequences hereof. This Disclosure Statement does

1   not attempt to consider various facts or limitations applicable to any particular Person or Entity,

2   including any particular Holder of a Claim or Interest, which may modify or alter the tax

3   consequences described herein.

4        This discussion does not purport to address all aspects of U.S. federal income taxation that

5   may be relevant to the Debtor, the Estate, the Liquidating Trust, the Holders of Claims or

6   Interests, or any other Persons or Entities, in light of their individual circumstances, nor does the

7   discussion deal with tax issues with respect to taxpayers subject to special treatment under the

8   U.S. federal income tax laws (including, for example, banks, governmental authorities or agencies,

9   or foreign taxpayers). No aspect of foreign, state, local or any federal tax other than federal

10  income tax, including estate or gift taxation, is addressed.

11       THE FOLLOWING SUMMARY IS NOT A SUBSTITUTE FOR CAREFUL TAX

12  PLANNING AND ADVICE BASED UPON THE PERSONAL CIRCUMSTANCES OF EACH

13  HOLDER OF A CLAIM OR INTEREST. EACH HOLDER OF A CLAIM OR INTEREST IS

14  URGED TO CONSULT WITH SUCH HOLDER'S TAX ADVISORS CONCERNING THE U.S.

15  FEDERAL, STATE, LOCAL, FOREIGN AND OTHER TAX CONSEQUENCES APPLICABLE

16  TO THE PLAN.

17  **H.    Consequences to the Debtor**

18       Under the Plan, the Debtor is transferring all assets of the Estate remaining as of the

19  Effective Date, as defined under the Plan as the Liquidating Trust Assets, to the Liquidating Trust.

20  As described herein and in the Plan, it is the intention of the Debtor and the Liquidating Trustee

21  that the transfer of assets by the Debtor will be treated for federal income tax purposes as (i) a

22  deemed transfer of assets by the Debtor to the Beneficiaries under the Liquidating Trust,

23  immediately followed by (ii) a transfer of such assets by the Beneficiaries to the Liquidating Trust.

24  For federal income tax purposes, the transfer of assets to the Liquidating Trust in satisfaction of

25  the Claims of Beneficiaries may result in the recognition of a taxable gain or loss by the Debtor.

26  Based on the facts and circumstances of the Bankruptcy Case, the Debtor expresses no view as to

27  whether they will incur a net gain or net loss for federal income tax purposes, and if a net gain,

28  whether a material net tax liability will result. To the extent that any federal income tax liability to

the Debtor results from the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Liquidating Trust will pay the resulting tax.

The Plan also provides that the Debtor will be dissolved. It is possible that as a result there will be no net operating loss or capital loss carry-forwards or other tax attributes available to the Debtor following the Effective Date. Because the federal income tax consequences in this respect would depend on the particular facts and circumstances at such time and the application of complex legislation and regulations, the Debtor expresses no view as to the effect of any transactions outside the scope of the Plan or the survival of any net operating losses or loss carry-forwards or other tax attributes. Parties in interest are cautioned against assuming the Debtor's net operating losses or loss carry-forwards will be available to shelter any income or gain that may be recognized as a result of implementation of the Plan or the Debtor's operations prior to the Effective Date.

**I.      Federal Income Tax Treatment of the Liquidating Trust**

**1.      Classification of Liquidating Trust**

As described above and in the Plan, the Plan is being implemented through establishment of a Liquidating Trust, which will become obligated to make distributions in accordance with the Plan and the related Liquidating Trust Agreement. As set forth in the Plan, for federal income tax purposes, the Debtor and the Liquidating Trustee intend and believe that the Liquidating Trust will be treated for federal income tax purposes as a "liquidating trust" as defined in Treasury Regulation (26 C.F.R.) § 301.7701-4(d), and will therefore be taxed as a grantor trust, of which the holders of beneficial interests under the Liquidating Trust Agreement will be treated as the owners and grantors thereof. Accordingly, because a grantor trust is treated as a pass-through entity for federal income tax purposes, no tax should be imposed on the Liquidating Trust itself or on the income earned or gain recognized by the Liquidating Trust. Instead, the Beneficiaries will be taxed on their allocable shares of such net income or gain in each taxable year, whether or not they received any distributions from the Liquidating Trust in such taxable year.

Although the Liquidating Trust has been structured with the intention of complying with guidelines established by the IRS in Rev. Proc. 94-45, 1994-2 C.B. 684, for the formation of

creditor grantor trusts pursuant to a bankruptcy plan, it is possible that the IRS could require a different characterization of the Liquidating Trust, which could result in different and possibly greater tax liability to the Liquidating Trust and/or the Holders of Claims or Interests or other Persons or Entities. No ruling has been or will be requested from the IRS concerning the tax status of the Liquidating Trust, and there can be no assurance the IRS will not require an alternative characterization of the Liquidating Trust. If the Liquidating Trust were determined by the IRS to be taxable as other than a liquidating trust (as described in Treasury Regulation (26 C.F.R.) § 301.7701-4(d)) the taxation of the Liquidating Trust and the transfer of assets by the Debtor to the Liquidating Trust could be materially different than is described herein and could have a material adverse effect on the parties in interest. Further, the Liquidating Trustee is authorized to, among other things, make any and all tax elections available by law.

Under the Plan, the Liquidating Trust is allowed, for federal income tax purposes, to treat an account, trust, fund or reserve that holds assets to subject to disputed ownership as either (a) part of the liquidating grantor trust assets owned by the beneficiaries of the Liquidating Trust, or (b) a disputed ownership fund taxable as a separate entity pursuant to Treasury Regulation (26 C.F.R.) §1.468B-9. If the Liquidating Trust does not file a disputed ownership fund tax election, the tax consequences with respect to the transfer of assets used to fund the Disputed Claims Reserve, or any assets held in an account due to dispute as to the proper recipient of a distribution under Section VII.H.2 of the Plan, may be the same as described above for the other Liquidating Trust Assets transferred by the Debtor to the Liquidating Trust. If the Liquidating Trust files a tax election to treat the Disputed Claims Reserve, or any segregated fund, as a disputed ownership fund, then the disputed ownership fund may be treated as a separate taxable entity for federal income tax purposes (rather than a pass-through tax entity) that is required to file tax returns and pay any tax due. Any such payment will be made from the Liquidating Trust Assets.

## 2. Tax Reporting

As provided by the Plan, it is the intention that all Persons and Entities, including the Debtor, the Estate, the Liquidating Trust and Holders of Claims or Interests, treat the Liquidating Trust as a liquidating trust in accordance with Treasury Regulation (26 C.F.R.) § 301.7701-4(d).

Thus, the Beneficiaries under the Liquidating Trust, that is the Holders of Allowed Claims entitled to distribution under the Plan, shall be treated as the direct owners of beneficial interests in the assets and liabilities of the Liquidating Trust for federal income tax purposes. The Liquidating Trustee will determine the fair market value of the Liquidating Trust Assets, and all parties in interest, including the Holders of Allowed Claims, must consistently use such valuation for federal income tax purposes. The Liquidating Trustee shall be responsible for filing all tax returns for the Liquidating Trust and will also send to each Beneficiary a separate statement setting forth the beneficiary's allocable share of items of income, gain, loss, deduction or credit and will instruct the beneficiary to report such items on such beneficiary's federal income tax return.

**J.      Consequence to Holders of Claims**

As discussed above and provided in the Plan, the formation and funding of the Liquidating Trust is intended to be treated for federal income tax purposes as a (1) a deemed direct transfer of the Liquidating Trust Assets by the Debtor to the Beneficiaries of the Liquidating Trust in satisfaction of their Allowed Claims, immediately followed by (2) a deemed direct transfer of the assets by the Beneficiaries to the Liquidating Trust, as grantors of the Liquidating Trust. The establishment and funding of the Liquidating Trust, as a grantor trust, in which the Beneficiaries are treated as the trust grantors for federal income tax purposes is an immediate taxable event to both the Debtor and to the creditor Beneficiaries. The Beneficiaries may recognize an immediate gain or loss for federal income tax purposes generally measured by the difference between the fair market value of their share of the Liquidating Trust Assets and the Holder's tax basis in its Claim.

However, the federal income tax consequences of the Plan to any given Holder of a Claim will depend upon several factors, including but not limited to: (i) the origin of the Holder's Claim, (ii) whether the Holder is a resident of the United States for tax purposes (or falls into any special class of taxpayer), (iii) whether the Holder reports income on an accrual or cash basis method, (iv) whether the Holder has taken a bad debt deduction or worthless security deduction with respect to this Claim and (v) whether the Holder receives distributions under the Plan in more than one taxable year. HOLDERS ARE STRONGLY ADVISED TO CONSULT THEIR OWN TAX

1  ADVISORS WITH RESPECT TO THE TAX TREATMENT UNDER THE PLAN OF THEIR

2  PARTICULAR CLAIMS.

3  **K.      Consequences to Holders of Interests**

4          Pursuant to the Plan, all Interests in the Debtor are being extinguished. A Holder of such

5  an Interest will generally recognize a loss in an amount equal to such Holder's adjusted tax basis

6  in the Interest at the time it becomes worthless. This may not be the case as to any particular

7  Interest Holder, however, as among other things, the tax consequences of the Plan will depend

8  upon several factors including but not limited to: (i) the status of the Holder, (ii) the nature of the

9  Interest, (iii) the Holder's holding period, and (iv) the extent to which a Holder had previously

10  claimed a deduction for the worthlessness of all or a portion of the Interest. HOLDERS ARE

11  STRONGLY ADVISED TO CONSULT THEIR OWN TAX ADVISORS WITH RESPECT TO

12  THE TAX TREATMENT UNDER THE PLAN OF THEIR PARTICULAR INTERESTS.

13  **L.      Withholding**

14          All distributions to Holders of Allowed Claims under the Plan are subject to any applicable

15  withholding required by law which will be made by the Liquidating Trust. In addition, as set forth

16  in the Plan, Claim Holders may be required to provide general tax information to the Debtor

17  and/or Liquidating Trustee, as the case may be, in order to receive distributions pursuant to the

18  Plan.

19          AS INDICATED ABOVE, THE FOREGOING IS INTENDED TO BE A SUMMARY

20  ONLY AND NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX

21  PROFESSIONAL. THE FEDERAL, STATE, LOCAL, FOREIGN AND OTHER TAX

22  CONSEQUENCES OF THE PLAN ARE COMPLEX AND, IN SOME CASES, UNCERTAIN.

23  ACCORDINGLY, EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT

24  SUCH HOLDER'S TAX ADVISORS CONCERNING THE FEDERAL, STATE, LOCAL,

25  FOREIGN AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## X.

## FURTHER ACCESS TO INFORMATION

Additional sources of information available to the public include the various Schedules, pleadings and reports which were filed by the Debtor or other parties in interest in this Bankruptcy Case. Such filings can be accessed electronically through the Public Access to Court Electronic Records web based system.

*//*

*//*

*//*

*//*

*//*

*//*

*//*

# XI.

## RECOMMENDATION AND CONCLUSION

The Proponents believe that confirmation of the Plan is in the best interests of the Estate and its creditors and in particular, believe that recoveries to Holders of Allowed Claims will be maximized under the circumstances by confirmation of the Plan. The Proponents urge all creditors entitled to vote on the Plan to vote in favor of the Plan.

Respectfully submitted,

Dated:  March 31, 2015    CRUNCHIES FOOD COMPANY, LLC

By: _____
Name:  Peter Kravitz
Title:   Chief Restructuring Officer

Dated:  March 31, 2015    OFFICIAL COMMITTEE OF UNSECURED CREDITORS

By: _____
Name:_____
Title: _____

Dated:  March 31, 2015    LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.

By: _____
DAVID L. NEALE
JOHN-PATRICK M. FRITZ

Counsel for the Debtor

Dated:  March 31, 2015    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: _____/s/ Ori Katz_____
ORI KATZ
ROBERT K. SAHYAN

Counsel for the Official Committee of Unsecured Creditors

DISCLOSURE STATEMENT

**XI.**

**RECOMMENDATION AND CONCLUSION**

The Proponents believe that confirmation of the Plan is in the best interests of the Estate and its creditors and in particular, believe that recoveries to Holders of Allowed Claims will be maximized under the circumstances by confirmation of the Plan. The Proponents urge all creditors entitled to vote on the Plan to vote in favor of the Plan.

Respectfully submitted,

Dated:  March 31, 2015                 CRUNCHIES FOOD COMPANY, LLC


                                       By: _____
                                       Name:  Peter Kravitz
                                       Title:   Chief Restructuring Officer


Dated:  March 31, 2015                 OFFICIAL COMMITTEE OF UNSECURED
                                       CREDITORS

                                       By: _____
                                       Name:  Michael A. Tudzin
                                       Title:  Chair

Dated:  March 31, 2015                 LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.


                                       By:  _____
                                                  DAVID L. NEALE
                                              JOHN-PATRICK M. FRITZ

                                              Counsel for the Debtor

Dated:  March 31, 2015                 SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


                                       By:  _____ /s/ Ori Katz _____
                                                     ORI KATZ
                                              ROBERT K. SAHYAN

                                       Counsel for the Official Committee of
                                              Unsecured Creditors

1

## XI.

2

## RECOMMENDATION AND CONCLUSION

3      The Proponents believe that confirmation of the Plan is in the best interests of the Estate

4  and its creditors and in particular, believe that recoveries to Holders of Allowed Claims will be

5  maximized under the circumstances by confirmation of the Plan. The Proponents urge all creditors

6  entitled to vote on the Plan to vote in favor of the Plan.

7      Respectfully submitted,

8  Dated:  March 31, 2015                    CRUNCHIES FOOD COMPANY, LLC

9
                                            By: _____
10                                          Name:  Peter Kravitz
                                            Title:    Chief Restructuring Officer
11

12
   Dated:  March 31, 2015                    OFFICIAL COMMITTEE OF UNSECURED
13                                          CREDITORS

14
                                            By: _____
15                                          Name:_____
16                                          Title: _____

17  Dated:  March 31, 2015                    LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.

18
19                                          By: _____
                                                      DAVID L. NEALE
20                                                  JOHN-PATRICK M. FRITZ

21                                                  Counsel for the Debtor

22  Dated:  March 31, 2015                    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

23
24                                          By: _____
                                                        /s/ Ori Katz
25                                                      ORI KATZ
                                                    ROBERT K. SAHYAN
26
                                            Counsel for the Official Committee of
27                                                  Unsecured Creditors

28

-S-

**List of Exhibits To**

**Disclosure Statement**


**Exhibit A**:  List of Class 7 General Unsecured Claims

**Exhibit B**:  List of Class 8 Interest Holders

# EXHIBIT A

| Creditor | Claim No. | General Unsecured | Schedule "F" Unsecured | C U D | NOTES |
|---|---|---|---|---|---|
| | | | FILED CLAIM | SCHEDULED CLAIM | |
| *ABF Multimodal* | 2 | 4,500.00 | 4,500.00 | | Withdrawn on 09/23/2014 |
| Anschutz Entertainment Group | | | 276,750.00 | | |
| Balance Your Books | | | 66,831.50 | | |
| Bella Food Sales, LLC | | | 347,040.00 | | |
| Better Business Bureau | | | 720.00 | | |
| Blue Ocean Innovative Solutions Inc | | | 64,364.74 | | |
| Bridgeton Holdings Inc. | | | 10,000.00 | | |
| Brien Seay | | | 50,000.00 | | |
| Buffalo Brothers West | | | 21,672.00 | | |
| Buffalo Brothers West | | | 8,328.00 | | |
| Cabrillo Westlake | 6 | 30,156.00 | 15,128.02 | | |
| California Grocers Association | | | 4,000.00 | | |
| Chaucer Foods c/o Evan Smiley | | | 1,009,428.80 | | |
| Chaucer Foods c/o Evan Smiley | | | 170.71 | | |
| Chien & Smith-Fricke, LLP | | | 4,950.00 | | |
| Circle Up, attn: Rory Eakin | | | 0.00 | | |
| Classic Bicycle Racing, LLC | | | 6,000.00 | | |
| Consumer Connection, Inc. | 27 | 58,000.00 | 30,500.00 | | |
| Consumer Packaging Group, Inc. | | | 5,781.00 | | |
| Custom Leasing Sales | | | 2,500.00 | | |
| CyberCopy, Inc. | | | 2,093.42 | | |
| Dan Rivero | | | 360,000.00 | | |
| Daylight Transport LLC | | | 12,648.25 | | |
| Debbi Reed | | | 30,000.00 | | |
| Dependable Highway Express | | | 359.67 | | |
| Derek McGowan | | | 32,305.00 | | |
| Diane Nott-Kilfoil | | | 5,602.50 | | |
| Direct Demos | | | 4,677.13 | | |
| DMH Ingredients | | | 49,416.17 | | |
| Document Systems | | | 2,243.58 | | |
| Dynamic Presence East | | | 76,500.00 | | |
| Edgewater Park Media Inc | | | 3,000.00 | | |
| Eichberg Associates, Inc | | | 1,204.67 | | |
| Estes Express Lines | 17 | 1,059.98 | 910.48 | | |
| FedEx | 19 | 66,692.95 | 55,835.02 | | |
| FedEx Freight | | | 7,849.18 | | |
| Food & Beverage Executive | | | 27,000.00 | | |
| Food Chain Global Advisors, Inc | | | 2,735.00 | | |
| Food Industries Circle Chapter | | | 4,500.00 | | |
| Forsythe & Associates | | | 1,190.07 | | |
| Franchise Tax Board | 4 | 7,080.46 | 6,000.00 | | |
| Fresco Community Markets LLC | | | 150.00 | | |
| G E Capital | 11 | 14,433.39 | 1,283.29 | | |
| Garden Acres Santa Claus, Inc. | | | 750.00 | | |
| Global Health Brokerage, Inc. | | | 3,200.00 | | |
| Globaltranz Enterprises, Inc. | 18 | 1,055.20 | 1,055.20 | | |
| Gluten Intolerence Group | | | 500.00 | | |
| Greater Conejo Valley COC | | | 380.00 | | |
| Grocery Headquarters | | | 13,500.00 | | |
| GS1 US | | | 1,045.00 | | |
| Hartford Insurance | 14 | 35,876.12 | 25,307.97 | | |
| Hopster | | | 199.35 | | |

| Creditor | Claim No. | General Unsecured | Schedule "F" Unsecured | C U D | NOTES |
|---|---|---|---|---|---|
| | | | SCHEDULED CLAIM | | |
| | | FILED CLAIM | | | |
| Hot Ice Media | | | 8,200.00 | | |
| Imperial Valley Foods, Inc | | | 201,525.00 | | |
| InFocus Specialities | | | 53,184.85 | | |
| IPFS Corporation | | | 748.53 | | |
| James Lacey | | | 20,000.00 | | |
| James Lacey | | | 16,000.00 | | |
| James Lacey | 44 | | 322,000.00 | | |
| Jason Hardman | | | 490.20 | | |
| Jennifer Hurless | | | 1,600.00 | | |
| Jill M Watson | | | 32,000.00 | | |
| John Hancock Life Insurance Co. | | | 24,718.73 | | |
| KOF-K | | | 7,200.00 | | |
| Koppel, Patrick,Heybl & Philpott | | | 47,097.42 | | |
| Landsberg Santa Barbara | | | 245,092.52 | | |
| Leadership Capital Partners | | | 70,000.00 | | |
| Lewis Brisbois Bisgard and Smith LLP | 9 | 71,081.86 | 103,435.86 | | |
| LightGabler LLP | | | 197.50 | | |
| Lila's House Cleaning | | | 950.00 | | |
| Mack Elevation Forum | | | 5,000.00 | | |
| Manfredi Levine | | | 395.00 | | |
| MegaPath Inc. | | | 1,864.91 | | |
| Microsoft Financing | | | 15,126.97 | | |
| Microsoft Financing | | | 16,620.51 | | |
| Midwest Franchise Owner's Association | | | 1,900.00 | | |
| MM&K LLC | | | 7,250.00 | | |
| Morgan Lewis & Bockius LLP | | | 34,508.85 | | |
| Multi Ad | | | 18.00 | | |
| NACDS | | | 8,400.00 | | |
| Nad Verjee | | | 21,493.25 | | |
| Natl Asso of College Stores | | | 963.00 | | |
| Northridge Container | | | 15,456.00 | | |
| Office Depot | 1 | 1,235.03 | 1,235.03 | | |
| One Stop Logistics | | | 7,388.00 | | |
| Orkin Pest Control | | | 124.00 | | |
| Oser Communications Group Inc | 25 | 18,882.65 | 23,151.65 | | |
| Outdoor Retailer Summer Market | | | 3,150.00 | | |
| Paramount Container, Inc | 7 | 2,750.00 | 2,750.00 | | |
| PMA | | | 1,165.00 | | |
| PNC Financing | 22 | 17,345.90 | 1,197.13 | | |
| Pocantico | | | 18,121.18 | | |
| Quest Diagnostics | | | 28.00 | | |
| Racher Press Inc. | | | 16,114.00 | | |
| Richard John Kohlbrand | | | 10,438.84 | | |
| Santo J. Laquatra | | | 5,648.77 | | |
| Schraad & Associates | | | 631.56 | | |
| Scollon Productions | | | 4,950.00 | | |
| Searsport Food | | | 829,234.30 | | |
| Shawn Patt | | | 0.00 | | |
| Shopper Events LLC | | | 44,153.64 | | |
| Shred-It | | | 199.36 | | |
| Sierra Packaging & Converting,LLC | | | 97,583.95 | | |
| Simply Gluten Free Inc | | | 2,700.00 | | |
| Skyline Exhibits West, Inc. | | | 9,010.00 | | |

| Creditor | Claim No. | FILED CLAIM General Unsecured | SCHEDULED CLAIM Schedule "F" Unsecured | C U D | NOTES |
|---|---|---|---|---|---|
| So Ca Edison | | | 3,504.31 | | |
| Society Social Calendar | | | 4,400.00 | | |
| Sparkletts | 26 | 837.36 | 498.27 | | |
| SPS Commerce | 8 | 3,628.71 | 2,790.00 | | |
| Staples | | | 1,807.31 | | |
| Sterling Networks | | | 738.81 | | |
| Sunshine FPC Inc | | | 38,327.40 | | |
| Sysco Ventura, Inc. | 20 | 642.03 | 642.03 | | |
| Tri-Kids 123 | | | 4,500.00 | | |
| Uline | | | 10,642.85 | | |
| Universal Marketing Services, Inc. | | | 2,348.35 | | |
| UPS | 16 | 13,538.87 | 13,661.43 | | |
| Van Drunen Farms | | | 51,752.50 | | |
| Veg News Media | 11 | 4,048.50 | 1,000.00 | | |
| Vegetarian Times | | | 6,825.00 | | |
| VegWeb.com | | | 1,118.00 | | |
| Ventura County Tax Collector | | | 1,125.55 | | |
| Verizon | | | 1,138.76 | | |
| Verizon Wireless | | | 3,004.41 | | |
| Wasserman | | | 43,816.00 | | |
| Wells Fargo Bank | 3 | | 7,446.90 | | |
| World Health Industries | | | 320,712.33 | | |
| WZLX | | | 7,500.00 | | |
| SoCal Signworx | 5 | 490.20 | | | |
| MILLENNIUM MEDIA, LLC | 10 | 9,690.00 | | | |
| GENERAL ELECTRIC CAPITAL CORPORATION | 13 | 17,977.52 | | | |
| Shandong Searsport Foods Co., Ltd. | 15 | 882,362.51 | | | |
| Employment Development Department | 21 | 40,642.96 | | | |
| Norman & Margaret Parks | 24 | 100,000.00 | | | |
| PNC Equipment Finance, LLC | 23 | 16,429.38 | | | |
| Phillip Tamminga | 28 | 100,000.00 | | | |
| Lynden L. Rader | 29 | 100,000.00 | | | |
| AEG Cycling LLC | 30 | 259,111.05 | | | |
| LA Live Properties LLC | 32 | 87,993.50 | | | |
| Anschultz 12K Company | 31 | 87,993.50 | | | |
| Northridge Container | 34 | 15,240.00 | | | |
| Society Social Calendar LLC | 36 | 4,400.00 | | | |
| Fundme Securities, LLC | 37 | 105,397.80 | | | |
| Koppel, Patrick,Heybl & Philpott | 38 | 47,097.42 | | | |
| Nadir Verjee | 39 | $21,493.25 | | | |
| William Innes | 40 | 250,000.00 | | | |
| Arent Fox LLP | 41 | 259,111.05 | | | |
| Arent Fox LLP | 42 | 87,993.50 | | | |
| Arent Fox LLP | 43 | 87,993.50 | | | |
| Daryl Dunbar | 45 | 50,000.00 | | | |
| Cruzbay Publishing | 46 | 6,825.00 | | | |
| Harry Bret Shepard and Patty Shepard | 47 | 100,000.00 | | | |

# EXHIBIT B

## United States Bankruptcy Court
### Central District of California

In re    Crunchies Food Company, LLC

                                        Debtor

Case No. _____

Chapter _____    **11**

## LIST OF EQUITY SECURITY HOLDERS

Following is the list of the Debtor's equity security holders which is prepared in accordance with Rule 1007(a)(3) for filing in this chapter 11 case.

| Name and last known address or place of business of holder | Security Class | Number of Securities | Kind of Interest |
|---|---|---|---|
| **Allan Klein**<br>1725 Butler Ave. #305<br>Los Angeles, CA 90025 | | | |
| **Allan Schoenberger**<br>181 Bluffton Rd. Ste F2014<br>Bluffton, SC 29910 | | | |
| **Andy Anderson**<br>2263 Johnson Dr.<br>Ventura, CA 93003 | | | |
| **Brett Zaccardi**<br>1400 Rosa Parks Blvd. #106<br>Nashville, TN 37208 | | | |
| **Christie Whitehead**<br>5427 Brookside Dr.<br>Broomfield, CO 80020 | | | |
| **Colin & Georgette Hann**<br>355 Landeros Dr.<br>Santa Clara, CA 90051 | | | |
| **Daly Sa 1006 LLC**<br>5263 Denver St.<br>Boulder, CO 80304 | | | |
| **Darrel & Nancy Horn**<br>3707 Llyn Glaslyn Pl.<br>Santa Rosa, CA 95403 | | | |
| **Daryl Dunbar**<br>10 Bryant Ct.<br>Sterling, VA 20166 | | | |
| **Deming 2002 FLP #3**<br>451 N Washington<br>El Dorado, AR 71730 | | | |
| **Deming Family Trust**<br>451 N Washington<br>El Dorado, AR 71730 | | | |

___**5**___    continuation sheets attached to List of Equity Security Holders

In re    **Crunchies Food Company, LLC**                         Case No. _____

                                      Debtor

## LIST OF EQUITY SECURITY HOLDERS
(Continuation Sheet)

| Name and last known address<br>or place of business of holder | Security<br>Class | Number<br>of Securities | Kind of<br>Interest |
|---|---|---|---|
| Denver Darling<br>10271 Wesley Circle<br>Huntington Beach, CA 92646 | | | |
| Donald Turner<br>3923 Maple Hill E<br>W. Bloomfield, MI 48323 | | | |
| Ethan Ruby<br>189 W. 89th St #11C<br>New York, NY 10024 | | | |
| Greg Parsons<br>166 Duane St. #7C<br>New York, NY 10013 | | | |
| Hamidreza Mottaghinejad<br>5699 Kanan Rd. #157<br>Agoura Hills, CA 91301 | | | |
| Harold Cohen<br>181 E. 65th St.<br>New York, NY 10065 | | | |
| Harry Bret Shepard<br>5404 Chandley Farm Cir<br>Centreville, VA 20120 | | | |
| Howard Robby<br>6944 96th Ave SE<br>Mercer Island, WA 98040 | | | |
| James Lacey<br>3808 Bowspirit Cir.<br>Westlake Village, CA 91361 | | | |
| James O'Dea<br>111 Water Street<br>East Dundee, IL 60115 | | | |
| Jill Watson<br>195 Highway 50, #104-396<br>Stateline, NV 89449 | | | |
| John Bloom<br>PO Box 1134<br>Manzanita, OR 97130-1134 | | | |
| John Kohlbrand<br>1581 Hendrix Ave.<br>Thousand Oaks, CA 91360 | | | |

Sheet  **1**  of  **5**  continuation sheets attached to the List of Equity Security Holders

In re  **Crunchies Food Company, LLC** _____      Case No. _____
_____
Debtor

## LIST OF EQUITY SECURITY HOLDERS
(Continuation Sheet)

| Name and last known address or place of business of holder | Security Class | Number of Securities | Kind of Interest |
|---|---|---|---|
| Jon Wickwire<br>917 Leigh Mill Rd.<br>Grat Falls, VA 22066 | | | |
| Julie Arnold<br>1128 Galesmorre Ct<br>Westlake Village, CA 91361 | | | |
| Julie Boys<br>9947 Darling Rd.<br>Ventura, CA 93004 | | | |
| Kelvin Clarke<br>8612 Beech Tree Rd.<br>Bethesda, MD 20817 | | | |
| Kent Swanson<br>6335 E Tufts Ave<br>Englewood, CO 80111 | | | |
| Kevin Daly<br>136 Spruce St.<br>Steamboat SpringsCO 80487 | | | |
| Kurt Maier<br>13 Leeward Road<br>Belvedere, CA 94108 | | | |
| Lee I Turner Trust<br>26000 West 12 Mile Rd.<br>Southfield, MI 48034 | | | |
| Lei-an LTD<br>PO Box 5858<br>Breckenridge, CO 80424 | | | |
| Lynden L. Rader<br>10342 Carloca Ct.<br>San Diego, CA 92124 | | | |
| Mark Loewenstein<br>12512 White Dr.<br>Silver Spring, MD 20904 | | | |
| Marlene Schwartz<br>9751 Woodhollow Dr.<br>Reno, NV 89521 | | | |
| Melvin Shaw<br>32399 Chestnut Lane<br>Pepper Pike, OH 44124 | | | |

Sheet __2__ of __5__ continuation sheets attached to the List of Equity Security Holders

Software Copyright (c) 1996-2013 - Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

In re    Crunchies Food Company, LLC                           Case No. _____

_____
Debtor

# LIST OF EQUITY SECURITY HOLDERS
(Continuation Sheet)

| Name and last known address or place of business of holder | Security Class | Number of Securities | Kind of Interest |
|---|---|---|---|
| Michael Dieveney<br>1571 Macarthur Blvd<br>Costa Mesa, CA 92626 | | | |
| Mitch Baruchowitz<br>1054 Boston Post Rd.<br>Rye, NY 10580 | | | |
| Neil Druks<br>17 Nimrod Farm Rd.<br>Weston, CT 06883 | | | |
| Norman & Margaret Parks<br>379 96th St.<br>Stone Harbor, NJ 08247 | | | |
| Omega Venture Group<br>15627 Jube Wright Ct.<br>San Diego, CA 92127 | | | |
| Phillip Tamminga<br>477 Adams St.<br>Denver, CO 80206 | | | |
| Proactive Management Ser<br>PO Box 143<br>Sicklerville, NJ 08081 | | | |
| Ragnar Storm-Larsen<br>240 E. Lombard St. #200<br>Thousand Oaks, CA 91360 | | | |
| Randy Horn/Tracy Coombe<br>30 La Cuesta<br>Greenbrae, CA 94904 | | | |
| Robert Dye<br>1920 Main St., Ste 1070<br>Irvine, CA 92614 | | | |
| Robert Harris<br>654 N. Delsea Dr.<br>Pitman, NJ 08071 | | | |
| Robert Taggart Jr.<br>7163 S. Chapparel Circle E<br>Centennial, CO 80016 | | | |
| Ron Gonen<br>13449 Mulholland Dr.<br>Beverly Hills, CA 90210 | | | |

Sheet  3  of  5  continuation sheets attached to the List of Equity Security Holders

In re   **Crunchies Food Company, LLC**                                           Case No. _____
_____
                        Debtor

## LIST OF EQUITY SECURITY HOLDERS
(Continuation Sheet)

| Name and last known address or place of business of holder | Security Class | Number of Securities | Kind of Interest |
|---|---|---|---|
| **RSL Venture Partners**<br>18 Pheasant Run<br>Old Westbury, NY 11568 | | | |
| **Satsuki Mitchell**<br>c/o Gary Halpert<br>20335 Ventura Blvd #400<br>Woodland Hills, CA 91364 | | | |
| **Shawn Patt**<br>965 Wilshire Blvd, Suite #600<br>Beverly Hills, CA 90212 | | | |
| **Steve Krause**<br>200 N Westlake Blvd #204<br>Westlake Village, CA 91362 | | | |
| **Stifel Nicolaus/Denver Dar**<br>501 N Broadway<br>St. Louis, MO 63102 | | | |
| **Studio 21st West**<br>873 Old Holly Dr.<br>Great Falls, VA 22066 | | | |
| **Thomas Chisari**<br>57 W. Sidlee St.<br>Thousand Oaks, CA 91360 | | | |
| **Tom Armstrong**<br>163 Burns Way<br>Fanwood, NJ 07023 | | | |
| **Tom Bellia**<br>223 Bishop Rd<br>Millicahill, NJ 08062 | | | |
| **Troy Taggart**<br>21220 Crab Orchard Ct.<br>Ashburn, VA 20147 | | | |
| **William Innes**<br>822 Hampshire Rd #G<br>Westlake Village, CA 91362 | | | |
| **Woodman Avenue LLC**<br>13701 Riverside Dr. #500<br>Sherman Oaks, CA 91423 | | | |

Sheet __4__ of __5__ continuation sheets attached to the List of Equity Security Holders

In re    **Crunchies Food Company, LLC**                                    Case No. _____

_____
                        Debtor

## LIST OF EQUITY SECURITY HOLDERS
(Continuation Sheet)

| Name and last known address or place of business of holder | Security Class | Number of Securities | Kind of Interest |
|---|---|---|---|
| Yidam, LTD<br>PO Box 5858<br>Breckenridge, CO 80424 | | | |

### DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I, the Managing Member of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing List of Equity Security Holders and that it is true and correct to the best of my information and belief.

Date____8-15-14____                    Signature_____
                                            James P. Lacey
                                            Managing Member

*Penalty for making a false statement or concealing property:*  Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C §§ 152 and 3571.

Sheet __5__ of __6__ continuation sheets attached to the List of Equity Security Holders